Appeal Docket No. 23-2162

---

In

United Stated Court of Appeal

For The Northern District Of Illinois

Seventh Circuit

---

Gwenesther Manning, *Plaintiff-Appellant*

v.

Louis DeJoy, *Defendant-Appellee*

---

U.S.C.A. – 7th Circuit
R E C E I V E D

AUG 0 2 2023     2

Appellant Brief With Short Appendix

On Appeal from the U.S. District Court

For The Northern District of Illinois, Seventh Circuit

District No. 21 cv 1440

District Judge: Honorable Ronald A. Guzman

1.                              Disclosure Statement

Plaintiff-Appellant, Gwenesther Manning, a *Pro Se* litigant has with no outside

interest or interest otherwise that could cause a conflict in the proceedings.

                              Table of Content                              Page

2.    Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 -4

4.    Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5.    Statement of Issues For Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6.    Statement of The Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6.1   Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7.    Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                                  Argument

9.1.  Whether A Plaintiff May Plead and Prove a Claim Under Title VII's

      Retaliation Provision Without Alleging or Showing that Disability or

      Protected Activity was the Sole Cause of Her Injury . . . . . . . . . . . . . . . . . . . . . . 8- 16

9.2.  Whether The Federal Rules Permit Plaintiffs to Plead Claims of

      Retaliation And Disability Discrimination in the Same Complaint. . . . . . . . . . 16 -22

10.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

11.   Certification of Compliance with Cir. R. 32(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

12.   Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

12.1. Statement on compliance with Cir. Rule 30(a)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

13.   Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Table of Authorities                                    **Page**

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Bell Atl.Corp. v Twombly, 550 U.S. 544, 556 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Bunn v. Khoury Enterprises, Inc., 753 F.3d 676, 683 (7th Cir. 2014). . . . . . . . . . . . . . . . . . 21

Burrit v. Ditlefsen, 897 F. 3d 239, 252-53 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Carlson v. CSX Transp., Inc. 758 F.3d 819,826-27 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . 22

Conward v. Cambridge Sch. Comm., 171 F.3d 12, 19 (1st Cir.1999).") . . . . . . . . . . . . . . . 19

Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1457 (7th Cir. 1994 . . . . . . . . . . . . . . . . . . . 19

Durkin v. City of Chi., 341 F.3d 606, 614-15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 20

Joll v. Valparaiso Comty. Sch., 953 F. 3d 923, (7th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . 20

Kwan v. Andalex Grp., 737 F.3d 834, 846 (2nd Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . .18

Lauth v. Covance, Inc., 863 F.3d 708, 716 (7th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Lesiv, 39 F. 4th at 915 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11 -12

Luckie v. Ameritech Corp. 389 F. 3d. 708, 715 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 11

Nassar, 133 S. Ct. At 25 at 2534 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . . . . . . . . . .18

Oritz v. Werner Enterprises Inc., 884 F. 3d 760,763, 765 (7th Cir. 2016) . . . . . .  . . . . . . . 21

Ray v. Ropes & Gray LLP, 961F. Supp. 2d 344, 35 (D.Mass.2013) . . . . . .  . . . . . . . . . . . .18

Rehling v. City of Chicago, 207 F.3d 1009, 1016 (7th Cir.2000) . . . . . .  . . . . . . . . . . . . . 18

Rush v. McDonald's Corp., 966 F.2d 1104 (7th Cir.1992) . . . . . .  . . . . . . . . . . . . . . . . . . .10

Sansone v. Brennan, postmaster 917 F.3d 975, 980 (7th Cir.2019) . . . . .  . . . . . . . . . . . . .17

Tardanico v. Aetna Life & Cas. Co., 41 Mass. App. Ct. 443, 448, 671 N.E. 2d 510 (1996).18

Vessey v. Envoy Air. Inc. 999 F. 3d. 456, 463 (7th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . 21

Wyatt v.City of Boston, 35 F.3d 13,15 (1st Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Federal Rule of Civil Procedure 8(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. Rule of Civ. Procedure 36(b) Effect of Admission . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Title VII of the Civil Rights Act of 1964/Rehabilitation Act of 1973 . . . . . . . 5, 6, 8, 10, 16

29 C.F.R. §1614.407(a) - Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 CFR §1630.2(p)(1) Absent an undue hardship . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

29 U.S.C.§791. Section 501 of the Rehabilitation Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

42 USC §1891a(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

42 U.S.C. § 2000e-3 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jurisdiction Of The District Court*

4. Plaintiff-Appellant, Gwenesther Manning, retired from the US Postal service, a federal agency, effective 5/30/2020. This action was brought in accordance to the Rehabilitation Act of 1973 at Title 29 U.S.C.§ 791. Section 501 of the Rehabilitation Act prohibits employers from discriminating against job applicants and employees based on disability,and require Agencies including the US Postal Service to engage in affirmative action for individuals with disabilities.

This Court has jurisdiction pursuant to Title 29 C.F.R. §1614.407(a). A complainant who has filed an individual complaint, an agent who has filed a class complaint, or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under Title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:(a)Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed.

*Jurisdiction Of The U.S. District Court Of Appeals*

4.1 This appeal is taken from the final decision in the U.S.District Court for the 7th Cir. of the Northern District of Illinois, entered on 4/10/2023 by the Honorable Judge Ronald A.Guzman. Pursuant to 28 U.S.C.§1295 -Jurisdiction of the United States Court of Appeals for the Federal Circuit(a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction— (1) of an appeal from a final decision of a district court of the United States. The U.S. Court of Appeals further has jurisdiction to decide a Federal question. 28 U.S.C.§1331. This case involves a Federal government agency which raises a Federal question.

*Statement of Issues for Review*

5.1 Whether Manning May Plead and Prove a Claim Under Title VII's Anti- Retaliation Provision Without Alleging or Showing that Disability or Protected Activity was the Sole Cause of Her Injury.

5.2  Whether The Federal Rules Permit Manning to Plead Claims of Retaliation And Disability Discrimination in the Same Complaint.

*Statement of The Case*

6.  This is an appeal from the district court's final judgment dismissing Manning's complaint of disability discrimination under the Rehabilitation Act of 1973, and Title VII. On 03/12/2021 Manning brought this suit in the U.S. District Court. On 9/23/2021, Manning filed a 2nd Amended Complaint with two counts. Count I, Violation of the Rehabilitation Act of 1973 and Count II, Reprisal disability discrimination. [Dkt.19,¶25-26] The court entered judgment against Manning on 11/8/2022 at the summary judgment stage. Manning filed a Fed.R. of Civ. Proc. 59(e) motion for reconsideration on 12/6/2022.

On 4/10/2023 the district court denied Manning's 59(e) motion holding Manning failed to submit evidence of a causal link between Bates action and plaintiff's protected activity and there is no evidence that Bates had actual knowledge of plaintiff's union grievances or EEO and EEOC complaints and there is insufficient evidence to allow a factfinder to reasonably infer that plaintiff's attempt to submit a request form for official time to work on an EEO matter caused Bates' action. Manning failed to offer evidence under the indirect burden-shifting method of proof that she was meeting defendant's legitimate expectations was treated less favorably than similarly situated coworkers

6

who did not engage in protected activity. Manning timely filed a notice of appeal on 6/9/2023.

<em>Statement of the Facts</em>

6.1  Manning was awarded a reasonable accommodation in October of 2015 by defendant's District Reasonable Accommodation Committee "DRAC." DRAC took Manning's restrictions into consideration and offered Manning a change in craft from the letter carrier's craft to a Sales Service Associate "SSA." However, after Manning accepted the SSA position; Manning was placed in a Sales Service Distribution Associate position "SSDA."Def.'s Statement of Material Facts "SMF." [App. 59¶¶3, 4]

In July 2017, Manning bid to an open SSDA open position at 22nd Street Station and worked without any  incidents until January of 2018 when defendant began to strip away Manning's accommodation. In February of 2018, Manning filed EEO complaint no. 4J-606-0034-18. That complaint was amended on 4/9/2018 to include Manager "Mrg." Bates. Manning dropped the issues from her initial EEO complaint for incidents that occurred at 22nd Street Station prior to March 2018, when this  complaint was filed in Court, to focus of the amended part of the complaint concerning when Mgr. Bates put her off the clock on 3/30/2018. 2nd Am. Complaint. Manning's Ex. A-2 [App. Pg. 37]

On 3/6/2019 Bates sent Manning a Five -Day Absence Notice and a notice of for Manning to attend an Investigative Interview. [App. Pgs. 38-39]  Shortly after the investigative interview, Manning returned to work  as a SSDA. Manning was put in charge of opening and working the retail counter. Manning continued to work the retail counter until her retirement on 5/30/2020. On 4/10/2023 the Court ruled that Manning was not meeting her employers legitimate expectations.

*Summary of The Argument*

7.  The court relied on events from a different EEO complaint, Manning's OWCP status and an affidavit from Mrg. Bates to shape it opinion that Manning was not meeting her employers legitimate expectations. While the Court concluded that Manning's training records were not good enough, the Court did not consider that Manning was working up to six hours per day when Mgr. Bates put her off the clock. The Court also did not consider damages may be awarded if the Agency fails to demonstrate that it made a good faith effort to provide a reasonable accommodation because defendant is a federal employer. 42 USC §1891a. Defendant is obligated to engage in the interactive process to find a suitable reasonable accommodation for an employee. Defendant's compliance with federal law is mandatory absent an undue hardship. 29 CFR §1630.2(p)(1) Defendant did not articulate a legitimate reason to stop Manning from working to send her home to wait to be approved for light duty.

*Standard of Review*

8. The standard for review is de novo for the Court order denying Manning's 59(e) motion for reconsideration [App. At 25 - 27] and the order granting defendant's motion for summary judgment under Rule 56. [App. At 28 - 35]

*Argument - 1*

9.1  Whether Manning May Plead and Prove a Claim Under Title VII's Retaliation Provision Without Alleging or Showing that Disability or Protected Activity was the Sole Cause of Her Injury.

Pursuant to Fed.R. Civ.Proc. 36(b) Effect of Admission. A matter admitted under this rule is conclusively established unless the court, on motion, permit it to be withdrawn

or amended. Defendant admitted to facts which were not withdrawn. The Court was silent on defendant's admissions which support Manning's claims.

In short, this case became convoluted when the Court allowed defendant to argue issues from Manning's EEOC complaint 4J-606-0057-17 which involved a different post office, Irving Park, and a different management team from the years of 2016 & 2017. Though Manning objected and argued the issues from Irving Park and her OWCP files were neither a part of the case nor are they before the court. The Court overruled Manning and improperly included events from Manning's EEOC complaint 4J-606-0057-17 for Irving Park and Manning's OWCP status to form the backdrop of this complaint. Order entered 11/8/2022. [App. pg. 28, FN 2] Moreover, those events helped to shape the Court's opinion in the wrong direction.

In the second order [App. Pg 26] the Court summarized some background facts presented in Manning's 59(e) motion for reconsideration in which the Court noted, Manning's employment history prior to her move to the 22nd Street post office in July 2017, including her performance at the Irving Park post office, her OSHA complaint about equipment failure there, and the circumstances that prompted her to apply for a reassignment to 22nd Street; Manning could have cited these "critical" facts at the summary-judgment phase but did not do so. Furthermore, these additional details have no apparent relevance to the issue presented on summary judgment--whether Bates' action was in retaliation for activity that implicated Plaintiff's protected class of disability-nor are they relevant to whether Plaintiff was meeting the USPS employment expectations at the relevant time, March 2018. *Id.*

9

To be sure, Manning did not address the events from Irvin Park or her OWCP status at the summary-judgment stage because those events were not a part of this complaint. In *Joanne Teal, Plaintiff-Appellant, v. John E. Potter, Postmaster General, Defendant-Appellee,* No.07-2359, the 7th Cir. Held: [a]s a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v.Western & Southern Life Ins.Co.*31 F.3d 497,500 (7th Cir.1994) (citing *Alexander v.Gardner-Denver Co.,* 415 U.S. 36, 47 (1974)); see also *Rush v. McDonald's Corp.,* 966 F.2d 1104 (7th Cir.1992) Here, it was not Manning; it was defendant and the court whom brought claims from a different EEOC case into this complaint. Nonetheless, that is not what the Court said in its first decision. [App. Pg. 28, FN 2] Instead, the Court explained;

> "Because her discrimination claim is no longer before the Court, plaintiff raises relevance objections to defendant's fact statement pertaining to her employment history and complaints prior to and after March 2018. As to the facts recited by the Court, those objections are overruled because this history is essential context for the events from which plaintiff's retaliation claim arises. Plaintiff's view of the scope of relevant evidence is unreasonably narrow....because even after a review of plaintiff's response brief, it remains unclear exactly which of plaintiff's prior protected activities are the basis for her retaliation claim. Because the Court has overruled the relevance objections, plaintiff does not in the alternative admit or dispute the employment-history facts to which she objects, and defendant submits and cites supporting evidence, the Court deems those facts admitted. See N.D.ILL.LR 56.1(e)(2). [Dkt.104 pg. 2]

Now that the Court understand in hind-sight, that Manning's employment at Irving Park station was not relevant, it does not undo the harm done because those irrelevant facts attributed to the reason Manning lost this case. Second, the Court also authorized defendant to use Manning's OWCP medical records. Manning objected. Mag. Judge Jantz overruled Manning's objections. [App. pg. 36] But, Judge Guzman upheld the ruling of Mag. Judge Jantz. [ECF No. 72] That said, the Court's second order validates

Manning's objections on relevance which the Court overruled. Since the Court did not strike out or amend the parts of its first order [App. at 28 pg. 1] overruling Manning objections, the order harmed Manning's case because defendant intentionally misrepresented Manning's job description. Defendant over played the distribution duties. [App. Pg. 59 ¶5]

What is more, Manning absolutely object to the fact that the Court used her employment history prior to her move to 22nd Street. The case before the Court is EEO no.4J-606-0034-18. To bring a lawsuit under the Rehabilitation Act, plaintiffs must exhaust administrative remedies and cannot bring claims in the lawsuit not in the original EEOC charge. *Chaidez v. Ford Motor Co.,* 937 F.3d 998,1004 (7th Cir. 2019); see also *McGuinness v. U.S. Postal Serv.,* 744 F.2d 1318,1319–20 (7th Cir. 1984.) That is exactly what defendant did. Also, an employer can not use the denial of an employees OWCP claim in order to deny the employee light duty. *Germain v Potter,* EEOC Appeal No. 012008277. Defendant is subject to laws established by EEOC.

