In the
UNITED STATES COURT OF APPEALS
for the Seventh Circuit

No. 23-2162

GWENESTHER MANNING,

*Plaintiff-Appellant,*

v.

LOUIS DeJOY, Postmaster General,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 21 C 1440, Ronald A. Guzmán, *Judge*.

BRIEF OF THE UNITED STATES POSTAL SERVICE

MORRIS PASQUAL
Acting United States Attorney
  for the Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604

THOMAS P. WALSH
Assistant United States Attorney
Civil Division Chief

VIRGINIA O. HANCOCK
Assistant United States Attorney
(312) 353-1998

# Table of Contents

Jurisdictional Statement ........................................................................... 1

Issues Presented for Review ..................................................................... 2

Statement of the Case .............................................................................. 2

    I.    Manning's On-the-Job Injuries and Disabilities Prior to March 2018 ... 2

    II.   Alleged Protected Activity Prior to March 2018 ..................................... 5

    III.  Events of March 2018 and Alleged Interactions with
           Supervisor Bates ................................................................................. 6

    IV.  EEO Proceedings and Subsequent Light Duty and Accommodation
           Requests ............................................................................................. 10

    V.   District Court Proceedings .................................................................. 12

Summary of Argument ............................................................................. 17

Argument .................................................................................................. 18

    I.    Standard of Review ............................................................................ 18

    II.   The District Court Properly Granted Summary Judgment for the
           Postal Service .................................................................................... 18
           A. Manning Did Not Demonstrate Retaliation Under the Direct
              Method of Proof .......................................................................... 19
           B. Manning Did Not Establish Retaliation Under the Indirect
              Method of Proof .......................................................................... 24

    III.  The District Court Did Not Abuse Its Discretion When It Deemed the
           Postal Service's Undisputed Statements of Facts Admitted ............... 32

    IV.  The District Court Did Not Abuse Its Discretion When It Authorized
           Disclosure of Manning's Two Most Recent OWCP Files ..................... 34

Conclusion ................................................................................................ 36

Certificate of Compliance with Rule 32(a)

Certificate of Service

i

## Table of Authorities

## <u>Cases</u>

*Amadio v. Ford Motor Co.*, 238 F.3d 919 (7th Cir. 2001) ............................................. 27

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................ 33

*Atanus v. Perry*, 520 F.3d 662 (7th Cir. 2008) ............................................................ 19

*Curtis v. Costco Wholesale Corp.*, 807 F.3d 215 (7th Cir. 2015) .......................... 18, 33

*Davis v. Time Warner Cable of Sw. Wisc., L.P.*, 651 F.3d 664 (7th Cir. 2011).... 23, 24

*Gamble v. FCA US LLC*, 993 F.3d 534 (7th Cir. 2021) ............................................... 18

*Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)....................................................... 26

*Huff v. Buttigieg*, 42 F.4th 638 (7th Cir. 2022)........................................................... 21

*Jokoch v. Rush Univ. Med. Ctr.*, 42 F.4th 626 (7th Cir. 2022)................................... 23

*Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923 (7th Cir. 2020) .................................... 19

*Jones v. City of Elkhart, Ind.*, 737 F.3d 1107 (7th Cir. 2013) .................................... 18

*Jordan v. Summers*, 205 F.3d 337 (7th Cir. 2000) ...................................................... 29

*Khowaja v. Sessions*, 893 F.3d 1010 (7th Cir. 2018) .................................................. 19

*Kotaska v. Fed. Express Corp.*, 966 F.3d 624 (7th Cir. 2020)............................... 19, 21

*Lesiv v. Ill. Central R.R. Co.*, 39 F.4th 903 (7th Cir. 2022)........................................ 21

*Lewis v. Wilkie*, 909 F.3d 858 (7th Cir. 2018)............................................................. 24

*Manning v. Potter*, No. 04 C 7010, 2006 WL 2710660 (N.D. Ill. Sept. 15, 2006) ........ 3

*McHale v. McDonough*, 41 F.4th 866 (7th Cir. 2022)................................................. 20

*Millbrook v. IBP, Inc.*, 280 F.3d 1169 (7th Cir. 2002) ............................................... 29

*Moore-Fotso v. Bd. of Ed. of City of Chicago*, 211 F. Supp. 3d 1012 (N.D. Ill. 2016) 32

*Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)................................ 19

*Parker v. Brooks Life Science, Inc.*, 39 F.4th 931 (7th Cir. 2022) ............................. 22

*Russell v. Acme-Evans Co.*, 51 F.3d 64 (7th Cir. 1995) .............................................. 29

*Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772 (7th Cir. 2013) .................................. 33

*Smith v. Potter*, 445 F.3d 1000 (7th Cir. 2006)..................................................... 26

*Tibbs v. Admin. Off. of the Ill. Cts.*, 860 F.3d 502 (7th Cir. 2017) ............................ 22

*Tomanovich v. City of Indianapolis*, 457 F.3d 656 (7th Cir. 2006)........................... 28

*United States v. Collins*, 604 F.3d 481 (7th Cir. 2010)............................................ 32

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) .................................. 21

*Vesey v. Envoy Air, Inc.*, 999 F.3d 456 (7th Cir. 2021) ......................................... 32, 34

*Wade v. Ramos*, 26 F.4th 440 (7th Cir. 2022) ..................................................... 22

*Weigel v. Target Stores*, 122 F.3d 461 (7th Cir. 1997) ........................................ 25, 26

*Widmar v. Sun Chemical Corp.*, 772 F.3d 457 (7th Cir. 2014) ............................... 31

*Winfrey v. City of Chicago*, 259 F.3d 610 (7th Cir. 2001) ..................................... 27

*Zoretic v. Darge*, 832 F.3d 639 (7th Cir. 2016)................................................... 33

## Statutes

28 U.S.C. § 1291..................................................................................... 1

29 U.S.C. § 791....................................................................................... 21

29 U.S.C. § 794a................................................................................. 1, 26

42 U.S.C. § 12112................................................................................... 32

42 U.S.C. § 12203............................................................................... 21, 32

42 U.S.C. § 2000e-16................................................................................. 1

42 U.S.C. § 2000e-3................................................................................. 21

## Rules

Fed. R. App. P. 4 ...................................................................................... 1

Fed. R. Civ. P. 26 .................................................................................... 35

Fed. R. Civ. P. 59 ................................................................................. 1, 16

## Jurisdictional Statement

Appellant's amended jurisdictional statement is not complete and correct. Accordingly, appellee provides the following jurisdictional statement pursuant to Circuit Rule 28(b).

Plaintiff-appellant Gwenesther Manning sued her former employer, the United States Postal Service, alleging that she was discriminated against on the basis of her disability and retaliated against for having engaged in protected activity. R. 6.[1] The district court had jurisdiction over Manning's claims under the Rehabilitation Act, 29 U.S.C. § 794a(a)(1), incorporating by reference the rights and remedies provided in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c).