Meanwhile, the Court took the position that Manning's disability or protected activity was the sole cause of the challenged employment decision where the court explained, it is not sufficient that Bates could have or even should have known about the protected activity; she must have had "actual knowledge" of it for her decision to be retaliatory. *Lesiv,* 39 F.4th at 915; *Luckie v. Ameritech corp.* 389 F.3d 708,715 (7th Cir.2004). [App. pg. 32 ¶ 4] Nonetheless, when Manning produced evidence that Mgr. Bates had actual knowledge of Manning's EEO activity (*Bates admission that Manning presented PS Form 1110) to* Mgr. Bates on 3/29/2018; and, the form is a request for official time to work on an EEO complaint the Court moved the goal post via changing the requirement from

11

Bates had to have actual knowledge to Bates was not the subject of Manning's protected activity where the court explained [t]he evidence is that Manning and Bates had very little contact between then through the end of March. Bates was not the subject of plaintiff's complaints or grievances that were filed prior to 3/30/2018 and plaintiff fails to submit evidence that Bates was involved in or notified about those proceedings prior to that date. [App. Pg. 33 ¶ 1]

In *Lesiv* the case law cited by the court, that court pointed out, "after the state agency dismissed the charge, *Lyubomir* filed a lawsuit in state court in July 2017. *Lesiv* was a witness in that lawsuit and testified in a deposition in April 2018. Critically, however, *Lesiv* has not submitted evidence that his supervisors who took action against him in the summer of 2018 were aware of his testimony." *Lesiv* 39 F.4th, 909. At its core, *Lesiv* could not prove that his supervisors were aware of his testimony. In contrast, Manning was able to prove Bates had actual knowledge of her protected activity. Therefore, the Court misapplied *Lesiv* which is a manifest error of law.

As well, the Court again disputed that Bates was aware of Manning's EEO activity on 3/30/2018 when the court decided: It is unclear whether Bates even saw the form; plaintiff testified that she "tried to present" Bates with it and that Bates told her to return with it the following day.[App. Pg. 34 ¶ 2] The Court also opined, "Even assuming for the purposes of the instant motion that Bates saw the form and that the request for official time constituted protected activity, suspicious timing is rarely enough to create a triable issue, *Seri v. Community College District No. 514*, No. 21-2696, 2022 WL 807864, at*3 (7th Cir. 3/16/2022), and any inference of causation that is supported by temporal

12

proximity may be negated by circumstances providing an alternative explanation for the challenged actions, *Jokich v Rush University Medical Center*, 42.F.4th 626,634 (7th Cir.2022). [App. Pg. 34 ¶ 2]

The Court is mistaken again, it is not "unclear" whether Bates saw the form since Bates admitted that Manning presented the form; the form was a request for official time to work on an EEO complaint. *Def.'s Response* to Manning's Statement of additional material facts "SAMF" [App. pg.52 ¶ 21] Because the court acknowledged, Manning satisfied the first and second elements of the direct method of proof for retaliation [App. Pg. 32] the missing element was a casual connection between Manning's protected activity and Bates having knowledge of Manning protected activity. Bates admission constitutes knowledge. Therefore, Manning met the third element. But the Court shifted to temporal proximity may be negated by an alternative explanation.

If the alternative explanation the Court settled on is Manning was not meeting her employers expectations, that explanation does not hold water since; (1) Bates signed Manning's PS Form 3971 Request for or Notification of Absence on 3/30/2018 annotating on the form, ***"Employee is not limited duty***; employee does not have an approved light duty case; informed employee to submit light duty request." 2nd Am. Complt. "[App. pg. 37]. Thus, Bates' annotations reveal her thought process at the time which should satisfy the temporal proximity rule to refute suspicious timing.

Evenmore, Bates did not document anywhere in Manning's record that she sent Manning home because Manning could not do her job; the Court did not consider the job description provided by Bates in her affidavit dated 6/7/2018; [App. pg. 40]. Instead, the Court relied on the representation by defendant that the functional

purpose of the SSDA (clerk) is distribution. [ECF No. Dkt 92 ¶ 5] Manning objected

and disputed arguing that defendant listed (4) out of (13) functions. *See* Manning's

Response No. (1) to defendant's SMF. [App. Pg. 60 ¶5 ] (top of the page)

In addition, Manning produced documents for an EEOC settlement that was

pending payment in March of 2018. EEOC awarded Manning back pay based on

defendant's failure to provide Manning with light duty work in 2014. Defendant was

found in violation of the Rehabilitation Act. Manning's SAMF [ECF 95 pgs. 48-49] Yet,

according to the Court, Manning did not elaborate of the nature of the three of four

awards arising from the 2016 EEOC decision. Manning stated that EEOC reversed the

postal service final decision on case no. 4-606-0122-14 with a finding of discrimination

based on disability. EEOC awarded Manning back pay from 4/28/2014 - 1/9/2015.

[ECF No. 95 pg. 3 ¶ 18] The decision was submitted in its entirety. [ECF No. 95 pgs. 42 -

53] EEOC's conclusion of disability discrimination is on pg. [ECF No. 95 pg. 49]

Manning also submitted Ex. 26, *Step B Impasse Decision* that gave the background for

five (5) of Manning's settlement grievances that defendant failed to comply with or

explain why defendant had not complied. [Dkt 95 at pgs. 33-36] The Step B, Impasse

decision specifically states: The Nat'l Association of Letter Carriers reached in Impasse

for Branch Grievance No.2017-2462 where one decision covered four (4) of Manning's

back pay settlement awards that defendant failed to pay. For each grievance number,

the decision expressly state. The back pay award is for violation of Art. 13, when

Grievant (Manning) was denied light duty. The decision also state that management's

failure to comply is not optional. [*Id.* at 36] Its conceivable, defendant wanted revenge.

There were also grievance settlements for defendant not allowing Manning to return to

14

duty in 2015 for which defendant was again found in violation of Article 13 of the collective bargaining agreement for its failure to provide Manning with light duty work in 2014 and 2015. [*Id.* pgs 33-44]

Payment was still pending in March 2018 because defendant *would not pay up*. There were documents in Manning's SAMF from Manning's station file including an office file copy of an award check cut in March of 2018 for $35,371.27 for an EEOC settlement that was sent to the manager of the station whom at the time was Bates. Manning's SAMF [ECF No. 95 pg. 57] All of the back pay awards were connected to either a grievance or EEOC complaint for defendant's failure to provide Manning with light duty work and was therefore protected activity; defendant had motive to retaliate against Manning. Bates was just one actor in the grand scheme of things.

Even more, the Court did not consider Mgr. Bates' admission to the following facts that were in Manning's SAMF [ECF No. 95] (1)Bates signed Manning's PS Form 3971 Notification or Request for Absence with the annotation written by Manning, "I am instructed to leave and not to return until I have been approved for light duty. *Def's Response* to RFA No.1. [App. Pg. 45 ¶1]; (2) Mgr. Bates admitted she told Manning not to return until she was approved for light duty. [*Id*¶2]; (3)Bates admitted Manning did not submit medical documentation in order to return to duty in April of 2019; [*Id* ¶3] (4) Bates admitted Manning was off the clock from April of 2018 through April of 2019; [App. pg. 46 ¶ 4]; (5) Bates admitted Manning was not given an instruction to call in or to submit PS Form 3971 [*Id.* ¶ 5]; (6) Bates admitted charging Manning with AWOL from 4/20/2018 through 3/21/2019. [App. Pg. 47 ¶ 7]; and (7) Bates admitted employees charged with AWOL can be put up for removal; [*Id.*¶8]

Bates also admitted she went back to Hegewisch her home station in July of 2018. [App. pg. 48¶13] The time frame when Bates left 22nd Street Station in July 2018 overlap with the time frame when Bates charged Manning with AWOL from 4/20/18 - 3/21/19; (9) Bates testified Manning was not allowed to work six hours per day until 4/22/2019 due the the drastic change in her restrictions. [App. Pg.48 ¶14] Yet, Bates admitted Manning's restrictions dated 2/15/18 and 7/9/18 are practically identical except they are on a different form. [*Id.* Response¶15] That demonstrates pretext.

The Court did not explain why Bates was not held accountable for her admission to facts. What is more, Bates was not able to produce a postal policy to support her decision to put Manning off the clock. [App. Pg. 46 ¶5] Bates' also was not able to produce a policy to support her assertion that clerks can not sit on their stools while performing transactions. Def's Supplemental Response to Interrogatory No. 22. [Dkt37 pg. 48 ¶22] Clearly, the Court did not review the case in the light most favorable to the nonmovant Manning as required. *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014).

*Argument - 2*

9.2  The Federal Rules Permit Plaintiffs to Plead Claims of Retaliation And Disability
     Discrimination in the Same Complaint.

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." at 42 U.S.C. § 2000e-3 (a)

also at 29 C.F.R. §1614.101(b) This case is based on discrimination via disability retaliation [ECF No. 19 pg. ¶26] because Mrg. Bates used Manning's restrictions to classify Manning as light duty to put Manning off the clock on 3/30/18. [App. Pg. 37]

On 5/8/2018, Manning submitted a request for reconciliation of job title/duties to Wanda Prater, Officer In Charge. [App. Pg. 32 ] The Court construed Manning's request as a request for a reasonable accommodation even if Manning did not use the magic word "disability." [App. pg. 32 ] Yet, the Court did not follow the law because the ADA at 29 C.F.R.§1630.2(o)(3) require that an employer may need to initiate the interactive process to determine an appropriate accommodation. The Court acknowledged Bates stated Manning's medical condition was a factor and that Manning could not do her job, but the Court failed to acknowledge that defendant fall under the purview of the Rehabilitation Act which afford federal employees more protection than the laws for the state, local government or private sector.

Nonetheless, defendant did not respond to Manning's 5/8/2018 letter. So, Manning submitted a request for light duty on 7/13/2018. Mgr. Bates signed off on Manning's request for light duty indicating that work was not available. Manning filed another EEO Complaint no. 4J-606-0021-18, in which Bates was also named. While this case was pending, EEOC's Office of Federal Operations"OFO"reversed defendant's decision that no discrimination was found awarding Manning back pay from 7/20/2018-4/22/2019 due to defendant's failure to engage in the interactive process. In *Sansone v. Brennan*, postmaster 917 F.3d 975,980 (7th Cir.2019), liability arises from these types of allegations only when"the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual."

17

*Rehling v.City of Chicago*, 207 F.3d 1009,1016 (7th Cir.2000)(footnote omitted)

Instead, the Court saw fit to mention that Bates gave the light duty form signed on 3/2/2018 by Talena Franks-Cummings back to Manning on 3/30/2018. [App. Pg. 30] But, the Court did not explain how or why Mgr. Bates returning a form to Manning that was signed (28) days earlier by a different manager should matter since Bates admission that Manning worked various hours in March 2018 up to 5.99 or 6 hours per day. Manning working up to 6 hours per day negates Bates' argument that Manning could not do her job. [App. Pg. 57¶ 31] Despite the court's effort to pinpoint one event as the trigger, it is not a requirement to have one event as the sole causation for Bates actions. See *Nassar*, 133 S.Ct.At 25 at 2534; see also *Kwan v. Andalex Grp.*, 737 F.3d 834, 846 (2nd Cir. 2013) ("[B]ut-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of a retaliatory motive.")

Indeed, it is well-settled that neither any agency nor a court need find that the underlying conduct about which the individual complained is discriminatory in order for the retaliation protection to attach. *Wyatt v. City of Boston*, 35 F.3d 13,15 (1st Cir.1994) ('[T]here is nothing in the wording of the participation clause 'requiring that the charges be valid, nor even an implied requirement that they be reasonable.") accord *Ray v. Ropes & Gray LLP*, 961F.Supp.2d 344, 35 (D.Mass.2013) (quoting *Wyatt*), aff'd. 799 F.3d 99 (1st Cir. 2015). *Ray v. Ropes & Gray LLP*, 961 F.Supp. 2d 344, 354 (D.Mass.2013) (""The employer's reasons need not be wise, so long as they are not discriminatory and they are not pretext."*Tardanico v. Aetna Life & Cas. Co., 41 Mass. App. Ct.* 443, 448, 671 N.E. 2d 510 (1996). If the employer passes this test, the plaintiff must come forward with

18

evidence showing that the employer's proffered reason is a pretext and that a discriminatory animus was at the heart of the employer's actions. *Conward v. Cambridge Sch. Comm.*, 171 F.ed 12, 19 (1999.")

By extension, Manning came forward with evidence that when she returned to duty on 4/22/19, defendant used her old restrictions dated 7/9/2018 to accommodate her. Def.'s Response to Request for Admission No. 9 [App. Pg. 46, first ¶] Those restrictions were the same restrictions Manning had in place when Bates put her off the clock on 3/30/2018. Even more, when Manning returned to work she performed the same duties that she performed before Bates put her off the clock. Therefore, defendant can not pass the smell test. Bates did not put Manning off the clock because Manning was light duty or had restrictions. Instead, Bates reasons were a pretext to conceal discrimination via retaliation unlike what the Court opined, "The issue is whether Bates honestly held these views, not whether she exercised poor judgment. [App. Pg. 34] Manning would not have been off the clock for a year but for defendant's retaliation.

Ultimately, the Court disregarded Manning's argument, if Bates did not retaliate against her in the beginning, surely Bates retaliated her after she amended her complaint. [App. Pg. 33 ¶ 2] The court got stuck on the fact that Manning did not amend her complaint until 4/9/2018 where the Court opined, Bates' action on 3/30/2018 could not have been in retaliation for protected activity that came later. *See Durkin v. City of Chi.*, 341 F.3d 606, 614-15. [*Id.*] In *Durkin* the court also opined, "While we have held that an employee may engage in protected activity under § 2000e-3(a) even if the conduct at issue does not violate Title VII, *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994), we have never held that an employer can retaliate when

19

there has been no protected expression. It was not until September 9, 1999 that Durkin requested a meeting with Clark. *Durkin never engaged in statutorily protected expression until this meeting.*" *Id.* In contrast, the Court acknowledged that Manning has a long history of grievances. [App. pg. 33 ¶ 1] Hence, *Durkin* is not applicable. Indeed, the Court misapplied *Durkin*. In this case, the District Court repeatedly cites:

> Manning failed to submit evidence of a causal link between Bates 'action and plaintiff's protected activity ;(2) There was no evidence that Bates had actual knowledge of Manning's union grievances or EEO and EEOC complaints and insufficient evidence to allow a factfinder to reasonably infer that plaintiff's attempt to submit a request form for official time to work on an EEO matter caused Bates' actions: and (3) Plaintiff failed to offer evidence the in"indirect" burden shirting method of proof that she was meeting defendant's legitimate expectations and treated less favorably than similarly situated coworkers who did not engage in protected activity. [App. pg. 25 ¶ 1]

That said, the Court again required Manning to identify one specific event as proof that she was subjected to retaliation when in fact Manning is claiming defendant retaliated against her ; (1) when Manning was put off the clock and (2) defendant denied Manning's light duty request submitted on 5/8/2018 and 7/13/2018 (3) Manning's protected activity was ongoing in March 2018 because EEOC and grievance payments were still pending.