The Postal Service moved for summary judgment. R. 90. On November 8, 2022, the district court granted the motion, resolving all claims. R. 104. The district court entered judgment against Manning and in favor of the Postal Service on the same day. R. 105. Manning filed a motion to amend judgment 28 days later, on December 6, 2022, (R. 108) within the time allowed by Fed. R. Civ. P. 59(e), thereby tolling the time to appeal. Fed. R. App. P. 4(a)(4)(A)(iv). The district court denied Manning's motion on April 10, 2023. R. 112. Manning filed a notice of appeal on June 9, 2023, (R. 113) within the 60 days allowed by Fed. R. App. P. 4(a)(1)(B) and 4(a)(4)(A). This court has jurisdiction to review the district court's final decision pursuant to 28 U.S.C. § 1291.

---

[1] "R." references are to the numbered items on the district court's docket.

## Issues Presented for Review

1.     Whether the district court correctly found that the plaintiff in this Rehabilitation Act case did not present evidence from which a reasonable jury could conclude that she was retaliated against when she was sent home from work and instructed to apply for a light-duty position because of her physical restrictions.

2.     Whether the district court abused its discretion when it deemed some of the Postal Service's LR 56.1 statements of fact admitted because the plaintiff did not comply with the rule.

3.     Whether the district court abused its discretion in permitting discovery relating to the plaintiff's two most recent workers' compensation cases against the Postal Service.

## Statement of the Case

### I.     Manning's On-the-Job Injuries and Disabilities Prior to March 2018

Plaintiff Gwenesther Manning first started working for the Postal Service in the 1980s.  R. 92 ¶ 1.  As of about 1999, she was working as a letter carrier and began to suffer from tendonitis and tarsal tunnel syndrome in her feet, which was accepted by the Department of Labor as an on-the-job injury.  *Id.* ¶ 2.  Manning was on full medical leave, receiving workers' compensation, for the next decade (from 2001 through 2011).  *Id.*  When Manning returned to work, she worked again as a letter carrier.  *Id.*[2]

---

[2] Manning's employment history and medical restrictions through about 2006 are described in more detail in the district court's opinion granting summary (continued . . .)

In 2015, Manning submitted a disability accommodation request to the Postal Service based on a diagnosis of lumbar radiculopathy. *Id.* ¶ 3. After an interactive process, the Postal Service offered Manning a position as a "sales and service associate." *Id.* This accommodation was based on evidence that Manning could not climb, walk, or stand more than 30 to 50 minutes per hour. *Id.* ¶ 4. Manning accepted the accommodation but was ultimately placed in a "sales service *distribution* associate" position at the Irving Park post office. *Id.*

According to the written job description, the functional purpose of a sales service distribution associate is to: "[p]erform distribution and a variety of sales and customer support services for products." *Id.* ¶ 5. The duties and responsibilities include: (1) distributing incoming mail, (2) distributing outgoing mail, (3) making emergency carrier relays, and (4) preparing mail for dispatch. *Id.*

At the Irving Park post office, Manning submitted a new disability accommodation request because she said she could not perform distribution-related job duties. *Id.* ¶ 6. Manning was offered a modified job working only at the customer service window, but with a later start time that coincided with the customer service window's hours. *Id.* Manning rejected this offer and rescinded her second accommodation request in March of 2017. *Id.* She then submitted a workers' compensation claim, to the Department of Labor Office of Workers' Compensation

---

judgment in Manning's prior *pro se* discrimination suit against the Postal Service. *Manning v. Potter*, No. 04 C 7010, 2006 WL 2710660 (N.D. Ill. Sept. 15, 2006), *aff'd* 250 F. App'x 743 (7th Cir. 2007).

Programs, alleging that she had arthritis, bulging discs, disc degenerative disease, and a back strain. *Id.* ¶ 7.

While her workers' compensation request was pending with the Department of Labor, Manning successfully bid on another "sales service distribution associate" position at the 22nd Street post office. *Id.* ¶ 8. Manning knew that she would be required to perform distribution-related tasks, which were at that point still the subject of a workers' compensation claim, but she believed that the situation would be resolved by changing her job title to "sales service associate" and removing some of her job duties. *Id.*

Manning arrived at the 22nd Street post office in July of 2017. *Id.* ¶ 9. She then submitted various physical work restriction forms and told her supervisors that she could not perform the distribution-related duties that were part of the job she sought. *Id.* One of Manning's supervisors offered her a modified job assignment (called "limited duty") in January of 2018. *Id.* ¶ 10. Manning accepted the modified assignment under protest and asserted that her modified job duties, which included mail distribution, were outside her restrictions "per walking, standing, lifting, intermittency not continuous." *Id.*

That same month, Manning submitted another medical restrictions form, signed by a physician, stating that she could not climb, kneel, bend, stoop, or twist and recommending a sedentary position. *Id.* ¶ 11. In February or March 2018, Manning submitted another medical restrictions form, also written and signed by a physician, that stated: "Recommend sedentary position or disability retirement.

4

Recheck in 30 days." *Id.* ¶ 12. Manning's physician also asserted that she could not bend or stoop and that she was limited to pulling, pushing, and grasping no more than 20 pounds at a time, rather than the 70 pounds required for the position. *Id.* At the time, most of the sales service and distribution associate job duties required standing, walking, lifting, and bending. *Id.* ¶ 13. The sales service distribution associate was also expected to move packages weighing up to 50 pounds, move and sort mail, and carry mail in tubs. *Id.*

## II.    Alleged Protected Activity Prior to March 2018

In 2014 and 2015, while she was still working as a letter carrier, Manning had submitted grievances under the section of the collective bargaining agreement between the Postal Service and the American Postal Workers Union that relates to light-duty work. R. 100 ¶ 16 & Pl. Ex. 26 at 2-3.[3] The grievances settled, and the Postal Service agreed to provide backpay. R. 100 ¶¶ 16-17.

Also in 2014, Manning had filed an EEO complaint alleging disability discrimination and retaliation at the Harwood Heights and Ashburn post offices. R. 95 ¶ 18 & Pl. Ex. 27 at 1-2. In August of 2016, the EEOC Office of Federal Operations concluded that Manning had been discriminated against because of disability (a back injury). *Id.* at 6-8. Manning was again awarded backpay. *Id.* at 8.

In February of 2018, Manning's union submitted a grievance on her behalf that did not include any factual background and that stated, in full, that the union was

---

[3]    "Light duty" is a job modification that the Postal Service provides to employees who have a temporary *off-the-job* injury. R. 92 ¶ 17.

requesting "mgmt [to] grant[] reasonable accommodation to the grievant per her restrictions." R. 92 ¶ 14. Manning alleges that her union submitted a second grievance on her behalf, at around this same time, requesting that she be placed on "light duty." *Id.*

At around this same time, on February 27, 2018, Manning submitted a formal EEO complaint alleging disability discrimination by various supervisors at the 22nd Street and Irving Park post offices. *Id.* ¶ 15. Manning alleged: "It has been an ongoing pattern of the agency to take punitive action against me when or soon after I submit restrictions. . . . Management has consistently violated me via systematically increasing my work load and ignoring my restrictions." *Id.* Manning asserted that she was not able to perform distribution duties and that therefore there was "a need to revisit my reassignment into the clerk's craft." *Id.* ¶ 16. Manning also asserted that she was not physically capable of sorting mail. *Id.* She accused her supervisors at the 22nd Street post office of violating her collective bargaining rights by refusing to provide work that was within her physical restrictions. *Id.*

## III.   Events of March 2018 and Alleged Interactions with Supervisor Bates

On March 2, 2018, Manning submitted a request for temporary light duty, which is for eligible employees who have a temporary off-the-job injury. *Id.* ¶ 17. Manning, however, did not include the required medical documentation with her request. *Id.* Manning testified at her deposition that she "may have given" one of her supervisors a copy of her medical restrictions, but that she "know[s]" she told the

supervisor "that they were already on file," meaning that they were in her "station file." R. 92, Def. Ex. 1 at 117-18.