Pursuant to Fed. Rules of Civ. Proc. 8(d) a "party may state as many separate claims or defenses as it has, regardless of consistency," and if a "party makes alternative statements, the pleading is sufficient if any one of them is sufficient." In the Federal sector the Court is required to review the case as a whole. *Joll v. Valparaiso Comty. Sch.*, 953 F.3d 923, (7th Cir.2020) We reverse the dismissal of *Joll's* sex discrimination claim.The court appear to have erred by doing what we have repeatedly said a court should not:"asking whether any particular piece of evidence proves the case by itself,"

rather than aggregating the evidence "to find an overall likelihood of discrimination." *Oritz v. Werner Enterprises Inc.*, 884 F.3d 760, 763, 765 (7th Cir. 2016). The Court considers all of the record evidence to determine whether a causal link exists. *Lauth v. Covance, Inc.*, 863 F.3d 708,716 (7th Cir.2017) But, the Court did not do so when weighing the evidence presented by Manning in support of her claim. (""Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself.... Relevant evidence must be considered and irrelevant evidence disregarded, "and the case must be assessed for an"overall likelihood of discrimination."*Ortiz*, 834 F. 3d. at 765, 763.")

Similar to this case, it was decided in *Igasaki* that a claim for a breakdown of the interactive process must thus be ancillary to any ADA claim and is not an ADA claim unto itself. This is because "[i]n this area of the law, we are primarily concerned with the ends, not the means." *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). As the Court opined, a Fed. Rule of Civ.Proc. 59(e) motion for reconsideration is an extraordinary remedy reserved for the exceptional case." *Vessey v.Envoy Air. Inc.*, 999 F.3d 456,463 (7th Cir.2021).[App. Pg. 25] That said, this is an exceptional case because the court did not apply Federal anti retaliation laws to the facts of this case. A"manifest error occurs when the district court commits a "wholesale disregard, misapplication, or failure to recognize controlling precedent."*Burritt v. Ditlefsen*, 807 F.3d.239, 252-253 (7th Cir. 2015) To survive a motion to dismiss, a claim must be plausible rather than merely conceivable or speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 556 (2007)" The plaintiff must include enough details about the subject matter of a case to present a story that holds together, but the proper question is

could these things have happened, not did they happen."*Carlson v.CSX Transp., Inc.* 758

F.3d 819,826-27 (7th Cir. 2014). Had the court considered how defendant's admission to

facts measure up to Federal laws, 29 C.F.R.§1630.2(ii) that require the employer to

engage in the interactive process to identify a potential accommodation for an employee

including but not limited to job restructuring, acquisition of equipment or modification

of a schedule there would have been a different outcome.

Conclusion

For the foregoing reasons, the decision of the district court should be vacated.

Judgment should be entered in favor of Gwenesther Manning with an award of

seventy-four (74) days of back pay with benefits and an award of compensatory

damages if the Court see fit.

Submitted by:

*Gwenesther Manning*

Gwenesther Manning, *Pro Se*

*Certificate Of Service*

I certify that on July 31, 2023, a copy of foregoing brief was sent via First Class Mail

and email to Virginia Hancock, AUSA, Dirksen Federal Building, 5th Fl., 219 South

Dearborn St., Chicago, IL 60604; and email address virginia.hancock@usdoj.gov

*Gwenesther Manning*

Gwenesther Manning, *Pro Se*
19214 Lange Street
Lansing, IL 60438
312-622-5783
Keeppushing55@yahoo.com

## Certificate Of Compliance With Type-Volume

1. I certify that this document complies with the type-volume limits of Fed. R. of Appellate Procedure 32(a)(7)(B) because it contains 5,196 words, excluding the parts of the brief exempted by Fed. R. Appellate Proc. 32(a)(7)(B).

2. I further certify that this brief complies with the typeface requirements of Fed. R. of Appellate Proc. 32(a)(5) and the type style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Book Antiqua font, 12- point type.

## Statement On Compliance With Circuit Rules

I, certify the attached appendix complies with Circuit Rule 30(a) and does in fact include copies of the orders under review and all the materials required by Circuit Rule 30(b) which include excerpts and documents that address the issues raised on appeal. The documents submitted in the attached appendix "App." do not exceed 50 pages in length.

## Statement on Oral Argument

Oral argument is not requested in this matter.

Dated:  July 31, 2023

Gwenesther Manning, *Pro Se*
19214 Lange Street
Lansing, IL 60438
312-622-5783
keeppushing55@yahoo.com

Appendix                                                                    Page

Orders by the Honorable Judge Ronald A. Guzman On:

    Manning's 59(e ) Motion For Reconsideration, [ECF No.116] Filed 4/10/2023 . . 25-27

    Defendant's Motion For Summary Judgment [ECF104] Filed 11/8/2022 . . . . . .. 28-35

Order by Magistrate Judge Jantz [ECF No. 61] pg. 1, Filed 3/30/2022 On:

    Defendants Motion to Compel [ECF No. 31]; and

    Manning's Motion For Protective Order [ECF No. 40]  . . . . . . . . . . . . . . . . . . . . . . . . 36

Defendant's Response to Manning's L.R. 56.1 Statement of Additional Facts
    [ECF No. 100 s paragraphs 1-8;13-22; 28; 31-35] Filed 9/12/2022 . . . . . . . . . . . . 45 -58

Defendant's LR 56.1 Statement of Material Facts, Filed 7/7/2022
    [ECF No. 92 pg. 2 ¶ 5] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Manning's Exhibits - Second Amended Complaint, [ECF. No. 19] Filed 9/23/2021

    *PS Form 3971* Request for or Notification of Absence dated 3/30/2018 [*Id.* pg. 11] . . 37

    3/6/2019 Five-Day Absence Notice to Manning from Bates [*Id.* pg. 12] . . . . . . . . . . 38

    3/6/2019 Notice of Investigatory Interview to Manning [*Id.* pg. 13] . . . . . . . . . . . . . 39

    Bates affidavit, pg. 9 clerk duties was required to perform [ECF No. 37 pg. 12] . . . . 40

Defendant's Supplemental Response to Manning's Interrogatory No. 22 . . . . . . . . . . . 41
    [ECF No. 37, pg. 48 ¶22]   Filed 1/10/2022

Manning's 5/8/2018 Letter to Wanda Prater, Officer In Charge [ECF No.108, pg. 75]
    Re: Reconciliation of Job/Title (reasonable accommodation) Filed 12/6/2022 . . . . . 42

Manning's Response to Def.'s Statement of Material Facts [ECF No. 94, pg. 3]
    Response No. 1: Object, Def. Listed 4 of 13 job functions, Filed 8/18/22 . . . . . . . . . . 60

Manning's 56.1 Statement of Additional Material Facts [ECF No. 95 ¶15 pgs. 31-32]
    Restrictions dated 2/15/18 & 7/9/18 almost identical; Filed 8/18/22. . . . . . . . . .43-44

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GWENESTHER MANNING,  )
)
      Plaintiff,  )
)
    v.  )     No. 21 C 1440
)
LOUIS DEJOY, Postmaster General,  )     Judge Ronald A. Guzmán
)
      Defendant.  )

## ORDER

Plaintiff's motion for reconsideration under Federal Rule of Civil Procedure 59(e) [108] is denied.

## STATEMENT

Plaintiff, Gwenesther Manning, is a retired United States Postal Service ("USPS") employee who brought this pro se action against Postmaster General Louis DeJoy for disability discrimination and retaliation in violation of the Rehabilitation Act. After plaintiff voluntarily dismissed her discrimination claim, defendant moved for summary judgment on the remaining claim for retaliation. In that claim, plaintiff asserted that her supervisor, Tiffany Bates, retaliated against her for having engaged in statutorily-protected activity by taking her "off the clock" on March 30, 2018 and instructing her that she could not return to work until her request for light-duty work had been approved. The Court granted defendant's motion for summary judgment because plaintiff had failed to submit evidence of a causal link between Bates's action and plaintiff's protected activity. There was no evidence that Bates had actual knowledge of plaintiff's union grievances or EEO and EEOC complaints and insufficient evidence to allow a factfinder to reasonably infer that plaintiff's attempt to submit a request form for official time to work on an EEO matter caused Bates's action. Plaintiff also failed to offer evidence under the "indirect" burden-shifting method of proof that she was meeting defendant's legitimate expectations and was treated less favorably than similarly situated coworkers who did not engage in protected activity.

Plaintiff moves under Federal Rule of Civil Procedure 59(e) for reconsideration of the Court's summary-judgment ruling. "Relief under Rule 59(e) is an extraordinary remedy reserved for the exceptional case." *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 463 (7th Cir. 2021) (internal punctuation and citation omitted). A Rule 59(e) motion is proper only when "the movant presents newly discovered evidence that was not available at the time of [the judgment] or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *Burritt v. Ditlefsen*, 807 F.3d 239, 252-53 (7th Cir. 2015). A "manifest" error occurs when the district court commits a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* at 253.

Plaintiff first asserts that "[d]espite the fact that the court was able to lay out a reasonable summary of [plaintiff's] complaint history, there are missing critical details that were omitted by defendant." (ECF No. 108, Pl.'s Rule 59(e) Mot. at 1-2.) Plaintiff goes on to discuss various background facts about her employment prior to her move to the 22nd Street post office in July 2017, including her performance at the Irving Park post office, her OSHA complaint about equipment failure there, and the circumstances that prompted her to apply for a reassignment to that post office. Plaintiff could have cited these "critical" facts at the summary-judgment phase but did not do so.[1] Furthermore, these additional details have no apparent relevance to the issue presented on summary judgment—whether Bates's action was in retaliation for activity that implicated plaintiff's protected class of disability—nor are they relevant to whether plaintiff was meeting the USPS's employment expectations at the relevant time, March 2018.

Next, plaintiff argues that the Court erred in concluding that she failed to identify evidence that would allow a reasonable juror to infer that there was a causal connection between her protected activity and Bates's putting her off the clock. Plaintiff reiterates her arguments that Bates's decision must have been retaliatory because plaintiff had requested time off the previous day to work on an EEO matter and that certain evidence supports an inference of pretext. But a Rule 59(e) motion cannot be used to rehash previously rejected arguments. *Givens v. Vaughn*, No. 20-2555, 2021 WL 3661206, at *3 (7th Cir. Aug. 18, 2021).

Plaintiff also advances arguments and theories that were not previously raised and in any event are without merit. She invokes a "cat's paw" theory of liability, contending that Bates attended a "blue door" meeting[2] before she took plaintiff off the clock, and speculates that Bates took this action "at the direction of someone else." (Pl.'s Rule 59(e) Mot. at 6-7, 12.) Plaintiff suggests only in passing who would have been directing Bates (citing no evidence of that person's discriminatory animus) and refers only generally to "many of the decision makers" with whom she had a contentious relationship. (*Id.*) But putting to one side the undeveloped and speculative nature of the argument, it is inappropriate on a Rule 59(e) motion to invoke a theory that could have been raised in the summary-judgment briefing but was not. *See Barrington Music Prods., Inc. v. Music & Arts Ctr.*, 924 F.3d 966, 968 (7th Cir. 2019) ("Rule 59(e) does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment.") (internal punctuation and citation omitted). The same holds true for plaintiff's expansion of her claims and previous arguments. For instance, while plaintiff previously took the position on summary judgment that her reasonable-accommodation and light-duty requests were irrelevant and "not before the court," (ECF No. 94, Pl.'s Resp. Def.'s LR 56.1 Stmt. at 6-7), she

---

[1]     It also appears that plaintiff may not have previously submitted at least some of the many exhibits attached to her current motion. A motion for reconsideration "is not an opportunity to present evidence that a party [could] have submitted the first time." *Elizarri by Perez v. Sheriff of Cook Cnty.*, No. 17 C 8120, 2022 WL 3369254, at *1 (N.D. Ill. Aug. 16, 2022).

[2]     Evidently, a "blue door" meeting may be a meeting of USPS managers or supervisors. But plaintiff testified at her deposition that she did not know and "c[ould] only assume" what this type of meeting is. (ECF No. 92-2, Def.'s Ex. 1, Dep. of Gwenesther Manning at 143.)

now maintains that Bates retaliated against her for having submitted those requests, not merely for having submitted union grievances and EEO and EEOC complaints. (Pl.'s Rule 59(e) Mot. at 13.) Plaintiff also makes the unsupported assertion that Bates's conduct must have been retaliatory because she did not follow USPS policy to refer plaintiff's light-duty request to the district's reasonable-accommodation committee before taking her off the clock. These new arguments are improper on a motion for reconsideration.

Plaintiff has not shown that the Court manifestly erred in its summary-judgment ruling in defendant's favor. Her motion for reconsideration is therefore denied.

DATE:   April 10, 2023

Hon. Ronald A. Guzmán
United States District Judge

27

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GWENESTHER MANNING,      )
                                  )
        Plaintiff,          )
                                  )     No.  21 C 1440
      v.                       )
                                  )     Judge Ronald A. Guzmán
LOUIS DEJOY, Postmaster General,  )
                                  )
        Defendant.     )

### MEMORANDUM OPINION AND ORDER

Plaintiff, Gwenesther Manning, is a retired United States Postal Service ("USPS") employee who brought this pro se action against the USPS for disability discrimination and retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* The USPS moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the reasons explained below, the Court grants the motion.

### MATERIAL FACTS

Plaintiff was a longtime employee of the USPS prior to her retirement in 2020. It is clear from the history set out by the parties that plaintiff's employment was contentious, involving her numerous complaints and grievances, including complaints regarding accommodation of work restrictions.[1] Some of those complaints form the backdrop for this dispute.[2]

---

[1]     Perhaps as a reflection of this history, the parties have included several facts in their Local Rule 56.1 fact statements that are not material to the Court's ruling on defendant's motion. They also quibble over those facts and the admissibility of certain documents. The Court has disregarded those portions of the parties' submissions that are immaterial to the issues on summary judgment.