The next day, March 3, Manning spoke to a new supervisor, Tiffany Bates, for the first time. *Id.* ¶ 18. Manning alleged that she approached Bates and "asked her could we have a conversation about my restrictions." *Id.* Manning alleged that she told Bates she had a "back condition" but "didn't go into details." *Id.* Bates allegedly responded: "[W]e'll talk about it." *Id.*

That was Bates's first day on the job at the 22nd Street post office, and she had not been accused of discrimination in Manning's February 2018 EEO complaint. *Id.* Manning alleged that she spoke to Bates again two days later, on March 5, and that she told Bates that while other managers had her working reduced hours, she was able to work more. *Id.* ¶ 19

On March 26, 2018, Manning received a "typewriter check payment" for backpay owed under one of her union grievance settlements. R. 100 ¶ 20 & Pl. Ex. 30. The "check payment" referenced grievance number J11N-4J-C-15189424 and stated that it covered backpay for a time period more than two years earlier (January 10, 2015, to October 23, 2015). R. 95, Pl. Ex. 30. That grievance, which was made while Manning was at the Irving Park post office, had been settled in December 2015 (about two years prior to Manning's arrival at the 22nd Street post office). R. 100 ¶¶ 16, 20 & Pl. Ex. 30. The payment receipt was addressed to: "Gwenesther Manning; Postal Official In Charge; Manager." R. 95, Pl. Ex. 30. An "office file" copy of Manning's "typewriter check payment" was emailed from the Postal Service

accounting service center to Herman Bingham, a labor relations specialist. R. 100 ¶ 20. In early April of 2018, Bingham emailed the payment receipt to other individuals, but not Bates. *Id.*

Manning alleged that after her March 5th conversation with Bates, she next spoke to Bates on March 29, 2018, when she had a brief conversation and asked for time to work on a pending EEO case. *Id.* ¶ 21. Manning alleged that she presented Bates with a USPS Form 1110, which allows a supervisor to approve the use of official work time to prepare materials relating to EEO proceedings. *Id.* The form stated that Manning required two hours to "appeal FAD" in EEO case 4J-606-0057-17, which had been filed in 2017 and alleged discrimination at the Irving Park post office (not the 22nd Street post office where Bates was her new supervisor). R. 95, Pl. Ex. 31; R. 100 ¶ 21. Manning alleged that Bates said that she (Bates) was not familiar with the form and that she would have to ask somebody about it. R. 92 ¶ 21. Manning asserted that Bates told her to bring back the form the next day. *Id.*

The next day, March 30, Bates told Manning that she could not let Manning work until she was approved for light duty and sent her home. *Id.* ¶ 22. Manning alleged that Bates told her something along the lines of: "I can't let you work because you have restrictions." *Id.* Manning testified at her deposition that Bates also returned the temporary light-duty request that Manning had submitted on March 2, 2018. R. 92, Def. Ex. 1 at 148. The form was signed by two other supervisors, Talena Franks-Cummings and Genise Green, and stated that light-duty work was not

available for Manning and that Manning had not provided the required medical documentation.  R. 92, Def. Ex. 15.

Manning and Bates then completed and signed a USPS Form 3971 absence document.  R. 95, Pl. Ex. 34.  Bates wrote: "employee is not limited duty; employee does not have an approved light duty case; informed employee to submit light duty request."  *Id.*  Manning wrote: "I am instructed to leave work and that I cannot return until I have been approved for light duty."  *Id.*

Bates, for her part, testified that she reviewed the work restriction forms submitted by Manning and concluded that Manning could not perform the distribution-related duties of a sales service distribution associate.  R. 92 ¶ 23.  In particular, Bates understood that Manning could not bend, kneel, stoop, twist, push, or lift heavy equipment—requirements for distributing mail.  *Id.*  Bates testified that she also confirmed that Manning did not have an open workers' compensation claim and was informed that Manning had submitted a request for light duty on March 2, 2018, without the necessary supporting medical documentation.  *Id.* ¶ 24.  Bates testified that Manning therefore needed to submit a new light-duty request, with appropriate documentation, before she could receive light-duty or modified work that satisfied her physical restrictions.  *Id.*

Manning went home from work on March 30, 2018, and did not return.  *Id.* ¶ 25.

## IV.    EEO Proceedings and Subsequent Light Duty and Accommodation Requests

A few days later, on April 9, 2018, Manning amended her EEO complaint to add, among other allegations, a claim that Bates had retaliated and discriminated against her by stating that she could not come to work until she was approved for light duty.  *Id.* ¶ 26.

Manning submitted another light-duty request about four months later, in July of 2018.  *Id.* ¶ 27.  The physician's certification, dated July 9, 2018, recommended "sedentary position or disability retirement" and stated that Manning could not climb, bend, stoop, twist, pull, or push.  *Id.*  Manning's request for light duty was denied by Donald Good, the district's light-duty coordinator.  *Id.* ¶ 28.  Good had called Manning's then-supervisor, Thomas Williams, who reported that the 22nd Street post office did not have any light-duty work available within Manning's restrictions.  *Id.*  In the meantime, Manning did not return to work or request leave from the Postal Service.  *Id.* ¶ 29.

On September 29, 2018, Manning filed another EEO complaint alleging that the Postal Service retaliated against her and failed to accommodate her disability when it denied her July 2018 light-duty request.  *Id.* ¶ 30.

About half a year later, in April of 2019, while still off work, Manning submitted a new reasonable accommodation request after she was threatened with discipline for months of unexcused absences.  *Id.* ¶ 31.  Manning requested that her title be changed to "sales service associate" (from "sales service distribution associate") and that she not be required to perform distribution-related job duties.