[2]     Because her discrimination claim is no longer before the Court, plaintiff raises relevance objections to defendant's fact statements pertaining to her employment history and complaints prior to and after March 2018. As to the facts recited by the Court, those objections are overruled because this history is essential context for the events from which plaintiff's retaliation claim arises. Plaintiff's view of the scope of relevant evidence is unreasonably narrow. Furthermore, the Court has set out a more comprehensive summary of plaintiff's complaint history because even after a review of plaintiff's response brief, it remains unclear exactly which of plaintiff's prior protected activities are the basis for her retaliation claim. Because the Court has overruled the relevance objections, plaintiff does not in the alternative admit or dispute the employment-history facts to which she objects, and defendant submits and cites supporting evidence, the Court deems those facts admitted. *See* N.D. Ill. LR 56.1(e)(2) ("In the event that [an] objection [to a LR 56.1 statement] is overruled, the failure to admit or dispute an asserted fact may constitute a waiver.").

Plaintiff worked as a letter carrier for many years. In 2015, she requested and received certain accommodations for a disability, based on a diagnosis of lumbar radiculopathy. She subsequently moved to a position as sales service distribution associate ("SSDA") at the Irving Park post office in Chicago. The duties and responsibilities of an SSDA include distribution of mail. In 2017, plaintiff submitted another disability accommodation request, and an interactive process involving various reassignment, modification, and accommodation offers and requests ensued. In April 2017, plaintiff submitted a workers' compensation claim for an injury to her lower back sustained in December 2016 and caused by pushing equipment into the post office. In July 2017, while the workers' compensation request was pending, plaintiff sought and received an SSDA position at a different location in Chicago, the 22nd Street post office.

In January 2018, plaintiff was offered a modified job assignment in relation to the December 2016 injury. This limited-duty assignment still involved distribution. Plaintiff accepted the modifications "under protest," stating on the modified-assignment form that the duties were still "outside of [her] restrictions per walking, standing, [and] lifting intermittently[,] not continuous." (ECF No. 92-2, Def.'s Ex. 10.) Shortly thereafter, in January 2018, plaintiff submitted (in conjunction with her workers' compensation proceedings) a Duty Status Report, also known as a "CA-17" form, completed and signed by one of her physicians. The physician noted plaintiff's diagnosis of lumbar radiculopathy; stated that plaintiff could not climb, kneel, bend, stoop or twist and could stand and walk only intermittently for a reduced number of hours per day; and recommended a "sedentary position" for plaintiff. (ECF No. 92-2, Def.'s Ex. 11 at 1.) In another CA-17 report signed by plaintiff's physician on February 15, 2018 and submitted by plaintiff in March 2018, the physician recommended "sedentary position or disability retirement" and stated that plaintiff could stand and walk only intermittently for one hour per day, could not bend or twist, and was limited to pulling or pushing 20 pounds at a time (rather than the 70 pounds required for the position). (*Id.* at 2.) On March 14, 2018, plaintiff's 2017 workers' compensation claim was denied by the Department of Labor's Office of Workers' Compensation Programs.

Around the same time, plaintiff filed complaints regarding her medical restrictions. On February 16, 2018, plaintiff's union submitted a grievance on her behalf that requested "reasonable accommodation" for her "per her restrictions." (ECF No. 92-2, Def.'s Ex. 12.) On February 27, 2018, plaintiff filed a formal complaint with the USPS's Equal Employment Opportunity ("EEO") office in which she alleged that managers Debra Brown, Genesis Green, and "Ms. Cumming" had discriminated against her on the basis of a disability, in 2017 and ongoing, by "ignoring [her] restrictions." (ECF No. 92-2, Def.'s Ex. 14 at 1.) Plaintiff asserted in the complaint that there was a "need to revisit" her assignment, explaining that her distribution duties were too strenuous. (*Id.* at 3.) She stated, among other things, that it was "impossible" for her to "sort post without some bending or twisting" and that although she had told her supervisors that she could not "work post" for longer than 4 hours, they had instructed her to continue to "work post" or "go home." (*Id.* at 4.) Plaintiff sought compensatory damages and requested that her position be changed to "a sedentary position." (*Id.* at 4, 6.)

On March 2, 2018, plaintiff gave her supervisor, Talena Franks-Cummings, a written "request for temporary light duty" (a modified job assignment to accommodate a non-work-related injury). (ECF No. 92-2, Def.'s Ex. 15; ECF No. 92-2, Def.'s Ex. 1, Dep. of Gwenesther Manning

at 117–18.) Part A of the request form, which is the section for employees to complete, states in pertinent part: "I have attached appropriate medical documentation to support my request." (Def.'s Ex. 15.) At her deposition, plaintiff testified that she "may have given" Franks-Cummings "a copy of [her medical] restrictions," but she "know[s]" she told Franks-Cummings "that they were already on file," meaning that they were in plaintiff's "station file." (Manning Dep. at 117–18.)

The next day, on March 3, 2018, plaintiff spoke for the first time to a new supervisor, Tiffany Bates. It was Bates's first day on the job at the 22nd Street post office as a customer-service manager. Plaintiff approached Bates and asked her if they could have a conversation about plaintiff's restrictions. According to plaintiff, she told Bates that she had a back condition but did not go into detail, and Bates responded that they would "talk about it." Plaintiff says that she spoke to Bates again on March 5 and told Bates that other managers had her working reduced hours but that she was able to work more hours. Then, on March 29, 2018, plaintiff had a "brief conversation" with Bates in which she asked Bates for approval for official time to work on an EEO matter and presented Bates with a USPS Form 1110 request for approval of this time.[3] (Id. at 141–42.) Bates said that she was not familiar with the form and would have to ask someone about it, so she told plaintiff to bring the form back the following day, March 30.

According to plaintiff, when she spoke to Bates on March 30, Bates sent plaintiff home, informing plaintiff that due to her medical restrictions she could not let her work until she had been approved for light duty. Plaintiff testified at her deposition that during that conversation, Bates also "gave [plaintiff] back the form that was signed on March 2 where it said light duty work was not available." (Id. at 148.) On Part B of the form, which states that it is "to be completed by employee[']s immediate supervisor and submitted to the Postmaster" and refers to "the medical restrictions outlined on the accompanying Physician or Practitioner's Certification," there is an "X" in the blank next to the designation "Work IS NOT Available In My Unit," and it is further noted: "No medical restrictions outlined was [sic] submitted by employee. This is the only form submitted." (Def.'s Ex. 15.) The form appears to have been signed by Franks-Cummings and another supervisor, Genise Green, and both signatures are dated March 2, 2018.

Plaintiff says that during her conversation with Bates on March 30, 2018, she requested a Form "3971," which is a "Request for or Notification of Absence." (Manning Dep. at 148.) She and Bates completed and signed the form, on which Bates appears to have written "employee is not limited duty; employee does not have an approved light duty case; informed employee to submit light duty request," and plaintiff appears to have written "I am instructed to leave work and that I cannot return until I have been approved for light duty." (ECF No. 95, Pl.'s Ex. 34.)

Bates stated in a USPS EEO Investigative Affidavit that she had reviewed the CA-17 medical-restriction documentation plaintiff had submitted in March 2018 and confirmed with the injury-compensation department that plaintiff did not have an open workers' compensation claim at the time; she was informed that plaintiff had submitted to Franks-Cummings on March 2, 2018 a request for light duty without the necessary medical documentation; and Bates was not herself

---

[3]    The USPS evidently has a policy that permits employees to request reasonable "official time," which appears to be time that would otherwise be spent on work assignments, to prepare certain materials relating to EEO proceedings. (ECF No. 95, Pl.'s Ex. 32.)

authorized to approve light-duty requests. (ECF No. 92-2, Def.'s Ex. 17.) Bates further stated that plaintiff's medical condition was a factor that she had considered in that she had concluded that plaintiff could not perform all of the physical requirements of her assigned position.

Plaintiff went home from work on March 30, 2018 and did not return to work until April 2019. Various proceedings took place during that period; plaintiff (1) in April 2018 amended her February 2018 EEO complaint to add a claim that Bates had discriminated and retaliated against her by telling her that she could not work until she was approved for light duty; (2) in July 2018 submitted a light-duty request, which was denied on the basis that there was no work available that would satisfy plaintiff's medical restrictions; (3) in September 2018 filed an EEO complaint alleging that the USPS retaliated against her and failed to accommodate her disability when it denied her light-duty request in July; and (4) in April 2019 submitted a request for reasonable accommodation, after which plaintiff was permitted to return to work with modified job duties. In March 2020, after additional conflict over plaintiff's job duties, plaintiff retired from the USPS. In June 2020, the USPS EEO Office issued a final agency decision against plaintiff on plaintiff's September 2018 complaint. In November 2020, plaintiff's request for reconsideration of the affirmance of a final agency decision against plaintiff on her February 2018 EEO complaint was denied.

In March 2021, plaintiff filed the instant action, which is based on Bates's taking her "off the clock" on March 30, 2018 and instructing her "that she could not return to work until her request for light duty had been approved." (ECF No. 19, 2d Am. Compl. ¶¶ 15, 25.) The Second Amended Complaint contains two counts for violation of the Rehabilitation Act. Count I is a discrimination claim. Count II is a claim that Bates acted in retaliation for plaintiff's having "engaged in the EEO and EEOC process which are protected activities as well as the collective bargaining agreement's grievance process." (*Id.* ¶ 26.)

In May 2022, the Equal Employment Opportunity Commission reversed the USPS's June 2020 final agency decision, concluding that the USPS violated the Rehabilitation Act by failing to accommodate plaintiff from July 2018 through April 2019. Subsequently, on June 2, 2022, plaintiff voluntarily dismissed Count I, her discrimination claim in this case. Defendant moves for summary judgment on the remaining claim for retaliation.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Davis v. Kayira*, 938 F.3d 910, 914 (7th Cir. 2019). The Court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmovant—here, plaintiff. *See Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014). The Court does not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Jackson v. Ill. Dep't of Com. & Econ. Opportunity*, No. 21-1168, 2022 WL 3009598, at *3 (7th Cir. July 29, 2022) (citation omitted).

As the movant, defendant has the initial burden of informing the court why a trial is not necessary. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, the movant's initial burden may be discharged by pointing out to the court that there is an absence of evidence to support the nonmovant's case. *Id.* Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation omitted). The nonmovant need not produce evidence in a form that would be admissible at trial, but she must go beyond the pleadings to demonstrate that there is evidence upon which a jury could reasonably find in her favor. *Id.* at 1168-69 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

Plaintiff's claim is that Bates's action of putting her off the clock on March 30, 2018 was in retaliation for protected activity. (ECF No. 96, Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 3.) To survive summary judgment, plaintiff must present evidence sufficient to create a dispute of material fact that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017). The Court considers all of the record evidence to determine whether a causal link exists. *Id.*

Defendant does not dispute that Bates's putting plaintiff "off the clock" constituted an adverse employment action. Defendant also concedes that plaintiff's EEO complaints constitute protected activity but argues that her union grievances do not. To qualify as statutorily protected activity, a complaint or grievance has to specify a connection to the protected class at issue or provide facts to create such an inference. *McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022) (citing, *inter alia*, *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)). The fact that plaintiff filed EEO and EEOC complaints and union grievances does not make those activities statutorily protected; the substance of those complaints must have implicated her alleged protected class of disability. Defendant contends that plaintiff's grievances are not statutorily protected because they were not premised on disability discrimination. Plaintiff may not have used the magic word "disability" in those filings, but she was requesting accommodations for her claimed disability of lumbar radiculopathy, as she had been doing for years. For purposes of the instant motion, the Court will therefore assume without deciding that the grievances qualify.

Defendant also argues that there is no evidence of a causal link between Bates's action and any of plaintiff's protected activity. As to this element of plaintiff's claim, the Court agrees. "To establish a causal relationship between the protected activity and an adverse action, a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Noll v. Bd. of Regents*, No. 21-3176, 2022 WL 2113081, at *3 (7th Cir. June 13, 2022) (internal punctuation and citation omitted); *Lesiv v. Ill. Cent. R.R.*, 39 F.4th 903, 915-16 (7th Cir. 2022) ("Knowledge of the protected activity is necessary to show causation for a retaliation claim. A supervisor simply cannot retaliate against an employee for engaging in protected activity if the supervisor was not aware of the protected activity in the first place.") (citations omitted). It is not sufficient that Bates could have or even should have known about the protected activity; she must have had "actual knowledge" of it for her decision to have been retaliatory. *Lesiv*, 39 F.4th at 915; *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004).

As noted above, it is not clear which of plaintiff's prior protected activities are the basis for her retaliation claim. Plaintiff repeatedly cites defendant's concession that she engaged in protected activity, but notably, she does not elaborate on exactly which activity she believes Bates knew about. Plaintiff appears to rely at least in part on what she refers to as her "last two grievances." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 3.) Although plaintiff has a long history of union grievances and EEO and EEOC complaints related to her alleged disability, there is no evidence that Bates was privy to that history. Indeed, she had just arrived at the 22nd Street post office on March 3, 2018, and the evidence is that plaintiff and Bates had very little contact between then and the end of March. Bates was not the subject of plaintiff's complaints or grievances that were filed prior to March 30, 2018, and plaintiff fails to submit evidence that Bates was involved in or notified about those proceedings prior to that date. Plaintiff asserts that at the time, she had "three out of four back pay awards pending for grievances that were decided" in her favor as well as a "back pay award pending for a 2016 EEOC decision." (*Id.* at 3.) But plaintiff does not elaborate on the nature of the "three or four" awards to demonstrate that they implicated her protected class of disability or that knowledge of a "pending award" would entail knowledge about the substance of the complaint from which the award arose, *see McHale*, 41 F.4th at 872, nor does she point to any evidence from which a reasonable juror could conclude that Bates knew about the grievances. As for the back pay award arising from the 2016 EEOC decision, plaintiff points to a document that she calls a "file copy of [plaintiff's] settlement check for her back pay award (protected activity) decided in 2016 in the amount of $34,567" that was sent to the 22nd Street post office "on or around 3/26/18." (*Id.* (citing ECF No. 95, Pl.'s Ex. 30).) The document, titled "typewriter check payment" and listing plaintiff as the payee of a $35,371.27 award with deductions totaling $14,717.13, states "backpay award for 01/10/2015 to 10/23/2015" under the heading "reason for check." (Pl.'s Ex. 30.) The document contains no other substantive information about the amounts that were being paid to plaintiff. It bears the following address: "Gwenesther F Manning/Postal Official in Charge/Manager/2035 S State St/Chicago IL 60616-9998." (*Id.*) Plaintiff speculates that one can infer from this generic address that Bates received this document prior to March 30 and thus knew about her protected activity to which the payment related, but she submits no evidence that the "Postal Official in Charge/Manager" designation referred to Bates, in theory or in practice, and no evidence that Bates received the file copy, let alone by March 30. At most, the address may indicate that Bates *should have* received the document, but it is insufficient to permit a reasonable inference that Bates had the required *actual* knowledge that plaintiff had engaged in statutorily protected activity or that Bates would have been able to glean from the document that plaintiff had engaged in statutorily protected activity.