10

*Id.* Bates consulted with the chair of the Postal Service's reasonable accommodation committee about this request, and Manning was then allowed to return to work with modified job duties that did not require her to perform any distribution-related tasks. *Id.*

In March of 2020, after an interactive process, the Postal Service's reasonable accommodation committee concluded that Manning's supervisors at the 22nd Street post office had given her a reasonable accommodation and that she was not entitled to further job modifications. *Id.* ¶ 32. Manning voluntarily retired from the Postal Service that same month. *Id.*

Manning did not allege that Bates made any comments to her about her EEO complaints while she was working at the 22nd Street post office. *Id.* ¶ 33. Manning claimed that in June of 2020, *after* she had retired, Bates refused to give her paperwork and said: "I don't have to give you anything; you are retired; you filed this lawsuit against me; you lied on me." *Id.*

On October 26, 2018, the Postal Service issued a final agency decision in its favor on Manning's February 2018 discrimination complaint. *Id.* ¶ 35. Manning appealed to the EEOC Office of Federal Operations, which affirmed the final agency decision on March 6, 2020. *Id.* Manning requested reconsideration, which was denied on November 30, 2020. *Id.*

## V.  District Court Proceedings

Manning filed her district court complaint in March 2021.  R. 1.  Her second amended complaint alleged two counts for violations of the Rehabilitation Act, stemming from her February 2018 EEO complaint but limited to Bates's decision to take her "off the clock" on March 30, 2018.  R. 19 ¶¶ 15, 25.  Count I asserted a discrimination claim, and Count II alleged that Bates acted in retaliation for Manning's having "engaged in the EEO and EEOC process which are protected activities as well as the collective bargaining agreement's grievance process."  *Id.* ¶¶ 25, 26.  Manning dismissed Count I, her discrimination claim, in June 2022 after the EEOC issued a decision in her favor on her July 2018 EEO complaint.  R. 89; R. 92 ¶ 37.  The EEOC concluded that the Postal Service had failed to accommodate Manning after she submitted her light-duty request with medical documentation in July 2018, and awarded back pay to Manning for the time she was off work from July 2018 to April 2019.  R. 92 ¶ 37.

During discovery, the Postal Service asked Manning to authorize disclosure of her two most recent Office of Workers' Compensation Programs ("OWCP") records from the Department of Labor.  R. 31 ¶ 4 & Ex. 2.  Manning previously authorized release of *all* of her workers' compensation files (including some not at issue in this case) to Postal Service EEO investigators.  R. 48, Ex. 10 (filed under seal at the magistrate judge's direction, *see* R. 61 at 3 n.1).  However, that authorization was only effective until April 22, 2019.  *Id.*  Therefore, the Postal Service asked Manning

to provide a new, more limited release of her two most recent files (or for the court to simply authorize the Postal Service to use them in this case). Manning refused.

The Postal Service filed a motion to compel, and Manning filed a motion for a protective order barring disclosure of her OWCP files (among other forms of medical fact discovery that Manning claimed were irrelevant). R. 31; R. 40. The magistrate judge granted the Postal Service's motion to compel and denied Manning's motion as it related to her OWCP files, and the Postal Service was authorized to use Manning's OWCP files in this case. R. 61 at 6. The magistrate judge concluded that Manning's OWCP files, which had already been used in the EEO proceedings and were in the Postal Service's possession, were relevant to Manning's alleged disability, her ability to perform her duties, and whether the alleged discrimination forced her to retire. *Id.* at 5. Manning then filed objections to the magistrate judge's order, R. 70, which the district court overruled on May 6, 2022. R. 83. The district court held that Manning had "squarely placed her medical information at issue by alleging disability discrimination" and that Manning had taken a "narrow view of relevance . . . that does not comport with the liberal discovery allowed under the Federal Rules of Civil Procedure." *Id.* at 3.

After the close of discovery, the Postal Service moved for summary judgment on Manning's remaining retaliation claim. R. 90. The district court granted the Postal Service's motion for summary judgment on November 8, 2022. R. 104. The district court first overruled Manning's "relevance" objections to the Postal Service's statement of facts that dealt with her employment history, protected activity, and

physical restrictions prior to March 2018. R. 104 at 2 n.2. The district court concluded that "this history is essential context for the events from which plaintiff's retaliation claim arises." *Id.* Because the court overruled Manning's relevance objections, and she did not in the alternative admit or dispute the underlying facts to which she objected, the court deemed those facts admitted under LR 56.1(e)(2). *Id.*

Turning to the merits, the district court explained that, under the direct method of proof, Manning was required to present evidence sufficient to create a dispute of material fact that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. *Id.* at 5. As to Manning's statutorily protected activity, the district court held that Manning's EEO complaints qualified as protected activity and assumed without deciding that Manning's union grievances qualified because "she was requesting accommodations for her claimed disability of lumbar radiculopathy, as she had been doing for years." *Id.*

The court held, however, that Manning had not submitted any evidence of a causal link between her protected activity and the adverse employment action at issue (being sent home from work on March 30, 2018). *Id.* The district concluded that notwithstanding Manning's "long history" of EEO complaints and union grievances, there was no evidence that Bates was aware of that history. *Id.* at 6. Bates had only started work at the 22nd Street post office on March 3, 2018, and she and Manning had very little contact between then and the end of March. *Id.* Moreover, Bates was not the subject of Manning's complaints or grievances that were

14

submitted prior to March 30, and there was no evidence that Bates was involved in or notified about Manning's complaints. *Id.* The district court rejected Manning's argument that Bates must have learned about her protected activity because a settlement check for a 2016 EEOC decision in Manning's favor was allegedly sent to the "postal official in charge" at the 22nd Street post office in late March of 2018. *Id.* The court found that while Bates hypothetically should have received the document, this would not permit a reasonable inference that Bates had the required *actual* knowledge that Manning had engaged in statutorily protected activity. *Id.* The district court also rejected Manning's argument that Bates was retaliating against her for having filed an amended EEO complaint on April 9, 2018: "Bates's action on March 30, 2018 could not have been in retaliation for protected activity that came later." *Id.*

The district court concluded that any weak inference that might arise from the purportedly "suspicious timing" of Bates's action, which happened the day after Manning allegedly requested official time to work on an EEO complaint, was insufficient to create a genuine issue of fact given Bates's credible alternative explanation. *Id.* at 7. Specifically, Bates had testified that Manning simply had not submitted the necessary documentation for a light-duty assignment and that she had reviewed Manning's medical restrictions and concluded that Manning could not perform all the physical requirements of her assigned job position. *Id.* Manning therefore could not survive summary judgment under the direct method of proof.

The district court held that Manning could not succeed under the indirect method of proof, either. *Id.* at 8. This approach required Manning to establish that: (1) she engaged in protected activity, (2) suffered a materially adverse employment action, (3) was meeting the Postal Service's legitimate expectations, and (4) was treated less favorably than similarly situated employees who did not engage in protected activity. *Id.* Manning had not established the third prong of her *prima facie* case, that she was meeting the Postal Service's expectations, because the undisputed evidence showed that she was not physically able to perform the distribution-related duties of her job. *Id.* Nor had Manning demonstrated that any similarly situated employees who had *not* engaged in protected activity were treated more favorably: the one purported comparator employee identified by Manning, Cassandra Glover, *had* engaged in protected activity by filing several EEO complaints. *Id.* Because Manning could not establish a *prima facie* case, her retaliation claim could not succeed under the indirect method of proof.

Manning filed a Rule 59(e) motion to reconsider on December 6, 2022. R. 108. After briefing, the court denied Manning's motion to reconsider on April 10, 2023. R. 112. The court rejected Manning's argument that the court's recitation of the facts of her case missed "critical details," as those details were not cited by Manning during summary judgment briefing and had "no apparent relevance to the issue presented on summary judgment." *Id.* at 2.