Plaintiff further argues: "If Bates did not retaliate against [plaintiff] in the beginning, Bates surely retaliated against [plaintiff] after [she] amended her EEO Complaint No. 4J-606-0034-18 to include Bates for Bates putting her off the clock." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 3.) But plaintiff's amendment to that complaint occurred on April 9, 2018; Bates's action on March 30, 2018 could not have been in retaliation for protected activity that came later. *See Durkin v. City of Chi.*, 341 F.3d 606, 614-15 (7th Cir. 2003) ("It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity.")

That leaves plaintiff's reliance on the fact that Bates's action occurred the day after plaintiff requested the allocation of official time to work on an EEO matter. (Pl.'s Mem. Opp'n Def.'s Mot.

Summ. J. at 3-4.)  In her statement of additional material facts, plaintiff states that she requested time to work on an "affidavit," (ECF No. 95, Pl.'s LR 56.1 Stmt. Add'l Facts ¶ 21), and the form plaintiff submits and cites in support of that statement, Plaintiff's Exhibit 31, is a request for time to work on an "appeal" of a final agency decision in a specific pending EEO matter.  While plaintiff complained of disability discrimination and retaliation in that matter, (ECF No. 100-1, Def.'s Ex. 36), her time-request form did not so state, nor did it contain anything about the substance of the EEO matter.  It is also unclear whether Bates even saw the form; plaintiff testified that she "tried to present" Bates with it and that Bates told her to return with it the following day. (Manning Dep. at 141-42.).

Even assuming for purposes of the instant motion that Bates saw the form and that the request for official time constituted protected activity, suspicious timing is rarely enough to create a triable issue, *Serir v. Community College District No. 514*, No. 21-2696, 2022 WL 807864, at *3 (7th Cir. Mar. 16, 2022), and any inference of causation that is supported by temporal proximity may be negated by circumstances providing an alternative explanation for the challenged action, *Jokich v. Rush University Medical Center*, 42 F.4th 626, 634 (7th Cir. 2022).  The analysis is context specific; here, any weak inference that arises from timing is insufficient to create a genuine issue as to causation, given the circumstances.  Plaintiff's assertion that Bates's action had to have been retaliatory because it "came out of nowhere," (Manning Dep. at 143, 146), is belied by the evidence that plaintiff had spoken to Bates in early March about her restrictions and that plaintiff had submitted a request for light duty earlier in March and her previous supervisor had noted she had failed to provide the necessary medical documentation.  Bates stated that upon making inquiries, she ascertained that plaintiff had requested light duty without submitting necessary documentation.  She also stated that she reviewed plaintiff's medical restrictions and concluded that plaintiff could not perform all of the physical requirements of her assigned job position.  There is no evidence that indicates that this explanation was pretext for a retaliatory motive; plaintiff relies on sheer speculation.  The issue is whether Bates honestly held these views, not whether she exercised poor judgment, made a mistake, or acted unfairly.  Plaintiff and Bates had a very limited history as of the end of March 2018.  Plaintiff requested official time to work on an EEO matter that had no connection to Bates, and there is no indication that Bates would have viewed it as having had any connection to her.  Plaintiff concedes that Bates said nothing to her about EEO complaints or protected activity during their meeting on March 30.  Her attempts to show pretext by isolating certain statements in Bates's EEO affidavit miss the mark because those statements, when properly read in context, do not undermine Bates's explanation.  The Court is also unpersuaded by plaintiff's argument that pretext can be inferred because Bates "proposed [plaintiff's] removal from the postal service on 2/11/19." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 6.)  To support that assertion, plaintiff relies on an "AWOL report," a document attached to an email between other USPS employees in February 2019, when plaintiff had not yet returned to work.  (ECF No. 95, Pl.'s Ex. 35; ECF No. 100-1, Def.'s Ex. 33.)  The report listed employees whose termination from employment was evidently "proposed," and each entry included a notation for who was "overseeing discipline."  Plaintiff was included on the list, and Bates was specified as overseeing discipline.  But the report does not indicate that it was Bates who had proposed termination, and it does not allow a reasonable inference that Bates's explanation for having taken plaintiff off the clock in 2018 was phony.  Plaintiff fails to identify any evidence that would allow a factfinder to reasonably infer that her request for time to work on an EEO matter caused Bates to put her "off the clock."

34

Next, plaintiff argues that her claim should survive summary judgment under the "indirect approach," under which she must offer evidence that she engaged in protected activity; suffered a materially adverse employment action; was meeting defendant's legitimate expectations; and was treated less favorably than similarly situated employees who did not engage in protected activity. *See Williams v. Bd. of Educ.*, 982 F.3d 495, 509 (7th Cir. 2020). Regarding the third prong of this analysis, defendant points to evidence that plaintiff was not physically able to perform the distribution-related duties of her job and thus was not meeting legitimate expectations. Plaintiff repeatedly told the USPS in early 2018 that she could not perform distribution duties and needed a sedentary job. Plaintiff fails to respond directly to this argument and merely contends that her "training records . . . demonstrate that she was performing her job satisfactorily." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 5.) Those records, however, do not demonstrate that plaintiff was meeting her employer's expectations; they reflect only that plaintiff took certain training classes. (ECF No. 95, Pl.'s Ex. 38.) As to the fourth prong of the analysis, plaintiff fails to identify any similarly situated individuals who did not engage in protected activity. She contends that an employee named Cassandra Glover who had the same job title received better treatment because she was allowed to work, including overtime, with restrictions. But plaintiff does not address or present evidence regarding the critical fact of whether Glover had engaged in protected activity. Defendant, on the other hand, produces unrebutted evidence that Glover had filed several EEO complaints. Therefore, plaintiff has not set out any comparators who are within her protected class.

The ultimate question is whether the evidence would permit a reasonable factfinder to conclude that Bates retaliated against plaintiff for her statutorily protected activity. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959-60 (7th Cir. 2021). Because plaintiff has not met her burden of so demonstrating, the Court will grant defendant's motion.

## CONCLUSION

Defendant's motion for summary judgment [90] is granted. Final judgment will be entered in favor of defendant and against plaintiff on plaintiff's retaliation claim in Count II. Plaintiff having previously voluntarily dismissed Count I, there are no remaining claims to adjudicate. Accordingly, this action is terminated.

**DATE:** November 8, 2022

**Hon. Ronald A. Guzmán**
**United States District Judge**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GWENESTHER MANNING,

        Plaintiff,

        v.

LOUIS DEJOY,

        Defendant.

Case No. 21 CV 1440

Hon. Beth W. Jantz

## ORDER

For the reasons and to the extent explained in the accompanying statement, defendant's motion to compel [31] and plaintiff's motion for a protective order [40] are granted in part and denied in part. Plaintiff is directed to provide the compelled authorizations (itemized at the end of this order), and interrogatory response by 4/15/22. Defendant is authorized to use plaintiff's Office of Worker's Compensation file in this matter. Defendant's motion for leave to file its response to plaintiff's motion for a protective order under seal [49] is also granted.

## STATEMENT

Plaintiff Gwenesther Manning, a retired US Postal Service employee, filed this *pro se* lawsuit against Postmaster General Louis Dejoy alleging disability discrimination in violation of the Rehabilitation Act. Specifically, plaintiff alleges that when she was a Sales Service Distribution Clerk assigned to the 22nd Street Station in Chicago, she was told by her manager, Tiffany Bates, that she could not return to work until her request for light duty had been approved. Am. Compl., Dkt. 19 ¶¶ 4, 34. Plaintiff maintains that Bates put her off the clock from March 2018 to March 2019 because plaintiff reported that she had workplace medical restrictions. *Id.* ¶¶ 33-44. In March 2019, plaintiff met with Bates, who asked plaintiff for medical documentation justifying plaintiff's extended absence. *Id.* ¶ 42. Plaintiff refused to submit the requested documentation because, according to plaintiff, she was not absent from work for medical reasons, but instead simply because Bates decided to put plaintiff off the clock. *Id.* ¶¶ 43, 44. Plaintiff subsequently returned to duty in April 2019 without being approved for light duty, and she took early retirement from the Postal Service in May 2020. *Id.* ¶¶ 5, 51. Plaintiff alleges that she took early retirement due to the Postal Service's unlawful conduct.

Currently before the Court are the parties' outstanding motions relating to medical discovery: (1) defendant's motion to compel, Dkt. 31; and (2) plaintiff's motion for a protective order, Dkt. 40.

**UNITED STATES POSTAL SERVICE**®

**Request for or Notification of Absence**

| Employee's Name (Print last, first, MI) | Employee ID | Date Submitted (MM/DD/YYYY) | No. of Hours Requested |
|---|---|---|---|
| MANNING, GIDENESTHER F. | 02690872 | 3/30/2018 | 79.50 |

| Installation (For post office, street, city, state, and ZIP Code) | N/S Day | Pay Loc. No. | D/A Code | From Date | Hour |
|---|---|---|---|---|---|
| TWENTY SECOND ST 60616 | | 016 | | 3/30/18 | 11:30 |

| Time of Call or Request | Scheduled Reporting Time | If Needed, Employee Can Be Reached At: | Thru Date | Hour |
|---|---|---|---|---|
| IN PERSON | 6:00AM | ☐ Do not call | 5/13 | 3:00p |

**Type of Absence**
- ☐ Annual
- ☐ Holiday/AL Lv Exch
- ☐ Carrier 701 Rule
- ☒ LWOP (See reverse)
- ☐ Sick (See reverse)
- ☐ Late
- ☐ COP (See reverse)
- ☐ Other

**Documentation (For official use only)**
- ☐ FMLA Requested (Certification review – HRSSC)
- ☐ For COP Leave (CA1 on file)
- ☐ For Advanced Sick Leave (PS 1221 on file)
- ☐ For Military Leave (Orders reviewed)
- ☐ For Court Leave (Summons reviewed)
- ☐ For Higher Level (PS 1723 on file)
- ☐ Scheme Training Testing Qualifying (Memo on file)

| Revised Schedule for (Date) | Approved in Advance ☐ Yes ☐ No |
|---|---|
| Begin Work | |
| Lunch Out | Lunch In |
| End Work | |
| Total Hours | |

**Remarks** (Do not enter medical information. See Privacy Act Statement on reverse of this form.)

I AM INSTRUCTED TO LEAVE WORK AND THAT I CAN NOT RETURN UNTIL I HAVE BEEN APPROVED FOR LIGHT DUTY.

| Employee's Signature and Date | Signature of Person Recording Absence and Date | Signature of Supervisor and Date Notified |
|---|---|---|
| Gwenesther Manning 3/30/18 | | |

**Official Action on Application (Return copy of signed request to employee.)**

☐ Approved

☐ Disapproved (Give reason below):

Employee is not limited duty. Employee does not have an approved light duty case. Informed employee to submit light duty request.

- Do not check an FMLA box until you verify the FMLA designation.
- ☐ FMLA Designation is PENDING
- ☐ FMLA Protected
- ☐ Not FMLA Protected

| Signature of Supervisor and Date |
|---|
| J. Batro 3/30/18 |

☐ Continued on reverse

PS Form 3971, December 2011 (Page 1 of 2) PSN 7530-02-000-9136

**Warning:** The furnishing of false information on this form may result in a fine of not more than $10,000 or imprisonment of not more than 5 years, or both (18 U.S.C. 1001).

MAR 30 11:52

EXH A-2

March 6, 2019

SUBJECT:    Five-Day Absence Notice

Gwenesther Manning
19214 Lange Street
Lansing, IL 60438

EIN: 02690872
Job title: Clerk/SSDA
Pay Location: 016

According to our records, you have been absent from duty for more than five days.

In accordance with the Employee and Labor Relations Manual (ELM) Section 513.362, you are required to submit medical documentation or other acceptable evidence of incapacity to work or of need to care for a family member. I have not received any such documentation from you. Therefore, you are being given five days from receipt of this letter to submit acceptable documentation for your absence. If you fail to submit acceptable documentation, your absences will be considered AWOL. An original copy of the documentation must be provided and it has to be mailed or presented in person. No e-mail copies will be accepted.

In accordance with ELM 513.364, acceptable medical documentation should be furnished by your attending physician or other attending practitioner who is performing within the scope of his or her practice. The documentation should provide an explanation of your illness or injury, sufficient to indicate to management that you were unable to perform your normal duties for the period of absence. Medical statements such as "under my care" or "received treatment" are not acceptable evidence of incapacitation to perform duties.

In accordance with ELM Chapter 865, employees returning to duty after an absence due to illness or serious injury may require return-to-work clearance. Please see the attached copy of ELM Chapter 865 for more information.

You are reminded that all employees are expected to maintain their assigned schedules and must make every effort to avoid absences. Employees are required to be regular in attendance. Failure to document your absences and continued AWOL could result in disciplinary action up to and including removal.

Sincerely,

Ms. Tiffany Bates
Manager, Customer Services
Twenty-Second Street Station
312-225-0218

Rec 3/8/2019 8M

Attachments:
ELM Chapter 865 This notice was sent by First Class and Priority USPS Tracking 9114999944238066165662 on March 6, 2019

EXH. B-1

38

 **UNITED STATES**
**POSTAL SERVICE**

March 6, 2019

**SUBJECT: Investigative Interview**

Gwensther Manning                     EIN: 02690872
19214 Lange Street                    Job title: Clerk/SSDA
Lansing, IL 60438                     Pay Location: 016

This is official notification that you are required to report to Twenty-Second Street Post Office, 2035 S. State St. Chicago Illinois 60616 on Thursday, March 14, 2019, at 10:00 am for an investigative interview relative to your present absence from work.  This is your opportunity to explain your extended absence from work and why corrective action should not be taken against you.

If you wish to have a USPS representative present during this interview, you may contact me and I will make arrangements for a USPS representative to be present.

If, for any reason, you are unable to report for this interview, you are required to contact me no later than the day prior to the scheduled interview to make other arrangements.  Failure to report as scheduled or contacting me to make other arrangements may result in corrective action, up to and including removal, for failure to follow instructions.  Furthermore, you will forfeit your opportunity to respond to the charges against you, leaving me no other alternative than to render my decision regarding possible corrective action based on the evidence of record.