The district court also rejected various new theories that Manning improperly presented for the first time in her motion to reconsider. *Id.* Manning argued that

16

Bates's actions were retaliatory because Bates had attended a "blue door" meeting before she took Manning off the clock and was acting at someone else's direction. *Id.* But Manning did not explain what a "blue door" meeting was, identify the attendees at that meeting, or explain why these unidentified managers had discriminatory animus. *Id.* at 2 & n.2. Manning also argued for the first time that her protected activity included her prior reasonable accommodation and light-duty requests, even though during summary judgment briefing she took the position that they were irrelevant and "not before the court." *Id.* at 2-3. Manning further asserted that Bates's conduct must have been retaliatory because she did not follow Postal Service policy that required her to refer a light-duty request to the district's reasonable accommodation committee. *Id.* at 3. The court concluded that these were new arguments, not raised before, and were therefore improper on a motion to reconsider. *Id.*

     This appeal followed.

### Summary of the Argument

     Manning was unable to cite evidence that she was subjected to illegal retaliation at the 22nd Street post office. There was no evidence that supervisor Tiffany Bates, who was brand new to supervising Manning and who spoke to Manning only about four times in total, somehow tried to punish Manning for having filed various EEO complaints and grievances relating to *other* supervisors, at *other* post offices, and alleged misconduct going back years before Bates and Manning met. Indeed, Manning did not establish that Bates even knew about most of her alleged

protected activity, let alone that Bates was, in Manning's words, trying to exact "revenge." Br. at 14. Rather than supporting a retaliation claim, the evidence overwhelmingly showed that Bates's stated reason for sending Manning home from work was true: *Manning was physically incapable of doing her job*. This court should therefore affirm the district court's decision granting summary judgment to the Postal Service on Manning's retaliation claim. This court should also reject Manning's contention that the district court abused its discretion when it deemed the Postal Service's undisputed LR 56.1 statements admitted and when it authorized disclosure of Manning's OWCP files, which were plainly relevant and significant to the Postal Service's defense of Manning's claims.

## Argument

### I.    Standard of Review

A district court's grant of summary judgment is reviewed *de novo*. *Gamble v. FCA US LLC*, 993 F.3d 534, 537 (7th Cir. 2021). A district court's decisions regarding compliance with local rules are reviewed for abuse of discretion. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). This court reviews a district court's discovery rulings for abuse of discretion. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1117 (7th Cir. 2013).

### II.   The District Court Properly Granted Summary Judgment for the Postal Service.

Manning did not submit any evidence suggesting that her retaliation claim could succeed at trial, under any method of proof. The district court correctly granted

the Postal Service's motion for summary judgment, and its decision should be affirmed.

## A.    Manning Did Not Demonstrate Retaliation Under the Direct Method of Proof.

Manning did not demonstrate that she could succeed on her retaliation claim using the direct method of proof, which required her to present evidence that: (1) she engaged in protected activity, (2) she suffered an adverse action, and (3) there was a causal connection between the two. *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020). To succeed under the direct method of proof, Manning needed to offer evidence that pointed "directly to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (cleaned up). Manning could have proceeded under the direct *method* with either direct *evidence* (*e.g.*, a smoking-gun statement) or indirect (circumstantial) *evidence* that established an impermissible reason for the adverse action. *Atanus*, 520 F.3d at 671.[4]

---

[4] In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), this court did away with any distinction between direct and indirect *evidence*. That is not to say that the direct and indirect *methods* of defeating summary judgment have been abandoned. *Ortiz* did not change the substantive law and did "not concern *McDonnell Douglas* or any other burden-shifting framework, no matter what it is called as a shorthand." *Id.* at 766. Rather, *Ortiz* was "only concerned with the proposition of sorting evidence into 'direct' and 'indirect' piles," and its holding "did not alter the burden shifting framework established in *McDonnell Douglas*." *Khowaja v. Sessions*, 893 F.3d 1010, 1014 (7th Cir. 2018). In any event, *Ortiz* changes little or nothing in the analysis of this case. This court has explained that there are "three broad types of circumstantial evidence that will support an inference of intentional discrimination" under *Ortiz*: "[1] ambiguous or suggestive comments or conduct; [2] better treatment of people similarly situated but for the protected characteristic; and [3] dishonest employer justifications for disparate treatment." *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020). We have added the numbered

(continued . . .)

As a threshold issue, Manning did not clearly identify what specific protected activity allegedly caused the events at issue in this case, other than to reference her EEO complaints and union grievances in her complaint.  R. 19 ¶ 26.  What was clear, however, was that her new supervisor and alleged discriminating official, Tiffany Bates, was not mentioned in any of the EEO complaints Manning had filed prior to March 2018.  Nor was Bates mentioned in any of Manning's numerous union grievances—assuming, for argument's sake, that the grievances were "about discrimination" and therefore constituted protected activity.  *McHale v. McDonough*, 41 F.4th 866, 871 (7th Cir. 2022).

Next, Manning failed to submit any evidence suggesting that Bates's decision to send her home on March 30, 2018*, was *caused by* her protected activity.  Contrary to Manning's argument, Br. at 8-11, the district court did not require her to show that her protected activity was the "sole cause" of Bates's action.  R. 104 at 5 (to survive summary judgment, Manning was required to present evidence sufficient to create a dispute of material fact that there was a "causal link between the protected activity and the adverse action").  Nor did the Postal Service make this argument.  R. 99 at

---

brackets to the three categories of evidence cited by this court to make it easier to point out that category [1] is akin to the traditional direct method; category [2] is really an element of the plaintiff's *prima facie* case under the existing indirect method; and category [3] is just evidence of pretext under the existing indirect method.  Each one of these categories is addressed here as part of the direct *method* or the indirect, *McDonnel Douglas* burden-shifting *method*.  This brief does not make the mistake of distinguishing direct from indirect *evidence*, which is what *Ortiz* criticized.  It is unfortunate that the semantic overlap between summary judgment *methods* of proof ("indirect" vs. "direct") and the kinds of *evidence* used to support those two methods (also "indirect" or circumstantial vs. "direct") can lead to confusion when litigating employment cases.

5-6.  Rather, to satisfy the causation element of her retaliation claim, Manning was required to show that a retaliatory reason was the "but-for" cause of the alleged adverse employment action.  *Kotaska*, 966 F.3d at 633.  Manning was required to prove "but-for" causation in this Rehabilitation Act case notwithstanding this court's holding in *Huff v. Buttigieg*, 42 F.4th 638 (7th Cir. 2022), that *Title VII's* provision prohibiting retaliation in the federal sector does not require but-for causation.  The Rehabilitation Act, in contrast to Title VII, incorporates the ADA's anti-retaliation provision at 29 U.S.C. § 791(f).  The ADA's anti-retaliation provision is substantially the same as the *private-sector* anti-retaliation provision in Title VII, which requires proof of but-for causation.  *Compare* 42 U.S.C. § 12203(a) (ADA retaliation provision)*, with* 42 U.S.C. § 2000e-3(a) (Title VII private-sector retaliation provision); *see also Huff*, 42 F.4th at 645 (noting that proof of but-for causation is still required in private-sector Title VII cases).