You may contact me or one of my supervisors at 312-225-0218

_____

Ms. Tiffany Bates
Manager, Customer Service
Twenty-Second Street Station

Attachments:
ELM Chapter 865 This notice was sent by First Class and Priority USPS Tracking 9114999944238066165662 on March 6, 2019

39


**UNITED STATES POSTAL SERVICE** ®

EEO Investigative Affidavit (Continuation Sheet)

| Page No. | No. Pages | Case No. |
|---|---|---|
| 2 | 9 | 4J-606-0034-18 |

Q7. Have you received medical documentation in reference to the Complainant's medical condition and if so, when and what did you receive?  Please provide a copy.
No.

Q8. Please describe the specific duties which the Complainant is required to perform while at work; the skills and abilities required to perform those duties; and the frequency with which those duties are performed.

1.  Performs any variety of sales and customer services at a retail window such as maintaining sufficient inventory of and selling stamps, stamped paper, other retail products and services and may use a computerized system, accepting and delivering packages and accountable mail; issuing and cashing foreign and domestic postal money orders; accepting and responding to customer claims and inquiries, and providing information to the public regarding postal regulations.

2.  Provides sales and customer service support by greeting customers and explaining store layout; determining special interests and referring to sales and promotional programs; offers assistance in product selection; provides special assistance; and answers customer inquiries when needed.

3.  Provides product and service information to customers, including informing customers regarding special offers; suggestive selling related merchandise; promoting products based on customer needs. Provides additional information regarding product features and services.

4.  Handles and processes customer purchases and returns relating to products and services and may use a point of sale system. Assists customers with transactions.

5.  Maintains appearance of store by setting up, arranging, and replenishing displays and merchandise racks; ensures display and selling areas, work stations, and storage areas are presentable to customers.

6.  Conducts product inventories by counting items on hand; attaches and removes security devices; accounts for items on display; and verifies and records sales floor inventory and shrinkage. Brings inventory discrepancies and shrinkage reports to the attention of the appropriate supervisory presence.

7.  May verify presort and bulk mailings of all classifications , computing and maintaining on a current basis mailers' credit balances.

8.  Checks and sets post office stamp-vending machines and postage meters.

9.  Rents post office boxes, receives rental payments, conducts reference checks, and completes related forms.

10.  In addition, may assign and clear accountable items.

11.  Distributes primary and one or more secondary schemes of incoming mail by delivery point based on a knowledge of the distribution scheme established for the office, branch or station.

12.  Distributes primary and one or more secondary schemes of outgoing mail for dispatch based on knowledge of current distribution schemes.

13.  May perform additional duties such as: maintain records of mails; face and cancel mail; make emergency carrier relays; label and tie out mail for dispatch and other related duties for distribution.

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

*Tiffany Bates*

PS Form 2569, March 2001

Date Signed
6/7/18

40

DKT 37

work available. Management is not required to "make work" in order to provide an

employee with light duty and return them to work.

Subject to and without waiving the foregoing objections, see the following

documents that are included in the Postal Service's Rule 26(a)(1) disclosures:

- Documents produced in response to Interrogatories 2, 5, and 8

- Station File, USPS-00000673 to 722.

**Interrogatory No. 12:** Explain with specificity each and every step, action or measure Defendant took to comply with Section 4(A) of the Collective Bargaining Agreement, cited earlier in this document, to make every effort to reassign Plaintiff within her craft even if it meant reducing the hours of PSEs. Attach supporting documents.

**Supplemental and Amended Response:** Upon receiving a light duty request from

plaintiff, Bates reviewed plaintiff's restrictions and thoroughly reviewed available work within the

clerk craft in the station and determined that none was available. To the best of her recollection,

Bates does not believe that there were any PSEs in the Twenty Second Street Station during the

relevant time frame in 2018.

The Postal Service construes plaintiff's request for supporting documents as a

document production request under Rule 34. The Postal Service has not located any

responsive documents.

**Interrogatory No. 22:** Defendant answer to RFA No. 13: Admit the clerks at Twenty Second Street Station have stools at their work stations. Defendant avers that SSDA Clerks on the window are not to sit in the stools while performing customer transactions.

What is the factual basis for Defendant's answer to Plaintiffs RFA No.13 that SSDA clerk are not allowed to sit in the stools while performing customer transactions during the period of March 30, 2018 through April of 2019? Please attach supporting documents.

**Supplemental Response:** The Postal Service construes plaintiff's request for

supporting documents as a document production request under Rule 34. The Postal

Service has not located any documents responsive to this request.

6

Pl. Exh D

48

Gwenesther F. Manning
19214 Lange Street
Lansing, IL 60438
(312) 622-5783

May 8, 2018

Cardiss Collins P & D Center
Attn: Wanda Prater, Officer In Charge
433 West Harrison Street, 2nd Floor
Chicago, Illinois 60699-9998

Re: Reconciliation Of Job Title/Duties

Dear Ms. Prater:

I am stationed at Twenty Second Street Post Office, 2035 S. State Street, Chicago, IL 60616, as a Sales, Svcs Distribution Assoc. 0/6 (clerk). I was formerly a Letter Carrier at Ashburn Station, 3639 W. 79th St., Chicago, IL 60652. However, I was offered the position of Sales, Svcs, Assoc level 06 by the District Reasonable Accommodation Committee (DRAC) by letter dated October 20, 2015. I accepted the position and the DRAC confirmed my acceptance by a letter dated November 5, 2015 with copies enclosed.

Although I was offered and accepted the Sales Service Associate level 0/6 position, that was not the position I was given. I was actually placed as a Sales Service Distribution Associate 0/6. There is a big difference in the two positions for the Sales Service Associate position does not include the strenuous distribution duties, which in the past were performed by mail handlers, but are now being performed by Sales Service Distribution Associates. DRAC has not responded to my request to correct my job title and position.

As a result, while stationed at Irving Park as a clerk, I was put on truck detail. While stationed at Twenty Second Street Station, I have been exposed and worked duties which include pushing heavy mail transportation equipment and sorting parcels which require bending. This has caused an aggravation to my back condition which dates back to when you and I both worked at Grand Crossing back in 1999 and 2000. I was put off the clock on 03/30/2018 and told not to return until I have been approved for light duty. I am confused since this would defeat the purpose of a reasonable accommodation. Therefore, I am asking that you resolve and correct the error by overseeing that my job title is changed to the correct position of Sales Service Associate which I was offered and accepted. I am seeking your guidance. Your attention to this matter is greatly appreciated. Awaiting a reply I remain.

Regards,

Gwenesther Manning, EIN 02690872

PLAINTIFF'S
EXHIBIT
49

42

**Duty Status Report**  **U.S. Department of Labor**
Office of Workers' Compensation Programs



This form is provided for the purpose of obtaining a duty status report for the employee named below. This request does not constitute authorization for payment of medical expense by the Department of Labor, nor does it invalidate any previous authorization issued in this case. This request for information is authorized by law (5 USC 8101 et seq.) and is required to obtain or retain a benefit. Information collected will be handled and stored in compliance with the Freedom of Information Act, the Privacy Act of 1974 and the OMB Cir. A-108. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

OMB No. 1240-0046
Expires: 09-30-2011
OWCP File Number (if known) 102149196
FEB 16 04.00

**SIDE A - Supervisor: Complete this side and refer to physician**

1. Employee's Name (Last, first, middle)
MANNING GWENDTHER

2. Date of Injury (Month, day, yr.)    3. Social Security No.

4. Occupation  Sales Service and Associate

5. Describe How the Injury Occurred and State Parts of the Body Affected

6. The Employee Works
Hours Per Day  8.00    Days Per Week  5.00

7. Specify the Usual Work Requirements of the Employee. Check Whether Employee Performs These Tasks or is Exposed Continuously or Intermittently, and Give Number of Hours.

**SIDE B - Physician: Complete this side**

8. Does the History of Injury Given to You by the Employee Correspond to that Shown in Item 5? ☒ Yes ☐ No (If not, describe)
BACK INJURY

9. Description of Clinical Findings  BACK INJURY

10. Diagnosis Due to Injury  DISC DISPLACEMENT   11. Other Disabling Conditions

12. Employee Advised to Resume Work? ☒ Yes, Date Advised ____ ☐ No

13. Employee Able to Perform Regular Work Described on Side A?
☐ Yes, if so  ☐ Full-Time  or  ☐ Part-Time ____ Hrs Per Day
☒ No, if not, complete below:

| Activity | Continuous | Intermittent | | Continuous | Intermittent | |
|---|---|---|---|---|---|---|
| a. Lifting/Carrying: State Max Wt. | #lbs. 20.00 | #lbs. 70.00 | 2.00 Hrs Per Day | #lbs. | #lbs. 20 | 1 Hrs Per Day |
| b. Sitting | ☒ | | 6.00 Hrs Per Day | ☒ | | 6 Hrs Per Day |
| c. Standing | ☐ | ☒ | 2.00 Hrs Per Day | ☐ | ☒ | Hrs Per Day |
| d. Walking | ☒ | ☒ | 2.00 Hrs Per Day | ☐ | ☒ | Hrs Per Day |
| e. Climbing | ☒ | | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| f. Kneeling | ☒ | | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| g. Bending/Stooping | | ☒ | 0.50 Hrs Per Day | ☐ | ☐ | ○ Hrs Per Day |
| h. Twisting | | ☒ | 0.50 Hrs Per Day | ☐ | ☐ | ○ Hrs Per Day |
| i. Pulling/Pushing | | ☒ | 2.00 Hrs Per Day | 20LBS | ☒ | 1 Hrs Per Day |
| j. Simple Grasping | ☒ | | 6.00 Hrs Per Day | ☐ | ☒ | 2 Hrs Per Day |
| k. Fine Manipulation (includes keyboarding) | ☒ | | 3.00 Hrs Per Day | ☐ | ☒ | 2 Hrs Per Day |
| l. Reaching above Shoulder | | | 3.00 Hrs Per Day | ☐ | ☒ | Hrs Per Day |
| m. Driving a Vehicle (Specify) | ☐ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| n. Operating Machinery (Specify) | ☐ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| o. Temp, Extremes | ☐ | ☐ | range in degrees F | ☐ | ☐ | range in degrees F |
| p. High Humidity | ☐ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| q. Chemicals, Solvents, etc. (Identify) | ☐ | ☐ | Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| r. Fumes/Dust (Identify) | ☒ | | 7.00 Hrs Per Day | ☐ | ☐ | Hrs Per Day |
| s. Noise (Give dBA) | ☒ | | 7.00 dBA Hrs Per Day | ☐ | ☐ | dBA Hrs Per Day |

t. Other (Describe)
RECOMMEND SEDENTARY POSITION OR DISABILITY RETIREMENT REQUIRED IN 30 DAYS

14. Are Interpersonal Relations Affected Because of a Neuropsychiatric Condition? (e.g. Ability to Give or Take Supervision, Meet Deadlines, etc.) ☐ Yes ☒ No (Describe)

15. Date of Examination  2/15/18    16. Date of Next Appointment

17. Specialty  ORTHO SURG    18. Tax Identification Number

19. Physician's Signature    20. Date  2/15/18

43

## PHYSICIAN'S CERTIFICATION

JUL 13 10.02

Patient's Name: Gwenestber Manning

Patient's ID or Medical Record #: EIN 02690872

Diagnosis: LUMBAR DISC DERANGEMENT WITH RADICULOPATHY

Is the above condition work related? __X__ Yes _____ No. Is this condition permanent? X Yes _____ No

Can this employee work with restrictions? YES    Is reassignment recommended? __X__ Yes _____ No

Can this employee work with restrictions pending reassignment? __X__ Yes _____ No

If working, does employee's condition require monitoring /evaluation? __X__ Yes _____ No   Every _____ days

| ACTIVITY | CONTINUOUS | INTERMITTENT | #HRS/Day |
|---|---|---|---|
| 1. Lifting/Carrying (State Max. Weight) | #Lbs. O | #Lbs. 20 | 1 |
| 2. Sitting | X | | 6 |
| 3. Standing | #Lbs. | #Lbs. | 1 |
| 4. Walking — 10 MINUTE BREAKS | #Lbs. | #Lbs. X | 1 |
| 5. Climbing — MID HOUR | #Lbs. | #Lbs. | 0 |
| 6. Kneeling | | | 0 |
| 7. Bending/Stooping | | | 0 |
| 8. Twisting | | | 0 |
| 9. Pulling/Pushing | | X 20LBS | 1 |
| 10. Simple Grasping | | X | 2 |
| 11. Fine Manipulation (including keyboarding) | | X | 2 |
| 12. Reaching above shoulder | | X | 2 |
| 13. Driving Vehicle | | | |
| 14. Operating Machinery | RECOMMEND | SEDENTARY | POSITION |
| 15. Temperature Extremes | OR | DISABILITY | |
| 16. High Humidity | | RETIREMENT | |
| 17. Chemical, Solvents, etc. (Identify) | | | |
| 18. Fumes/Dust (Identify type) | | | |
| 19. Noise (Give dBA) | ***Self renewing for one year*** | | |

Attach any additional medical information you feel might be helpful in assigning this employee to appropriate duties.

Physician's signature: _____

Physician's Printed Name: SAMUEL J. CHMELL MD

Date: 7/09/2018

Address: 1701 S. FIRST AVE. #209

City, State, Zip Code: MAYWOOD IL 60153

Phone: 708-345-8814

44

Da 4 of 4   JUL 16 09.21

Stmt., Response to RFA 9.  The Postal Service disputes that Manning did not submit any medical

documentation at all prior to her return to work in April of 2019.  In July of 2018, Manning

submitted a physician's certification documenting her medical conditions.  Ex. 19 to Def. LR

56.1 Stmt., July 2018 Request for Temporary Light Duty at USPS-000000921.  In April of 2019,

Manning submitted a reasonable accommodation request, dated April 18, 2019, that described

her medical conditions and asked to be precluded from pushing heavy equipment and heavy

lifting and "all mail handler duties."  Ex. 29 to Def. LR 56.1 Stmt., April 2019 Reasonable

Accommodation Request at USPS-000000975.