Under the "but-for" causation standard, Manning was required to demonstrate that Bates's decision to send her home with instructions to apply for light duty "would not have occurred in the absence of the alleged wrongful action" of the Postal Service.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (citation omitted).  Relatedly, Manning needed to show that Bates had *knowledge* of her protected activity prior to sending her home from work.  *Lesiv v. Ill. Central R.R. Co.*, 39 F.4th 903, 915 (7th Cir. 2022).  She failed at both.

Here, there was no evidence that Bates even knew about any of Manning's prior grievances, much less the specifics of her EEO complaints.  Bates obviously

could not have been retaliating against Manning for protected activity that she did not know about. While Manning *speculated* that Bates either received or saw a settlement check in March 2018, the district court correctly concluded that no *evidence* supported this theory. R. 104 at 6. And of course it's evidence that matters, not theories. Manning argues, in her appellate brief: "It's conceivable, defendant wanted revenge." Manning Br. at 14. A lot of things are *conceivable,* but the mere possibility of a retaliatory motive was not *evidence* sufficient to withstand summary judgment. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) ("As we have said many times, summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." (cleaned up)).

Looking at the *evidence* in this case, Manning's causation theory boiled down to the claim that Bates sent her home from work not because she was physically unable to perform the job duties and did not have a light-duty assignment but because Manning had shown Bates a form the previous day asking for "official time" to work on an EEO case. The form did not include any information about the substance of the EEO case—only the case number—which in any event did not concern Bates or the 22nd Street post office. This is much ado about nothing. As this court has repeatedly recognized, "suspicious timing alone rarely establishes causation." *Parker v. Brooks Life Science, Inc.*, 39 F.4th 931, 937 (7th Cir. 2022) (citation omitted); *see also, e.g.*, *Tibbs v. Admin. Off. of the Ill. Cts.*, 860 F.3d 502, 505 (7th Cir. 2017) ("The problem is that suspicious timing is rarely enough by itself. A plaintiff must

ordinarily present other evidence that the employer's explanation for the adverse action was pretext for retaliation."). Ultimately, whether a sequence of events is sufficient to support an inference of retaliation depends on the full factual context. *Davis v. Time Warner Cable of Sw. Wisconsin, L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) ("We have also cautioned that suspicious timing may be just that—suspicious, and underscored the importance of context in assessing whether an inference of causality is warranted or not." (cleaned up)). Here, there were no surrounding facts suggesting that the mere sequential timing in this case constituted *evidence* of *retaliation*. There's even a fancy Latin name for this logical fallacy: *Post hoc, ergo propter hoc*.

Further undermining Manning's unsupported theory, Bates had started working at the 22nd Street station only a few weeks before Manning asked for time to work on her EEO case. R. 92 ¶ 18. As the district court explained: "Plaintiff and Bates had a very limited history as of the end of March 2018." R. 104 at 7. Nor was there any evidence, in the form of comments or other conduct, suggesting that Bates had a negative view of Manning's EEO activity. Indeed, Manning had not previously accused Bates of discrimination or misconduct in her prior EEO complaints. R. 92 ¶¶ 15-16, 18.

In any event, Bates's straightforward and credible alternative explanation for her conduct—that Manning simply could not physically do her job and did not have a light-duty assignment—negated any inference of causation that might somehow be supported by timing. *Jokoch v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022) ("any inference of causation supported by temporal proximity may be negated

by circumstances providing an alternative explanation for the challenged action"). Manning had asked to discuss her restrictions with Bates during their very first conversation. R. 92 ¶ 18. Manning had also requested light-duty work but had not submitted the necessary medical documentation. *Id.* ¶ 17. And Manning's existing medical restrictions, which Bates said she reviewed, explicitly stated that she needed an entirely sedentary job. *Id.* ¶ 12. This was a case where suspicious timing was "just that—suspicious," rather than evidence of retaliation. *Davis*, 651 F.3d at 675 (citation omitted). Manning's retaliation claim plainly could not succeed under the direct method of proof.

### B. Manning Did Not Establish Retaliation Under the Indirect Method of Proof.

Manning did not demonstrate retaliation using the indirect method, either. Under the indirect method of proof, Manning was required to establish a *prima facie* case by showing that: (1) she engaged in statutorily protected activity, (2) she was performing her job satisfactorily, (3) she suffered a materially adverse employment action, and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Lewis v. Wilkie*, 909 F.3d 858, 866-67 (7th Cir. 2018) ("We did not reject or alter the *McDonnell Douglas* burden-shifting framework in *Ortiz*; we simply clarified that there are not separate classifications of evidence to be evaluated under different standards, and we eliminated unhelpful surplus tests."). If Manning had established a *prima facie* case, she would also have needed to prove that Bates's stated, non-discriminatory, explanation for the action was pretextual. *Id.* at 866. Manning did not meet these standards and thus could

not avoid summary judgment.

The district court correctly held that Manning was not performing her job satisfactorily and therefore did not satisfy the second requirement for a *prima facie* case. R. 104 at 8. This requirement was essentially the same as the "qualified individual" requirement in a Rehabilitation Act or ADA claim. *See Weigel v. Target Stores*, 122 F.3d 461, 465 (7th Cir. 1997). Here, Manning's job duties as a sales service distribution associate included: (1) distributing incoming and outgoing mail, (2) making emergency carrier relays (or deliveries), and (3) labeling and tying out (or organizing) mail for dispatch and distribution. R. 92 ¶ 5. Manning could not and did not perform these tasks.

While Manning asserts in her brief that the Postal Service "misrepresented her job description," Br. at 11, she did not dispute the Postal Service's assertion that she was required to distribute mail in her response to the Postal Service's LR 56.1 statement of facts. R. 94 ¶ 5. Manning also criticizes the district court for allegedly failing to consider Bates's description of her job duties, Br. at 13. But Bates's description is consistent with the written job description that the Postal Service relied up on and, in any event, Manning did not cite Bates's affidavit in her response to the Postal Service's summary judgment motion. *See id.*

Nor did Manning meaningfully dispute that her doctor repeatedly told the Postal Service that she needed a "sedentary position or disability retirement" and that she could not bend, stoop, or perform other distribution-related tasks. *Id.* ¶¶ 12, 27. Indeed, Manning *herself* repeatedly told the Postal Service that she could not

perform any distribution duties, that she was not physically capable of sorting mail, and that she needed to be reassigned to a different job. R. 92 ¶¶ 9-11, 16. This was, after all, the basis of Manning's reasonable accommodation request and subsequent modified job duties. *Id.* ¶ 31. The district court properly relied on Manning's and her physician's representations to the Postal Service. *Weigel*, 122 F.3d at 467 ("The point here is a simple one: When employees (and/or their physicians) represent that they are 'totally disabled,' 'wholly unable to work,' or some other variant to the same effect, employers and factfinders are entitled to take them at their word . . . ."). To this day, Manning has not submitted evidence suggesting that she could distribute mail, which was concededly an essential function of her position.