4.    Defendant admitted Manning was off the clock from April of 2018 through on or around April 22 of 2019. Ex. 20, Response to RFA, No. 12. *Id*

**RESPONSE:** Admit.

5.    Defendant admitted the Temporary Light Duty Policy Procedures of the Chicago Performance Cluster does not contain a clause or provision that management must remove an employee for active duty pending approval of request for Light Duty. Ex. 20, Response to RFA p. 15. At pg. 9)

**RESPONSE:** Admit.

6.    Defendant admitted, Manning was not given written instructions to call in and/or submit PS Form 3971 (Request or Notification of Absence) weekly on 3/20/18. Ex. 21, Response to RFA No. 1. (At pg. 13)

**RESPONSE:**  Admit that Manning was not given written instructions to call in and/or

submit PS Form 3971.  To the extent paragraph 6 is asserting that Manning did not know that she

needed to call in or submit PS Form 3971, that fact is disputed.  Manning submitted a PS Form

3971 requesting 79.50 hours of leave without pay on March 30, 2018.  Ex. 34 to Pl. LR 56.1

Stmt.  Manning had previously submitted leave requests when there was not work available for

her.  Def. Ex. 35, Manning Leave Requests from February and March 2018.

In addition, the Postal Service's temporary light duty procedures state that when

temporary light duty is unavailable, management shall approve the employee's request for leave

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GWENESTHER MANNING,                    )
                                       )
                  Plaintiff,           )
                                       )
                                       )    No. 21 C 1440
            v.                         )
                                       )    Judge Guzmán
LOUIS DeJOY, Postmaster General, United )
States Postal Service,                 )
                                       )
                  Defendant.           )

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
LOCAL RULE 56.1 STATEMENT OF ADDITIONAL FACTS**

The United States responds to plaintiff Gwenesther Manning's Local Rule 56.1 statement

of additional facts as follows:

1.    Mgr. Bates admitted that she signed Manning's PS Form 3971, Def.'s Request or
Notification of Absence dated 3/30/18, with the annotation, "I am instructed to leave work and
that I can not return until I have been approved for light duty." Ex. 20, Def.'s *Response to RFA
No. 3.* (At pg. 7.)

**RESPONSE:** The Postal Service admits that Bates signed Manning's PS form 3971

dated March 30, 2018. Ex. 34 to Pl. LR 56.1 Stmt.. The Postal Service disputes that Bates wrote

the annotation described in paragraph 1. That annotation was written by Manning. *See* Ex. 20 to

Pl. LR 56.1 Stmt., Response to RFA 3.

2.    Mgr. Bates admitted she was the manager who told Manning that she could not
return to work until she was approved for Light Duty. Ex. 20, Def.'s Response to RFA No. 5. *Id.*

**RESPONSE:** Admit.

3.    Mgr. Bates admitted, Manning did not submit medical documentation in order to
return to duty in April of 2019. Ex. 20, Response to RFA No. 9 (At pg. 8)

**RESPONSE:** The Postal Service admits that Manning did not submit medical

documentation to Bates in April of 2019, when she returned to work. Ex. 20 to Pl. LR 56.1

1

45

were due to a permanent work-related injury that had been accepted by the Department of Labor Office of Workers' Compensation Program.  Def. Ex. 31, Glover Restrictions and Workers' Compensation (OWCP) Information at USPS-000000596.

※    13.    Bates testified via affidavit that she went back to Hegewisch her PS Form 50 Station at the end of July 2018. Ex. 23, *Bates Aff.* Case no. 4J-606-0121-18. ¶.20. ( At pg. 25)

**RESPONSE:** Admit.

14.    Bates testified, Manning was not allowed to work six hours per day until 4/22/19 due to the drastic change in her restrictions. Ex. 23, ¶ 19. (At pg. 25)

**RESPONSE:** Admit.

※    15.    Manning's restrictions dated 2/15/18 and 7/9/19 are practically identical. Ex. 24, At pg. 31 & Ex. 25. (At pg. 32)

**RESPONSE:**  With the qualification that Exhibit 25 consists of restrictions dated July 9, 2018 (not July 9, 2019), admit that both sets of restrictions recommend a sedentary position or disability retirement and admit that both sets of restrictions state that Manning could not engage in any bending/stooping or twisting.  Dispute that the restrictions are "practically identical," as they were provided on different forms.

※    16.    On 2/20/18 while Manning was assigned to 22nd St. Station, Def. and the Nat'l Association of Letter Carriers reached in *Impasse for Branch Grievance No. 2017-2462* where one decision covered four (4) of Manning's back pay settlement awards that Def. failed to pay as listed below with a brief description of the content of the Step B Decisions:

(1) J11N-4J-C14183238/NALC 2014-1351 Step B Decision dated 1/5/15 violation of Art. 13, when Grievant was denied light duty work.  The back pay period is 5/5/14 – 1/5/15.

(2) J11N-4J-C1423-7013/NALC 2014-1691. Formal Step A Parties will meet within 7 days to determine the amount of hours the Grievant will be compensated from 5/27/14 – 1/5/15.

(3) J11N-4J-C15189424/NALC /NALC 2015-1048, Step B Decision dated 12/10/15. Management found in violation of Art. 13, when Grievant was denied light duty work from 1/10/15 – 10/23/15. Step Formal A parties will meet within 7 days to determine the amount of hours grievant will be compensated …

and shall annotate the leave request with the remarks, "No Light Duty Work Available." Def.

Ex. 30, Chicago Performance Cluster Temporary Light Duty Policy at USPS-0000002813-2814.

These procedures make clear that employees must request leave even if no temporary light duty

work is available.

7.      Defendant admitted Mgr. Bates signed PS Forms 3971 (Request For or Notification of Absence) forty-nine (49) times charging Manning with AWOL, once a week, for 49 consecutive weeks starting 4/20/2018 through 3/21/2019. Ex. 21, Response to RFA No. 12. (At pg. 15).

**RESPONSE:** Admit.

8.      Defendant admitted, employees charged with AWOL can be put up for removal. Ex. 21, Response to RFA No. 15. (At pg. 15)

**RESPONSE:** Admit.

9.      Defendant admitted, Cassandra Glover had restrictions, **Ex. 21**, Response to RFA No. 17. (At pg. 15).

**RESPONSE:** Admit that Glover had restrictions, which were due to a permanent work-

related injury for which she was approved for a limited duty assignment by the Department of

Labor. Def. Ex. 31, Glover Restrictions and Workers' Compensation (OWCP) Information at

USPS-000000596.

10.     Defendant admitted Cassandra Glover was allowed to work with her restrictions, Ex. 21, Response to, RFA 18. (At pg. 16)

**RESPONSE:** Admit.

11.     Defendant admitted Cassandra Glover was allowed to work over time. Ex. 21, Response to RFA 19. (At pg. 16)

**RESPONSE:** Admit.

12.     Cassandra Glover an SSDA was allowed to work with restrictions dated 5/10/18 which prescribed no lifting above shoulder, restrict from direct contact with air ducts and cool air,. Chair with back support, and heating element when sorting mail to keep muscles loose Ex. 22, *Cassandra Glover's Restrictions* dated 5/10/18. ( At pg. 18)

**RESPONSE:** Admit that Glover was allowed to work with these restrictions, which

Furthermore, management shall comply with Step B Decision J11N-4J-C 14237013 and the subsequent 3/17/15 settlement (J11N-4J-C 14237013/J11N-4J-C 14183238 Local # 2014-1691/2014/1351) Management shall submit a 2240 for the hours that were determined by the parties that has not been paid to the grievant. Back pay period is 1/10/15 – 10/23/15; and

(4) J11N-4J-C 15129929/NALC 2015-0647 Pre-Arbitration Agreement dated 10/13//16. Ronald Morgan and Francisco Marte agreed to pay grievant 37.5 hours per week and to be made whole for all lost wages and benefits from 1/10/15 through 5/16/15. Based on four grievance settlements collectively, grievant was to be made whole for eighteen (18) months. Ex. 26, *Step B Impasse Decision* dated 2/20/18. (At pgs. 33 – 41)

**RESPONSE:** Admit that Manning's union and the Postal Service were at an impasse as of February 20, 2018. Admit that the information provided in paragraph 16 was asserted by the union during the collective bargaining process and that Manning has summarized the information provided by her union and included in the written impasse decision. Admit that Manning was working at the 22nd Street post office as of February 22, 2018, but dispute that any of the grievances were made while she was working at 22nd or while she was working as a sales, service, distribution associate. Pl. Ex. 26 at 34 (noting that the grievances were all made while Manning was a letter carrier).

17. Manning had three back pay awards, pending on 03/30/18 when Mgr. Bates put Manning off the clock indefinitely; back pay was awarded to Manning for Def.'s violation of Article 13-denial of light duty work as identified above in ¶ 16, Ex. 26, *Step B Decision, Id.* See also 2nd Am. Compl. (Dkt 19 ¶ ¶ s 52 – 58)

**RESPONSE:** Admit that, as of March 30, 2018, Manning had three pending back pay awards based on other managers' alleged failure to provide her with light duty work in 2014 and 2015, while she was a letter carrier, pursuant to Article 13 of the national agreement between the American Postal Workers Union and the Postal Service. Ex. 26 to Pl. LR 56.1 Stmt. at 33-34. Dispute that Bates "put Manning off the clock indefinitely." This assertion is not supported by the cited portion of the record or the evidence in this case. Rather, Bates told Manning that she needed to apply for light duty because she could not perform her job duties due to her numerous

asserted medical restrictions. Dkt. 19, Second Amend. Compl. ¶ 34; Ex. 1 to Def. LR 56.1 Stmt. at 137:23-138:10, 148:7-9. Bates did not preclude Manning from going back on the clock.

18.    On 8/5/16 EEOC's Office of Federal Operations reversed the postal service final decision on case no. 4J-606-0122-14 and Appeal No. 01201-42270 with a finding of reprisal discrimination awarding Manning back pay from 4/28/14 – 1/9/15. **Ex. 27**, *EEOC's Decision* dated 8/5/16, pgs. 42 – 52 *See also* 2nd Am. Compl. (Dkt. 19 ¶ 59)

**RESPONSE:** Admit that on August 5, 2016, the EEOC's Office of Federal Operations reversed the Postal Service's final agency decision in case No. 4J-606-0122-14 and concluded that Manning had established a case of disability discrimination arising from events that occurred in 2014 and 2015 at two different post offices (Harwood Heights and Ashburn). Ex. 27 to Pl. LR 56.1 Stmt. at 42-43. Object to the assertion that the Office of Federal Operations made a finding of reprisal discrimination because this assertion is not supported by the cited portion of the record. The decision states: "[W]e find that the Complainant has *not* established a *prima facie* case of reprisal discrimination because she has not shown that the management officials were not [*sic*] aware of her prior EEO activity." Ex. 27 to Pl. LR 56.1 Stmt. at 46 (emphasis added). Admit that Manning was awarded back pay for the time period April 28, 2014 through January 9, 2015.

19.    Manning's back pay award in EEOC Appeal No. 0120142270 as cited above in ¶ 18 was also pending on 3/30/18. On top of that, Def. was being monitored for compliance by EEOC when Mgr. Bates put Manning off the clock on 3/30/18. Ex. 28, Letter from Phyllis Laura Isaacs dated 4/30/18, *regarding Def.'s Compliance with EEOC's* 8/5/16 order. At pg. 54, See also, Ex. 29, email dated 1/28/18 from Perry Porter regarding overlapping grievances payments for Manning. (At pg. 56)

**RESPONSE:** The Postal Service objects to the factual assertions in paragraph 19 because they are not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2); *Oakley v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment.") Plaintiff's Exhibit 28 is a letter dated April 30, 2018, from EEO compliance specialist Phyllis

Isaacs to senior compliance officer Natalie Rochelle. The letter states that the Postal Service had fully complied with the compensatory damages provision in the August 5, 2016 EEO decision and refers to enclosed documents as the Postal Service's compliance report. The letter does not demonstrate that the Postal Service was being "monitored for compliance" by the EEOC or that the backpay award was "pending." Plaintiff's Exhibit 29 comprises a series of emails sent on January 29, 2018 regarding payments of amounts awarded to Manning during the union grievance process under her collective bargaining agreement. The emails do not concern Manning's employment discrimination or EEO complaints or demonstrate that the EEOC was monitoring the Postal Service's compliance with the August 5, 2016 EEO decision.

20.    On 3/26//18, EAGAN, defendant's accounting service center, sent an office file *Copy of the Typewriter Check Payment* for remittance to Manning that covered the back pay period of 1/10/15- 10/23/15 with a gross amount of $35,371.27 to the manager (Bates) at 2035 S. State St, Chicago, IL 60616 for the station file days before Manning was put off the clock indefinitely. Manning's Ex. 30, *Copy of the Typewriter Check Payment*. (At pg. 57)

**RESPONSE:** Admit that Plaintiff's Exhibit 30 is an office file copy of a typewriter check payment to Manning documenting a $35,371.27 backpay award for the time period January 10, 2015 to October 23, 2015 for union grievance J11N-4J-C 15189424. Admit that the date on the payment is March 26, 2018.

The Postal Service objects to the assertion that this office file copy was sent to Bates because that assertion is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2); *Oakley v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment."). The office file copy of Manning's backpay award payment is not addressed to Bates; it is addressed to "Gwenesther Manning; Postal Official In Charge; Manager." Pl. Ex. 30. The address does not mention Bates by name and does not constitute a record of Bates's receipt of this document.

To the extent that the court is inclined to consider this allegation, it is disputed. Plaintiff's Exhibit 30 omits an email chain showing that this office file copy was sent via email to Herman Bingham, a labor relations specialist, on March 27, 2018. Def. Ex. 32, Email to Bingham, at USPS-000004887-4888. The email chain further shows that on April 3, 2018, after the events at issue in this case, Bingham forwarded the payment information to Carla LaRue, an attendance control officer, who then forwarded the receipt to two other individuals on April 11 and June 6, 2018. Def. Ex. 32 at USPS-000004887. There is no record of Bingham or anyone else forwarding this office file copy of Manning's backpay award to Bates, and there is no record of this document in Bates's station file that was produced to Manning.

Dispute that Bates "put Manning off the clock indefinitely." This assertion is not supported by the cited portion of the record or the evidence in this case. Rather, as Manning alleges, Bates told her that she needed to apply for light duty because she could not perform her job duties due to her numerous asserted medical restrictions. Dkt. 19, Second Amend. Compl. ¶ 34; Ex. 1 to Def. LR 56.1 Stmt. at 137:23-138:10, 148:7-9.

21.     On 3/29/18 Manning requested presented PS Form 1110 to Mgr. Bates requesting official time to work on EEO affidavit on the clock. Ex. 31, *PS Form 1110.* (At pg. 58)

✳ **RESPONSE:** Admit that Manning presented a PS Form 1110 to Bates on March 29, 2018. *See* Ex. 1 to Def. LR 56.1 Stmt. at 143:15-142:3. Admit that the form is a request for EEO time while on the clock.