The fact that the EEOC eventually concluded Manning could perform her job, in Manning's subsequent discrimination case, does not change this analysis. *See* R. 92 ¶ 37. In Rehabilitation Act cases, like in Title VII cases, a federal court must conduct a *de novo* determination of a retaliation claim based on the factual record before it. 29 U.S.C. § 794a(a)(1) (incorporating by reference the rights and remedies set forth in Title VII of the Civil Rights Act of 1964); *Smith v. Potter*, 445 F.3d 1000, 1011 (7th Cir. 2006) (court is not "under any obligation to defer to the determination of an administrative agency"), *overruled on unrelated grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013). (Importantly, this rule of *de novo* review of course also prevents the employer from relying on an administrative decision in its favor.) Here, the evidence before the district court on *de novo* review overwhelmingly showed that Manning could not and did not perform the essential, distribution-

related, functions of her job as of March 2018.[5]

In the face of this evidence, Manning argues that because the Postal Service eventually accommodated her by providing a permanent, modified job assignment, she was meeting her employer's expectations all along. Br. at 15-16 ("Bates testified Manning was not allowed to work six hours per day until 4/22/2019 due [to]the drastic change in her restrictions. Yet, Bates admitted Manning's restrictions . . . are practically identical except they are on a different form."). But the fact that the Postal Service eventually provided Manning with a modified job through the reasonable accommodation process "will not count as evidence that the position it created is in fact the full . . . position [in question]." *Winfrey v. City of Chicago*, 259 F.3d 610, 616 (7th Cir. 2001). If "an employer 'bends over backwards to accommodate a disabled worker . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.'" *Id.* (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 929 (7th Cir. 2001)). The evidence here showed that Manning was simply not performing all of her core job duties (and according to her doctor, she was not *capable* of performing those duties), and therefore was not meeting the Postal Service's legitimate employment expectations.

Last, Manning argues that medical evidence pre-dating March 2018, in particular her OWCP files, "were neither a part of the case nor are they before the

---

[5] Again, not that the EEOC decision overcomes the district court's *de novo* determination, but the EEOC in any event did not need to address retaliation in its decision because, in that case, Manning solely asserted a failure to accommodate claim. R. 92, Def. Ex. 26 at 3.

court." Manning Br. at 9. As the district court noted, Manning's "view of the scope of relevant evidence is unreasonably narrow." R. 104 at 1 n.2. Evidence relating to Manning's physical limitations, and the extent to which she was physically able to perform her job, was patently relevant and properly considered in this Rehabilitation Act case. The district court correctly considered this evidence in concluding that Manning had not satisfied the second requirement for a *prima facie* case.

The district court also correctly concluded that Manning did not meet the fourth requirement for a *prima facie* case because she did not identify any comparator employees. The only possible comparator employee Manning identified was Cassandra Glover, who was not a valid comparator. R. 94 ¶¶ 9-12. To establish a *prima facie* case of retaliation, Manning was required to "present evidence that a similarly situated employee who had *not* engaged in statutorily protected activity was treated more favorably." *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 666 (7th Cir. 2006) (emphasis added). Here, Glover, who was also Manning's union representative, had filed at least seven EEO complaints. R. 100, Def. Ex. 34. Glover was not an appropriate comparator employee because she was *within* Manning's protected class of individuals who had filed EEO complaints and used the union grievance process.

Glover was not an appropriate comparator for the additional reason that she was not subject to the same work standards as Manning and had differentiating circumstances. Glover, unlike Manning, had a permanent work-related injury and had been approved for limited-duty work by the Department of Labor. R. 100 ¶¶ 9,

28

12. (As explained earlier, "limited-duty" work must be provided for on-the-job injuries while "light-duty" work, if available, may be provided for other injuries.)  This means that Glover, unlike Manning, was not required to perform all the essential functions of her position as a sales service distribution associate.  *See id.*, Ex. 3.  In addition, Glover's restrictions, unlike Manning's, did not require a sedentary position.  *Id.* ¶ 12.  The evidence simply did not demonstrate that Glover was given the type of permanent light-duty assignment that Manning demanded.  For all these reasons, Manning did not establish a *prima facie* case, and her retaliation case failed under the indirect method of proof.

Even if Manning had established a *prima facie* case, her retaliation claim failed for the additional reason that she did not establish that the reason the Postal Service gave for its actions was pretextual.  "Pretext 'means a lie, specifically a phony reason for some action.'"  *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)).  An employer's reasoning can be "mistaken, ill-considered or foolish, so long as [the employer] honestly believed those reasons, pretext has not been shown."  *Id.* (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)).  Manning did not cite any evidence that the reasons Bates provided for sending her home—that Manning was physically unable to do her job and was not approved for light duty—were "phony."  To the contrary, the evidence in this case overwhelmingly supported Bates's conclusion, even with the benefit of hindsight and fact discovery.  And none of Manning's arguments on appeal have merit.

According to Manning, Bates was lying because she had at times worked up to six hours per day in March of 2018.  Br. at 18.  This is a head-scratcher.  It was undisputed that Manning did not work any full eight-hour workdays in March of 2018 and instead took leave-without-pay, resulting in six-hour days.  R. 95, Pl. Ex. 41 (showing that Manning took about two hours of leave-without-pay (coded 5901 and 5904) on the days she worked).  Indeed, during February and March of 2018, Manning repeatedly annotated her leave request forms to state that her work hours were being reduced involuntarily due to her medical restrictions.  R. 100, Def. Ex. 35.  The fact that Manning worked only six hours, took leave without pay, and repeatedly referred to the reduction in hours as "involuntary" *supports* Bates's assertion that Manning was not capable of performing her job.

Manning also argues that Bates was lying when she testified in an EEO affidavit that "Ms. Manning was not allowed to work six hours per day until April 22, 2019 due to the drastic change in her restrictions."  Br. at 16.  According to Manning, this was a lie because there was no "drastic change" in her restrictions.  *Id.*  But nothing in this statement undermines Bates's explanation for sending Manning home from work, which was that Manning was not able to perform all of her job duties and was not approved for light-duty as of March 2018.  That Manning was eventually given modified job duties in April 2019, without distribution-related tasks, likewise supports rather than undermines Bates's stated reasons for sending Manning home from work.  R. 92 ¶ 31.

Manning also argues that the district court should have inferred pretext

because Bates eventually charged her with being absent without leave, notwithstanding that Bates herself had sent Manning home from work.  Br. at 15-16.  Manning, however, did not call in or request leave for about a *year*, from April of 2018 through March of 2019.  *See* R. 92 ¶¶ 29, 31.  What else was that other than AWOL?  Common sense dictates that Manning should have continued to request leave, as she initially did when Bates instructed her to apply for light duty.  R. 100 ¶ 6.  The Postal Service, like other employers, does not continue to pay employees who never come to work.  And even if Bates was wrong to charge Manning with being absent without leave (she was not), being wrong is different than lying, and lying is what Manning had to show but did not.  *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 464-65 (7th Cir. 2014).  Manning's personal disagreement with Bates's (reasonable) actions did not constitute evidence of pretext.

Finally, Manning's argument that Bates did not *reasonably accommodate* her disability is beside the point.  Br. at 16-22.[6]  As the district court stated, for the purposes of Manning's *retaliation* claim, "[t]he issue is whether Bates honestly held these views [that she articulated at the time], not whether she exercised poor judgment, made a mistake, or acted unfairly."  R. 104 at 7.  Even if Bates had not followed the Rehabilitation Act's reasonable accommodation requirements (which the Postal Service disputes), that failure alone would not give rise to the inference of

---

[6]  Manning also asserts that she submitted a "request for reconciliation of job title/duties" on May 8, 2018, to another supervisor, Wanda Prater.  Br. at 17 & Pl. Ex. 49.  This letter post-dates Bates's alleged retaliation (which took place on March 30), was not submitted until Manning filed a motion to amend judgment, and there is no evidence that Bates ever saw it.  R. 108, Pl. Ex. 49.