To the extent paragraph 21 is asserting that Plaintiff's Exhibit 31 is the exact same form presented to Bates, the Postal Service objects to the assertion because it is not supported by admissible evidence. There is no admissible evidence, such as affidavit testimony, establishing when this form was prepared or whether it was presented to Bates.

Dispute that Plaintiff's Exhibit 31 requests official time to work on an EEO affidavit.

8

The form states that Manning is requesting time to work on appeal of a final agency decision in EEO case 4J-606-0057-17, which asserted disability discrimination and retaliation by supervisors at the Irving Park post office. Pl. Ex. 31; Def. Ex. 36, EEO Complaint in Case No. 606-0057-17; Def. Ex. 18 at USPS-000002194. Manning did not check the box indicating that she was going to be engaged in "affidavit preparation." Pl. Ex. 31.

22. On 3/29/18 Mgr. Bates declined to accept Manning's PS Form 1110 for official time to work on her EEO Compl. Instead, Bates instructed Manning to bring the form back the next day because Bates wanted to inquire about the form because she was not familiar with the process. Ex. 32, *EEO Letter of Dissatisfaction*, pgs. 59 & 60. See Ex. 33, emails between Bates and Phyllis Stanley regarding Manning's PS Form 1110 requesting official time. (At pg. 61)

**RESPONSE:** Admit. *See* Ex. 1 to Def. LR 56.1 Stmt. at 142:6-7, 143:5-8.

23. On 3/29/18, Mgr. Bates questioned Manning about her EEO complaint. Ex. 32, *EEO Letter of Dissatisfaction*. (At pg. 59)

**RESPONSE:** The Postal Service objects to the facts asserted in paragraph 23 because they are not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2); *Oakley v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment."). Plaintiff's Exhibit 32 is an unsworn letter reciting allegations that were not made under oath. It should not be considered at summary judgment. *Coburn v. Daimlerchrysler Servs. N. Am., LLC*, NO. 03 C 00759, 2005 WL 736657, at *11 (N.D. Ill. Mar. 31, 2005) (unsworn letters are inadmissible and should be disregarded at summary judgment). Furthermore, at her deposition, Manning was asked whether Bates said anything in response when she (Manning) requested time off to work on her EEO case. Ex. 1 to Def. LR 56.1 Stmt. at 142:4-7. Manning did not say that Bates questioned her but instead testified: "She told me to bring the form back the next day, which would have been the 30th." Ex. 1 to Def. LR 56.1 Stmt. at 142:6-7. Manning was also asked: "Has Ms. Bates ever, at any point, made any comments to you about your EEO complaints at any

time at all?" Ex. 1 to Def. LR 56.1 Stmt. at 143:20-23. Manning testified: "No." Ex. 1 to Def. LR 56.1 Stmt. at 143:23.

24. 3/30/18 Bates put Manning off the clock indefinitely with the instruction for Manning not to return to work until approved for light duty. **Ex. 34.** *Manning's PS Form 3971* (Notification for or Request for Absence) dated 3/30/18 signed by Bates. (At pg. 62)

**RESPONSE:** Admit that Bates instructed Manning that she could not return to work until she was approved for light duty. The Postal Service objects to the assertion that Bates put Manning off the clock "indefinitely" because it is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2); *Oakley v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment."). Plaintiff's Exhibit 34 does not state that Manning was put off the clock indefinitely. Further, as Manning alleges, Bates told her that she could not work and that she needed to apply for light duty because she could not perform her job duties due to her numerous asserted medical restrictions. Dkt. 19, Second Amend. Compl. ¶ 34; Ex. 1 to Def. LR 56.1 Stmt. at 137:23-138:10, 148:7-9. Indeed, Plaintiff's Exhibit 34 contains an annotation stating that Bates "informed employee [Manning] to submit light duty request."

25. On 2/11/19, Bates proposed Manning's removal from service **Ex. 35** *Proposed Removal for Manning.* (At pg. 63)

**RESPONSE:** The Postal Service objects to this statement of fact because it is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2); *Oakley v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment."). Plaintiff's Exhibit 35 is not a notice of proposed removal and does not state that Bates proposed Manning's removal. Plaintiff's Exhibit 35 is the second page of a word document titled "AWOL Report" that was attached to an email sent from Delores Lyons-Hayes to Carla Larue on February 27, 2019. It is

10

unclear who prepared this report. The email and the entire attachment are attached as Exhibit 33. The AWOL report states that "[a]s of 2/11/2019," D. Lewis was "overseeing discipline" for another employee, Blake Walker. Def. Ex. 33 at USPS-000005109-5110. The AWOL report does not state that Bates had proposed Manning's removal or that she had done so on February 11, 2019. While the AWOL report does state "proposed removal" next to Manning's name, it is unclear who added this information or whether this phrase simply means that Manning might be *eligible* for proposed removal at a future date if she continued to be absent-without-leave. Manning, moreover, has not submitted any evidence showing that she ever received a notice of removal and has not established that she has personal knowledge of Bates's alleged proposed removal.

26.     4/9/19, *Minutes from Investigative Interview* where Manning articulated throughout the interview that her absence was involuntary and that she was being discriminated against in retaliation for her participation in EEO activity. Ex. 36. (At pgs. 64 - 74)

**RESPONSE:** Admit that Plaintiff's Exhibit 36 comprises minutes from an investigative interview on April 9, 2019, noting that Manning had stated at the interview that her absence was involuntary and that she was being discriminated against in retaliation for participation in EEO activity.

27.     Bates forced Manning to relinquish her assignment upon her return to duty on 4/9/19. Ex. 37, *Relinquishment of Assignment* letter dated 4/9/19. (At pgs. 75 -77)

**RESPONSE:** The Postal Service objects to paragraph 27 because it is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2); *Oakley v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment."). Plaintiff's Exhibit 37 is a letter dated April 9, 2019, signed by Bates, that informs Manning that she had two weeks to turn in medical documents indicating that she could physically fulfill the requirements of her assignment. The

11

letter does not state that Manning's assignment was being relinquished.

To the extent the court is inclined to consider this purported fact, it is disputed. Manning did not relinquish her assignment and, rather, was allowed to return to work with modified job duties that did not require her to perform any distribution-related tasks. Ex. 1 to Def. LR 56.1 Stmt. at 169:22, 170:14-21; Ex. 24 to Def. LR 56.1 Stmt., March 2020 Reasonable Accommodation Offer.

⚹ 28. Manning's Station file training records are satisfactory. Ex. 38, Manning's *Training Records.* (At pgs. 78-81)

**RESPONSE:** Admit.

29. Def. Produced emails where Bates is on the record advising Mary Rouse that Manning was not told by management not to return to work. Ex. 39. *Emails* (At pg. 82 & 83)

**RESPONSE:** The Postal Service objects to paragraph 29 because it is not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2); *Oakley v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment."). Plaintiff's Exhibit 39 comprises two different documents: (1) an email chain between Mary Rouse and Carla Larue, copying Bates, and numbered USPS-0000005172; and (2) narrative notes from Bates's station file, numbered USPS-000000902-903. Neither document purports to record any communication from Bates to Rouse. Bates's station file notes state: " Ms. Manning was not told by management not to return to work. Ms. Manning was instructed to submit a request for light duty." Pl. Ex. 39 at USPS-000000902. Exhibit 39 does not show that Bates communicated this information Rouse or that she did so in an email.

30. Def. Produced emails where Bates is on record advising Mary Rouse that Manning was performing all the functions of the SSDA prior to July 2018. Ex. 40 *Def.'s email* (At pg. 84)

**RESPONSE:** The Postal Service objects to paragraph 30 because it is not supported by

admissible evidence. Fed. R. Civ. P. 56(c)(2); *Oakley v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment."). Plaintiff's Exhibit 40 is the second page of narrative notes from Bates's station file, numbered USPS-000000903. The first page of the notes was attached as Plaintiff's Exhibit 39. Bates's notes state as follows: "Was the employee performing light duty work prior to July 2018? No. She was performing all function of SSDA." Pl.'s Ex 40. The notes do not purport to record a communication from Bates to Rouse. Furthermore, the full context of the notes make clear that Manning was *not* performing all of the functions of an SSDA prior to July of 2018 and that the portion quoted above is simply referring to the fact that Manning did not have a limited duty assignment that would have removed some of her SSDA functions. On the prior page, Bates wrote: "During my first week . . . at Twenty Second Street Station I assigned different tasks for Ms. Manning to complete in which she would tell me what she could and couldn't do." Pl. Ex. 39 at USPS-000000902. Bates then described her efforts to determine Manning's medical restrictions and the status of Manning's workers' compensation claims. Pl. Ex. 39 at USPS-000000902.

31.    Manning worked various hours in March of 2018 up to 5.99 or 6 hours per day. Ex. 41, *TACS Weekly Clock Rings* from 3/10/18 – 3/16/18 averaging 6 hours per day. Pg. 85-86, and Ex. 42, *USPS Hour Codes*. (At pg. 87)

   **RESPONSE:** Admit.

32.    Postmaster Louis DeJoy was named as Def., 2nd Am. Compl. ( Dkt. 19 ¶ 6)

   **RESPONSE:** Admit.

33.    The court has jurisdiction pursuant to 28 USC § 1331. ( *Id.* ¶ 11)

   **RESPONSE:** Dispute. This court has jurisdiction pursuant to the Rehabilitation Act, 29 U.S.C. § 794a(a)(1), which incorporates by reference the rights and remedies provided in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

34. Manning's 2nd Am. Comp. was filed for Count I, Violation of the Rehab Act., & Count II, Reprisal Disability discrimination for Manning's engagement in protected activity. *Id*. (¶¶ 25 & 26)

**RESPONSE:** Admit.

35. Manning has exhausted all administrative remedies via participating in the EEO via filing complaints and going through appeals and via participating in the Collective Bargaining Agreement's grievance process. 29 CFR 1614.407.(e)(f)(g)

**RESPONSE:** Admit that Manning has exhausted her administrative remedies through the EEO process. Dispute that Manning's participation in her union's collective bargaining process has any relevance to this case and dispute that Manning's participation in her union's collective bargaining process amounted to exhaustion of her administrative remedies as required under the Rehabilitation Act.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Virginia O. Hancock
VIRGINIA O. HANCOCK
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1998
virginia.hancock@usdoj.gov

14

Det 9/2

4.     The Postal Service based this accommodation on medical evidence that Manning was prohibited from climbing, walking, and standing more than 30 to 50 minutes per hour. *Id.* Manning accepted the accommodation but was ultimately placed in a "sales service distribution associate" position at the Irving Park post office. Ex. 1 at 54:21-55:2.

5.     The functional purpose of a sales service distribution associate is to: "[p]erform *distribution* and a variety of sales and customer support services for products." Ex. 3, Position Description at USPS-000002688. The duties and responsibilities of a sales service distribution associate include: (1) "[d]istribut[ing] primary and one or more schemes of incoming mail by delivery point based on a knowledge of the distribution scheme established for the office, branch or station," (2) "[d]istribut[ing] primary and one or more schemes of outgoing mail for dispatch based on knowledge of current distribution schemes," (3) "mak[ing] emergency carrier relays," and (4) "label[ing] and tie[ing] out mail for dispatch and other related duties for distribution." Ex. 3, Position Description. In Manning's words, this is "the hard-core work." Ex. 1 at 55:6-12.

6.     Once at the Irving Park post office, Manning submitted another disability accommodation request because she could not perform distribution-related job duties. Ex. 1 at 60:18-61:12; Ex. 4, 2017 Reasonable Accommodation Request. Manning was offered a modified job working only at the customer service window with a later start time that coincided with the customer service window's hours. Ex. 1 at 61:22-62:6; March 22, 2017 Letter. In March of 2017, Manning rejected this offer and rescinded her accommodation request. Ex. 1 at 62:7-15; Ex. 5, Letter Rescinding 2017 Accommodation Request.

7.     Manning submitted a new workers' compensation claim to the Department of Labor a few weeks later, in early April of 2017, alleging that she had arthritis, bulging discs, disc

2

dispatch based on knowledge of current distribution schemes," (3) "mak[ing] emergency carrier relays," and (4) "label[ing] and tie[ing] out mail for dispatch and other related duties for distribution. " Ex. 3, Position Description In Manning's words, this is "the hard-core work." Ex. 1 at 55:6-12.

    **Response:** (1) Object not relevant. The issue of a reasonable accommodation is not before the Court since Manning withdrew Count 1 of her 2nd Am. Compl. (Order Dkt. 89) Disputed in part because Def. listed 4 out of 13 functions listed in the sales service distribution associate job description. **Ex. 8,** *SSDA, Job Description.* Object to the statement, In Manning's words, this is "the hard-core work" as misleading. Counsel knew Manning was specifically referring to working truck detail as "hard core work." **Ex. 9,** Dep. Tr. 55: 6 -12[2]

    6.    (a) Once at the Irving Park post office, Manning submitted another disability accommodation request (b) because she could not perform distribution-related job duties. Ex. 1 at 60:18-61:12; Ex. 4, 2017 Reasonable Accommodation Request. (c ) Manning was offered a modified job working only at the customer service window with a later start time that coincided with the customer service window's hours. Ex. 1 at 61:22-62:6; March 22, 2017 Letter. (d) In March of 2017, Manning rejected this offer and rescinded her accommodation request. Ex. 1 at 62:7-15; Ex. 5, Letter Rescinding 2017 Accommodation Request.

    **Response:** (a) Object, not relevant, counsel is attempting to enlarge the case by including events, that occurred at Irving Park Station, which are not a part of Manning's 2nd Am. Compl. Dkt. 19 and are therefore not before the court. Def. admitted the issues of this compl. were limited to when Manning was told not to return to work until she had been approved for light duty and retaliation. Def.'s response to Manning's 2nd Am. Compl. Dkt 20, ¶¶ s 15, 17 & 26.

    7.    Manning submitted a new workers' compensation claim to the Department of Labor a few weeks later, in early April of 2017, alleging that she had arthritis, bulging discs, disc degenerative disease, and a back strain. Ex 6, 2017 Workers' Compensation Claim at USPS-000001842; Ex. 1 at 67:23-69:5.

    **Response: Object.** Not relevant. The matter of OWCP is not before the court. Count 1,

---

[2] To minimize documents Manning has only submitted the depositions pages refereed in her responses. The deposition excerpts has Manning's name on the top with the date of the deposition. Counsel previously submitted the deposition in its entirety as Def.'s Ex. 1. Dkt.

DKT 94