*retaliatory* animus. If it did, then every plaintiff who prevails on a failure-to-accommodate claim (a claim that Manning did *not* assert here) would automatically prevail on a retaliation claim as well. And that is simply not what the Rehabilitation Act, which incorporates the ADA, provides. *Compare* 42 U.S.C. § 12112 (ADA discrimination provision), *with* 42 U.S.C. § 12203 (ADA retaliation provision); *see also Moore-Fotso v. Bd. of Ed. of City of Chicago*, 211 F. Supp. 3d 1012, 1038 (N.D. Ill. 2016) ("[T]he denial of such [accommodation] requests can hardly be considered unlawful retaliation for the act of requesting them. Otherwise, almost every failure to accommodate claim would be simultaneously a retaliation claim and it was unlikely Congress' intent to provide plaintiffs redundant relief for the same conduct when it established the anti-retaliation provisions of the ADA." (cleaned up)). For all of these reasons, Manning did not demonstrate pretext, either, and the district court did not err in rejecting her retaliation claim.

## III. The District Court Did Not Abuse Its Discretion When It Deemed the Postal Service's Undisputed Statements of Facts Admitted.

To the extent Manning is challenging the district court's decision to deem the Postal Service's undisputed statements of fact admitted, its decision should be affirmed. As a threshold issue, in her brief, Manning mentions this issue only in passing, Br. at 9-10, and for that reason has waived any criticism she may have appeal. *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 464 (7th Cir. 2021) ("Undeveloped arguments are waived on appeal." (quoting *United States v. Collins*, 604 F.3d 481, 487-88 n.2 (7th Cir. 2010)). Turning to the merits, a district court does not abuse its discretion unless: "(1) the record contains no evidence upon which the court could

have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 784 (7th Cir. 2013). None of those circumstances were present here.

It is well-settled that a party opposing summary judgment "may not rest upon mere allegation" but must instead set forth "specific facts" supported by admissible evidence showing that they are entitled to a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Manning on the other hand made numerous objections to the Postal Service's statements of fact on so-called "relevance" grounds, which was not appropriate on summary judgment and would have improperly jettisoned nearly her entire her employment history, medical restrictions, and protected activity from this Rehabilitation Act retaliation case. *See* R. 94 ¶¶ 2-13, 15-17, 20, 24, 27-32. Manning then failed to respond to the substance of the Postal Service's facts by either admitting or disputing those facts as required by LR 56.1(e)(2). The district court properly overruled Manning's relevance objections and deemed the Postal Service's statements of fact admitted where Manning did not respond to the substance of the Postal Service's assertions. *See* R. 104 at 1 n.2; *Curtis*, 807 at 219. The court's requirement that Manning comply with LR 56.1 was not an abuse of discretion. *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) ("We have repeatedly held that requiring strict compliance with Rule 56.1 is not an abuse of the district court's discretion.").

## IV.    The District Court Did Not Abuse Its Discretion When It Authorized Disclosure of Manning's Two Most Recent OWCP Files.

Finally, to the extent that Manning is challenging the district court's discovery order, its decision allowing disclosure of her two most recent OWCP files should be affirmed as well.  *See* Br. at 10-11.  Once again, Manning does not develop any real argument on this issue and therefore has waived it on appeal.  *Vesey*, 999 F.3d at 464. And even if Manning had preserved this issue (she did not), she has not shown that there was an abuse of discretion here.

For starters, Manning had previously authorized disclosure of her OWCP files during the administrative portion of her Rehabilitation Act case.  The Postal Service already possessed the files and had produced them to Manning with its Rule 26(a)(1) disclosures.  As the Postal Service explained in response to Manning's motion for a protective order, the two workers' compensation files at issue contained Manning's workers' compensation claims, medical documentation Manning submitted in support of her workers' compensation claims,  forms delineating Manning's physical work restrictions, time and attendance assessments of Manning's work, and correspondence between the Department of Labor, the Postal Service, and Manning regarding the processing and disposition of Manning's claims.  R. 48 at 13.  More specifically, the medical documentation in the file relating to Manning's 2017 workers' compensation claim related to the same alleged medical diagnosis and the same type of work restrictions that gave rise to Manning's request for light duty in March of 2018, her request for a reasonable accommodation in April of 2019, and her disability claim in this case.  The information in that file was therefore relevant to

determining: (1) whether Manning was disabled, (2) whether Manning could perform the essential functions of her job, and (3) whether Manning indeed would have continued working at the Postal Service but for the alleged discrimination at issue in this case. In turn, Manning's 2015 workers' compensation file was relevant to the issue of whether, irrespective of the alleged discrimination at issue in this case, Manning would have been able to continue working at the Postal Service as a sales service distribution associate. Indeed, Manning agreed that the health condition giving rise to her 2015 reasonable-accommodation request (lumbar radiculopathy) was the same condition that gave rise to her federal Rehabilitation Act lawsuit. R. 92, Def. Ex. 1 at 49-50. Thus, even at the time of the district court's ruling, there was no doubt that the information contained in the files was relevant and material to this case.

The files' significance was confirmed in the district court's summary judgment ruling, which cited and discussed Manning's history of physical restrictions and complaints. R. 104 at 2. That Manning disagrees with the district court's assessment and conclusion did not, of course, immunize her OWCP files from discovery. *See* Fed. R. Civ. P. 26(1) ("parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). And Manning does not identify any *privilege* that would have prevented disclosure of her workers' compensation files.

Ultimately, Manning's most recent workers' compensation files were discoverable not because the outcome of those proceedings had some preclusive effect

in the district court (which appears to be Manning's concern), but rather because the evidence within them was directly relevant to determining the nature of the physical conditions that Manning herself put at issue by filing a disability discrimination and retaliation case.  The district court did not abuse its discretion when it authorized disclosure of Manning's OWCP files, and its discovery order was not error.

## Conclusion

For the foregoing reasons, this court should affirm the judgment of the district court.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

THOMAS P. WALSH
Assistant United States Attorney
Civil Division Chief

s/ Virginia O. Hancock
VIRGINIA O. HANCOCK
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1998
virginia.hancock@usdoj.gov

## Certificate of Compliance with Rule 32(a)

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Cir. R. 32(c) because it contains 9,666 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

s/ Virginia O. Hancock
_____
VIRGINIA O. HANCOCK
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1998
virginia.hancock@usdoj.gov

Dated:  August 30, 2023

**Certificate of Service**

I hereby certify that on August 30, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by first-class mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within three calendar days to the following non-CM/ECF participants:

Gwenesther Manning
19214 Lange Street
Lansing, Illinois 60438

s/ Virginia O. Hancock
VIRGINIA O. HANCOCK
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1998
virginia.hancock@usdoj.gov