U.S.C.A. – 7th Circuit
RECEIVED
SEP 20 2023
SK

Appeal Docket No. 23-2162

In

United Stated Court of Appeal

For The Northern District Of Illinois

Seventh Circuit

Gwenesther Manning, *Plaintiff-Appellant*

v.

Louis DeJoy, *Defendant-Appellee*

Appellant's Reply Brief With Short Appendix

On Appeal from the U.S. District Court

For The Northern District of Illinois, Seventh Circuit

District No. 21 cv 1440

District Judge: Honorable Ronald A. Guzman

Table of Content

Statements

1. The Postal Service Did not Address Manning's Issues For Review . . . . . . . . . . . . 1

2. The Postal Service Presented Three Alternative Issues for Review. . . . . . . . . . . . . 1

3. Postal Service's First Alternative Issue for Review . . . . . . . . . . . . . . . . . . . . . . . . .1 - 3
Whether the district court correctly found that the plaintiff in this rehabilitation
act case did not present evidence from which a reasonable jury could conclude
that she was retaliated against when she was sent home from work and instructed
to apply for light- duty because of her physical restrictions.

4. Postal Service's Second Alternative Issue for Review . . . . . . . . . . . . . . . . . . . . .3 - 6
Whether the district court abused its discretion when it deemed some of the
Postal Service's L.R.56.1 statements of fact admitted because the plaintiff did
not comply with the rule.

5. The Postal Service's 3rd Alternative Issue for Review. . . . . . . . . . . . . . . . . . . . .6 - 7
Whether the district court abused its discretion in permitting discovery relating
the plaintiff's two most recent workers' compensation cases against the postal
service.

Postal Service's Argument Sections III & IV

III. The District Court Did Not Abuse Its Discretion When It Deemed the
Postal Service's Undisputed Statements of Facts Admitted. . . . . . . . . . . . . . . .7 - 10

IV. The District Court Did Not Abuse Its Discretion When It Authorized
Disclosure of Manning's Two Most Recent OWCP Files. . . . . . . . . . . . . . . . 10 -11

Manning's Issues For Review

(1) Whether Manning May Plead and Prove a Claim Under Title VII's Anti-
Retaliation Provision Without Alleging or Showing that Disability or
Protected Activity was the Sole Cause of Her Injury. . . . . . . . . . . . . . . . . . . 11 -12

(2) Whether the Federal Rules Permit Manning to Plead Claims of Retaliation
And Disability Discrimination in the Same Complaint. . . . . . . . . . . . . . . . . 12 -15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Certificate of Service & Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Appendix "App.". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17 - 23

## Table of Authorities

*Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) .. . . . . . . . . . . . . . . . . . . . . . . . . .4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Chaidez v. Ford Motor Co.*, 937 F. ed 998, 1004 (7th Circuit 2019) . . . . . . . . . . . . . . . . . .9

*Germain v. Potter*, EEOC Appeal No. 012008277 . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Loja v. Main Street Acquisition Corp.*, 908 F.3d 680, 684 (7th Cir. 2018) . . . . . . . . . . . . . .1

*McHale v McDonough;*, 41 F. 4th 866 (7th Cir. 2022) . . . . . . . . . . . . . . . . . . .9

*Osagiede v. United States*, 543 F.3d 399, 405 (7th Circuit 2008) . . . . . . . . . . . . .8

*Smith v. Xerox Corp.*, 602 F.3d 320, 330 (CA5 2010) . . . . . . . . . . . . . . . . . . . . . . 15

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Sutton*, 962 F.3d 979, 984 (7th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . .14

*Univ. Of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 345 (2013) . . . . . . . . . . . . . . . . . . 15

*Widmar v. Sun Chemical Corp.*, 772 F. 3d 457, 464-65 (7th Cir. 2014) . . . . . . . . . . . . . . 13

## Statues and Rules

Title VII § 2000e-3(a) & 2000e-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Title 42 U.S.C. § 12112(a) General rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Title 42 USC § 12112(b) Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

5 U.S.C. § 8103. Secretary of Labor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

42 USC § 12112(5)(A) not making a reasonable accommodation . . . . . . . . . . . . . . . .11

42 USC  12203(a) Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Section § 501 of the Rehabilitation Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

L.R. 56.1(b)(3) & 56.1(e ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

## The Postal Service Did Not Address Manning's Issues For Review

(1)  Whether Manning May Plead and Prove a Claim Under Title VII's Anti-

Retaliation Provision Without Alleging or Showing that Disability or Protected

Activity was the Sole Cause of Her Injury, and

(2)  Whether the Federal Rules Permit Manning to Plead Claims of Retaliation And

Disability Discrimination in the Same Complaint. [Br. 6 pg. 6, ¶¶ 5.1 & 5.2]

## The Postal Service's Presented Alternative Issues for Review

The postal service's reply brief "Br" is nothing more than an expansion of the

postal service's memorandum of law docket "Dkt"[ 91] The postal service did not

response to Manning's issues for review anywhere in the context of postal service

appellee's reply brief. [Br. 8.] Thus, the postal service has waived any arguments to

the issues presented for review by Manning.

Instead, the postal service substituted  it's own alternative issues for review, in

lieu of the issues presented by Manning. A reply brief must be limited to matters in

reply. New arguments raised for the first time in a reply brief may be stricken and

deemed waived. But importantly, an appellant or petitioner may respond to

arguments raised for the first time in the appellee's or respondent's brief. *Loja v.*

*Main Street Acquisition Corp.*, 908 F.3d 680, 684 (7th Cir. 2018). As such, the postal

service's alternative issues for review should be stricken. The postal service's issues

for review also constitute new arguments for which select issues are addressed to

avoid a waiver of an argument by Manning.

## The Postal Service's First Alternative Issue for Review

*(1)* Whether the district court correctly found that the plaintiff in this rehabilitation
act case did not present evidence from which a reasonable jury could conclude that

she was retaliated against when she was sent home from work and instructed to apply for light-duty because of her physical restrictions.

The district court was incorrect because a jury could absolutely find that Bates retaliated against Manning based on the postal service's response to Manning's 56.1(b)(3) Statement of Additional Material Facts "SAMF" in which Bates admitted to the following facts:  Bates put Manning off the clock on 3/30/2018 with the instruction for Manning not to return until Manning was approved for light duty. [Br. 6, App. pg. 1¶ 2]; Bates acknowledged, Manning presented her with a PS Form 1110 requesting official time to work on an EEO complaint; [Id. Pg. 52 ¶ 21] Bates admitted she declined to accept Manning's PS Form 1110 and told Manning that she wanted to inquire about the form because she was not familiar with the process and to bring the form back the next day. [Br. 6 pg. 53 ¶ 22]

In addition, Manning testified when she arrived at work on 3/30/18, she was met by Bates who instructed her to go to Bates's office. Manning's Deposition Transcript pg. 140 Ln: 20-24. [Appendix "App." Pg. 18]; Manning also testified that she felt ambushed. *Id.* Ln: 15-19. Because Bates was lying in wait for Manning when she arrived at work the next day, Bates had the opportunity to ponder her decision overnight before she put Manning off the clock. Even more, due to Manning's extensive EEO, EEOC and grievance protected activity, it is plausible, the person Bates sought counsel from on the EEO procedure would also have had knowledge or be aware of Manning's EEO activity. Therefore, it is even more plausible that Bates did indeed speak to someone about the EEO process and Manning since, Bates had assembled union steward Cassandra Glover and supervisor Genise Green in her

office, for a meeting with Manning before Manning arrived at work the next day of

03/30/2018.

Nonetheless, when Manning left work on 3/30/18, she felt like a dear in

headlights and went radio silent until April of 2018 when Manning amended her

EEO complaint to include Bates. [Br. 6 pg. 31¶ 2] Stressed out, Manning went silent

again until 5/8/18 when she submitted a request for a reconciliation of her job title

to the Officer In Charge, Wanda Prater. [Br. 6 pg. 42] Prater did not respond.

Of course, the postal service disputed Manning's request for an admission that

Bates questioned her about her EEO complaint arguing, Manning said no when

asked had Bates said anything in response when Manning requested official time to

work on the EEO complaint. [Br. 6 pg. 53 ¶ 23] However, when Manning requested

official time to work on her EEO complaint, Bates did indeed question her. Simply

put, Manning had a memory lapse because the deposition took place on 1/6/2022

which was almost four (4) years after Bates put Manning off the clock on 3/30/2018.

[App. pg. 18] Nonetheless, Bates admission to facts standing alone, should have been

sufficient for the district court to deny summary judgment to the postal service. Thus,

the court's finding that Manning did not present evidence from which a reasonable

jury could return a finding of discrimination, goes against the evidence of record.

<u>The Postal Service's 2nd Alternative Issue For Review</u>

(2) Whether the district court abused its discretion when it deemed some of the
    Postal Service's LR 56.1 statements of fact admitted because the plaintiff did
    not comply with the rule.

In short, Manning is *pro se*. In discussing the sufficiency of a *pro se* complaint,

counsel should recognize that even in the wake of *Bell Atlantic Corp. v. Twombly* 550

U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards for *pro se*

litigants are relaxed. See *Arnett v. Webster*, 658 F.3d 742, 751(7th Cir. 2011)(reminding courts to "construe *pro se* complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers"); see also *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)

In contrast, the court did not hold Manning to a less stringent standard than the postal service whose pleadings are drafted by attorneys. While, the court opined that both parties included facts in their L.R. 56.1 statements that are not material…they quibble over those facts and the admissibility of certain document. [Br. 6 pg. 28] The court was more forgiving to the postal service.

That said, omission of a fact is a lie. So, Manning thought she had complied with the rules by objecting and disputing the postal service's web of lies. For example, the postal service's representation to the court, that Manning could not do her job while presenting only 4 out of 13 of Manning's job functions, was a lie. In contrast, Bates admitted Manning was working up to 6 hours per day in March of 2018. [Br. 6 pg. 57 ¶ 31] In an effort to neutralize the lies, Manning served defendant with a L.R. 56.1(b)(3) Statement of Additional Material Facts "SAMF." For reasons unknown, the postal service's admission to facts went under the radar while Manning's objections set out in her L.R. 56.1(b)(3) SAMF on relevance were overruled. [Br. 6 pg. 28]

What is more, the court was silent on the legal arguments the postal service made through out its responses to Manning's SAMF.

> A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made. *A response may not assert legal arguments* except to make an objection, including objections based on admissibility, materiality, or absence of evidentiary support.

In fact, the postal service responses, to Manning's 56.1(b)(3) SAMF, were replete

4

with legal arguments in violation of L.R. 56.1(e ). On the other hand, the court

rationalized that Manning's objections on relevance were narrow. [Br. 6 pg. 28]

In contrast, the court gave the postal service a get out of jail free card when the court

overlooked the legal arguments the postal service made in its responses to

Manning's 56.1(b)(3) SAMF. Because the court disregarded the postal service's legal

arguments in their admission to facts, [Br. 6 pgs. 45 - 68] the court allowed the postal

service to get away with violating L.R. 56.1(e ). All the more reason, it can be

construed, there was either an unconscious bias by the district court, or, the court

was unfamiliar with the obligation of federal agencies to provide a reasonable

accommodation to its employees with disabilities. 29 C.F.R. §1630.

On top of that, Bates also admitted Manning was off the clock from 3/30/18 -

4/21/19; the temporary light duty policy does not require management to put an

employee off the clock; Manning was not given instructions to call in. [Br. Pg. 46

¶¶¶ 4 - 6] Bates charged Manning with AWOL for 49 consecutive weeks; Bates

admitted employees charged with AWOL can be put up for removal; [*Id.* Pg. 47

¶¶ 7 - 8] Bates also admitted, Manning's restrictions were identical; [*Id.* Pg. 48 ¶ 15]

and, Manning was working up to 6 hours per day in March of 2018; [*Id.* Pg. 57 ¶ 31]

It is indisputable, that Bates did not send Manning a 5-Day absent notice until

3/6/2019. [*Id.* Pg. 38] Because Bates admitted, Manning was working 6 hours, but

the postal service argued Manning could not do the job that she was doing, the right

hand did not know what the left hand was doing. Conversely, the district court

disregarded the postal service's admission to the above facts and more.

All the more reason, when given the facts about the postal service's admission to

facts, and its obligations to provide an accommodation, a reasonable jury could find

5

in Manning's favor. In contrast, the court overlooked the postal service's

misrepresentation and/or concealment of facts, while the postal service included

facts that were not a part of this case. In effect, the district court deprived Manning

of the opportunity to have her day in court. For those reasons, it appears the district

court was either unaware of federal employment laws or has an unconscious bias.

The Postal Service's 3rd Alternative Issues For Review No. 3.

Whether the district court abused its discretion in permitting discovery relating to
the plaintiff's two most recent workers' compensation cases against the postal
service. [Br. 8 pg. 2]

During discovery, Manning did not object to the discovery of her medical records

that were within a reasonable time frame. However, the postal service attempted to

bully Manning into disclosing all of her medical records dating back to 2011, which

have no bearing on this case, and were outside the scope of the subject matter before

the court. And so, Manning filed a motion for a protective order. [Dkt. 40] Hence,

Manning objected to the postal service's total disregard for Manning's right to be

treated with dignity and respect and to have a certain amount of privacy.

In any event, Magistrate Judge Jantz agreed with Manning on the issue that the

postal service "need not be given license to access plaintiff's entire medical history;

App.
[Br. 61 pg. 6] there has to be some connection in time to Manning's allegations, and

the Court has accordingly imposed the time limits itemized above." For that reason,

Mag. Judge Jantz limited the time frame for defendant to probe into Manning's

medical records during discovery to 2015. Therefore, the postal service is mixing

apples with oranges in an attempt to cloud the issues.

On the other hand, the district court also cited Manning's OWCP case as back-

ground information in its decision to conclude that Manning could not do *all* of the

physical requirements of her job. [Br. 6 pgs. 29 & 30] For that reason, Manning's objection was also to the postal service's misuse of her OWCP records to put forth the argument that Manning could not do her. The Agency's duty to provide a reasonable accommodation is ongoing and an Agency can not use an OWCP decision as a reason for not providing a reasonable accommodation. *Germain v. Potter*, EEOC Appeal No. 012008277

For that reason, the court made a manifest error of law in authorizing defendant to use Manning's OWCP records as a defense to falsely argue that Manning could not perform do her job. Therefore, the court's analysis goes against the rehabilitation act. 42 § 12112(b)(5)(A) for not providing a reasonable accommodation.

### III. District Court Did Not Abuse Its Discretion When It Deemed the Postal Service's Undisputed Statements of Fact Admitted.

The postal service's statement of fact was neither undisputed nor deemed admitted as represented by the postal service.[Br. 8 pg. 32] In fact, Manning's objections to the postal service fact statement on relevance was overruled because the district court believed Manning's employment history (outside the scope) prior to and after March 2018 was relevant to Manning's retaliation claim. [Br. 6 pg. 28]

Pursuant to LR 56.1(e )(2) Content.

For each response, opponents must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact. If the response admits in part and disputes in part the asserted fact, it must specify which part of the asserted fact is admitted and which part is disputed;

To be sure, Manning disputed postal service's 56.1 statement of fact that Manning could not do her job because the postal service intentionally concealed 8 out of 13 job functions that are listed in Manning's job description.[Br. 6 pg. 40] For that reason, Manning though she had complied with the rules and disputed the postal service's

7

lies by objecting. Since the postal service did not retract its admission to facts, the district court got it wrong via disregarding the postal services admission to facts. The court further erred by allowing the postal service to argue matters that were not before the court.

On top of that, the court also noted, *both* parties Local Rule 56.1 fact statements included several facts that are not material to the Court's ruling. [Br. 6 Pg. 28] Yet, the district court opined, because the court overruled Manning's relevance objections, Manning does not in the alternative admit or dispute the employment-history facts to which she objects. *Id.* Another, the reason given by the court for overruling Manning's objections was:

> Manning raises relevance objections to postal service's fact statements pertaining to her employment history and complaints prior to and after March 2018. As to the facts cited by the Court, those objections are overruled because this history is essential context for the events from which Manning's retaliation claim arises. Manning's view of the scope of relevant evidence is unreasonably narrow. [Br. 6, pg. 28 Footnote 2]

As noted in *Osagiede v. United States,* 543 F.3d 399, 405 (7th Cir. 2008), *pro se* litigants "will, at times, confuse legal theories or draw the wrong legal implications from a set of facts. . .[b]ut we do not treat every technical defect as a grounds for rejection." Thus, the court's rejection of Manning's reasonable arguments made in "good faith" can be construed as an abuse of authority since the court did not penalize the postal service for similar mistakes.

To be sure, Manning objected to the postal service's inclusion of events that occurred at Irving Park station; which involved a different EEOC complaint no. 4J-606-0057-17; *See* Postal Service's Ex. 36 [Dkt. 100] different managers, an accommodation request made at Irving Park; and Manning's OWCP file. [Br. 6 p. 59

-60 ¶¶s] & [Dkt. 96 at pg. 7] None of the aforementioned facts are a part of this complaint. The 7th Circuit has held, a plaintiff cannot bring claims into the suit not in the original EEOC complaint. *McHale v McDonough*, 41 F. 4th 866 (7th Cir. 2022) *Chaidez v. Ford Motor Co.*, 937 F. ed 998, 1004 (7th Cir. 2019) Likewise, the postal service should not be allowed to bring claims into the suit that were not a part of the original complaint. To that end, the court's ruling also go against case law in the 7th Circuit as cited above. That said, Manning reaffirms her objections to defendant's 56.1 fact statement. [Dkt. 92]

All the same, the district court echoed the postal service's argument and opined, "On 3/14/2018, Manning's 2017 workers' compensation claim was denied by the Department of Labor's Office of Workers' Compensation Programs." [Br. 6 pg. 29] Thus, the district erred via authorizing the postal service to use Manning's history at Irving Park and her OWCP claim against her in the instant case. [Br. 6 pg. 36] In any event, Matters concerning OWCP fall under the purview of the Secretary of Labor who has exclusive authority. *See* 5 U.S.C. § 8103.

All the more reason, based on the postal service's argument, the postal service used Manning's restrictions to deceive the court into thinking that Manning could not do the job that Manning was doing. Accordingly, the court's take away that Manning could not do her job is a paradox which the court did not reconcile. To be clear, it is the postal service whom is responsible for monitoring employees job performance through employee evaluations and training records for which the postal service did not produce. In contrast, Manning submitted her training records in her possession which were satisfactory but the court disregarded. [Br. 6 pg. 35] Nevertheless, Manning could not produce an employee evaluation because Bates

9

never did an employee evaluation for Manning. In other words, Bates never complained to Manning that she was dissatisfied with Manning's work performance.

What is more, when Manning returned to work in April 2019, Manning did indeed perform limited distribution duties. The regulations at 29 C.F.R. Part 1630 (3)require employers to initiate an informal interactive process to identify a potential reasonable accommodation. That said, not only did Bates know what Manning's limitations were, Bates knew Manning could get the job done while working within her limitations. Even more, Manning was working under Bates, with restrictions, when Bates put her off the clock. The fact remains, Manning worked with those same restrictions when she returned to duty in April of 2019.

To be sure, Manning's arguments are supported by the record as identified in postal service's Responses to Manning's Local Rule 56.1(b)(3) SAMF which was attached to Manning's appellate brief in the required appendix. "App." [Br. 6 pgs. 45 - 58] For that reason, the record does contain evidence for which a jury could find that Bates retaliated against Manning and return a verdict in Manning's favor and award Manning compensatory damages on top of damages for loss of income because the postal service is a repeat offender. Therefore, the Court did indeed abuse its discretion when the court failed to hold the postal service to facts it admitted to in reply to Manning's 56.1(b)(3) Statement of Additional Material Facts while holding Manning's feet to the fire.

## IV. The District Court Did Not Abuse Its Discretion When It Authorized Disclosure of Manning's Two Most Recent OWCP Files.

In any event, the postal service argues, Manning does not develop any real argument for disclosure of her OWCP case the court's decision should be affirmed.

[Br. 8 pg. 34]  As Manning explained earlier at pg. 6, she did not object to defendant's request for disclosure of her OWCP files. However, the postal service's request for medical documents was overly vague; the parties could not agree on a reasonable time frame. And, the postal service attempted to bully Manning into authorizing it to go on a deep dive into Manning's unrelated personal medical history. Conversely, Manning pushed back filing a motion for a protective order [Dkt. 40] which was granted in part. For that reason, the postal service has taken Manning's objections out of context to cloud the issues.

<u>Manning's Issues for Review</u>

**(1) Whether Manning May Plead and Prove a Claim Under Title VII's Anti-Retaliation Provision Without Alleging or Showing that Disability or Protected Activity was the Sole Cause of Her Injury.**

The issue before the court was limited to, "On 03/30/18 and 03/31/18 , CMS2 told complainant that she could not return to work until her request for light duty had been approved. [Dkt. 19 ¶ 5] Manning explained in the footnote the correct dates were 03/29/18 & 03/30/18. *Id.*  The issue was disability retaliation.

Title 42 U.S.C.§ 12203(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

In addition, Manning's retaliation claim is further based on the anti retaliation provision of the rehabilitation act, and equal opportunity which specify:

Title 42 U.S.C. § 12112(b) Construction. As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes-(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee.  [App. Pg. 21]

And,Title 42 USC § 12112(5)(A) not making a reasonable accommodation to the

known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. 29 C.F.R. 1630(p) [App. Pg.23]

In a nutshell, Bates violated the rehabilitation act when she put Manning off the clock because Manning had restrictions and was classified as light duty not because Manning could not do her job. [Br. 6, pg. 37] Accordingly, the district court should not have limited Manning's complaint of retaliation to either one single day 3/30/18 [Br. 6 Pg. 33 ¶2] The AWOL charges came later. Id. [Pg. 47 ¶7]

(2) **Whether the Federal Rules Permit Manning to Plead Claims of Retaliation And Disability Discrimination in the Same Complaint**. [Br. 6 pg. 6, ¶¶ 5.1 & 5.2]

All in all, Bates violated the rehabilitation act when she put Manning off the clock because Manning had restrictions. Pursuant to Title 42 U.S.C.§12112(a) General rule. No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. Consequently, Bates waited a year to send Manning a Five-Day Absence Notice. [Br. 6, pg. 38]

By extension, Bates violated Title 42 U.S.C.§12112(b) when she charged Manning with AWOL for 49 consecutive weeks in April of 2018 while knowing that she did not give Manning a directive for Manning to call in for being absent. The record further demonstrate that Bates continued to charge Manning with AWOL after Bates was reassigned to another station which can only be construed as retaliation. [*Id.* at

[Br. at pg. 48 ¶13] Even more, Bates admitted Manning did not submit new medical documentation in order to return to duty in April 2019. [Br. Pg. 45 ¶ 3]

In contrast, the postal service argues, even if Bates was wrong to charge Manning with being absent without leave (she was not), being wrong is different than lying, and lying is what Manning had to show but did not. *Widmar v. Sun Chemical Corp.*, 772 F. 3d 457, 464-65 (7th Cir. 2014). Manning's personal disagreement with Bates's (reasonable) actions did not constitute evidence of pretext. [Br. 8 pg. 31] Despite the postal service's attempt to excuse Bates wrong doing, that argument fails because Bates was caught in a lie when she testified that Manning was not allowed to work six hours per day until 4/22/19 due to the *drastic* change in her restrictions. [Br. 6 Pg. 48 ¶ 14] But, Bates also admitted that Manning's restrictions were practically identical [*Id.* ¶ 15] There could *not* possible have been a drastic change in Manning's restrictions when the restrictions were identical since the only difference was the form the restrictions were written on. *See* restrictions [Br. 6 pgs. 43-44] Common sense is there would be no reason for Bates to lie if Bates did *not* do anything wrong.

Nevertheless, the postal service's argues that Manning did not call in or request leave for about a year from April of 2018 through March of 2019. See R. 92 ¶¶ 29, 31; what else was that other than AWOL? Common sense dictates that Manning should have continued to request leave, as she initially did when Bates instructed her to apply for light duty. R.100 ¶ 6. [Br. 8 pg. 31] Indeed, Bates could have done her job and sent Manning a Five-Day Absence notice, *perhaps*, after five (5) days. Instead, Bates waited until 3/6/19, almost a year later, to send Manning a 5-Day Absence Notice. [Br. 6 pg. 38] This was not about a personal disagreement. This is business.

Based on past practices, Manning was not required to call in while off the clock because the postal service would not permit her to work. The back pay awards for grievances and an EEO decision were for the same or similar violations when the postal service denied Manning's request for light duty and/or did not allow Manning to work. [Br. 6 pg. 48 ¶16 through pg. 49 ¶ 4] Even so, the postal service argues though Bates *did* not follow the rehabilitation act requirements (which the postal service disputes) that failure along would not give rise to the inference of a retaliatory animus. If it did, then every plaintiff who prevail on a failure -to-accommodate claim (a claim that Manning did not assert here) would automatically prevail on a retaliation claim as well. That is not what the Rehabilitation Act, which incorporates the ADA, provides. Compare 42 U.S.C. § 12112 (ADA discrimination provision) with 42 U.S.C. § 12203 (ADA retaliation provision).

That said, Manning is *pro se. United States v. Sutton,* 962 F.3d 979, 984 (7th Cir. 2020) ("we review *pro se* filings by substance, not label"). Though, the postal service cites Manning's discrimination complaint against defendant which she lost in 2006, [Br. 8 pgs. 2-3] the Americans With Disability Act in place in 2006, was amended on 9/25/2008, effective 1/9/2009 as the American With Disability Act Amended Act. In any event, the anti retaliation and the failure to accommodate laws intersect because Bates knew about Manning's participation in protected activity and Bates also had knowledge of Manning's disability when she put Manning off the clock. For that reason, Manning should be able to argue both laws in the same complaint. But, the district court's opined,

> It is not clear which of plaintiff's prior protected activities are the basis for her retaliation claim. Plaintiff repeatedly cites defendant's concession that she engaged in protected activity, but notably, she does not elaborate on exactly which

activity she believes Bates knew about. Plaintiff appears to rely at least in part on what she refers to as her "last two grievances." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 3.)

For that reason, it appears that the court was looking for a "smoking gun" although it is *not* a requirement to have one event as the sole causation for Bates actions. *Univ. Of Tex. Sw. Med. Ctr. V. Nassar,* 570 U.S. 338, 345 (2013)(" retaliation claims brought under § 2000e-3(a) — like claims of status-based discrimination under § M — require only a showing that retaliation was a motivating factor for the adverse employment action, rather than its but-for cause. *See id.,* at 454, n. 16 ((citing *Smith v. Xerox Corp.,* 602 F.3d 320, 330 (CA5 2010)).")

In a nutshell, Bates violated the rehabilitation act, when she put Manning off the clock and again when Bates began charging Manning with AWOL. Section § 501 of the Rehabilitation Act prohibits federal executive branch agencies, including the U.S. Postal Service, from discriminating against qualified individuals with disabilities. Executive branch agencies are required to take affirmative action in the hiring, placing and advancing of individuals with disabilities. At its core, Manning participated in protected activity; suffered an adverse employment action; and, there is a casual connection. All the more reason, the district court's order is contrary to federal laws and could have a devastating impact on public policy since the postal service is an agency of the executive branch of the federal government.

## Conclusion

For the forgoing reasons, the district court's decision should be vacated. An order should be entered either awarding Manning back pay from 4/21/18 - 7/18/18 and the court should consider an award of compensatory damages, or the case should be remanded for either mediation or a trial.

15

Respectfully submitted by,

Gwenesther Manning, *Pro Se*
19214 Lange Street
Lansing, IL 60438
312-622-5783
Keeppushing55@yahoo.com


## Certificate Of Service


I certify on September __18__, 2023, a copy of the foregoing brief sent via First Class
Mail to the office of Virginia Hancock, AUSA and  at the Dirksen Federal Building,
5th Fl., 219 S. Dearborn St., Chicago, IL 60604.

Gwenesther Manning, *Pro Se*
19214 Lange Street
Lansing, IL 60438
312-622-5783
Keeppushing55@yahoo.com


## Certificate Of Compliance

I certify that this brief complies with the type-volume limits of Fed. R. of Appellate
Procedure 32(a)(7)(B) because it contains 4,729 words, excluding the parts exempted
by Fed. R. App. P. 32(f). In compliance with Fed. R. of Appellate P.32(a)(5), this this
document has been prepared in a proportionally spaced typeface using Book
Antiqua Font, 12- point type per the type style requirements of Rule 32(a)(6).


Respectfully Submitted by

Dated: September __18__, 2023

Gwenesther Manning, *Pro Se*
19214 Lange Street
Lansing, IL 60438
Keeppushing55@yahoo.com

16

# Appendix

## Certification of Compliance - Short Appendix

Appellant' s reply brief and the principle brief are both are in compliance with Circuit Rules 30(a)and 30(b). Copies of the court orders being appealed and other documents were submitted and bound to Manning's principle brief. Supplemental documents are bound to Manning's reply brief.

## Supplemental Short Appendix

Pages 138 - 141 of Manning's (1/26/2022) deposition transcript . . . . . . . . . . . . . . . 18

Page 6 of Magistrate Judge Jantz's order [Dkt. 61]. . . . . . . . . . . . . . . . . . . . . . . . . . . 19

42 USC§ 12203(a) Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 USC§ 12112(a) General Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 USC§ 12112(b) Construction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

42 USC§ 12112(b)(5)(A) Not making a reasonable accommodation . . . . . . . . . . . . . .12

29 C.F.R. Part 1630 (3)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

29 C.F.R. Part 1630 (p) Undue hardship . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Section 501 of the Rehabilitation Act of 1973 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Gwenesther Manning
January 26, 2022

138

1      A.  She told me that I was light duty, and she
2   couldn't let me work.
3         I need to get a throat lozenge, my throat.
4      Q.  Sure.
5             (Brief pause.)
6   BY MS. HANCOCK:
7      Q.  So Ms. Bates said to you that you were light
8   duty and what else?  I didn't quite catch the next
9   part.
10     A.  She couldn't let me work.
11     Q.  She couldn't let you work.  Okay.
12        And did you say anything in response?
13     A.  I did, but I don't remember what I said.
14     Q.  Okay.  Did she say anything else?
15     A.  I remember the union steward saying she's
16  supposed have a reasonable accommodation.
17     Q.  And --
18            (Audio distortion.  Reporter
19            clarification.)
20  BY THE WITNESS:
21     A.  (Continuing) -- she's supposed to have a
22  reasonable accommodation.  And I don't know what
23  Ms. Bates said.  I can't remember what her response
24  was.

139

1   BY MS. HANCOCK:
2      Q.  Did Ms. Bates tell you why you were supposed
3   to be on light duty?
4      A.  She said you're light duty.  You're non-job
5   related -- oh, and we did have a brief conversation --
6   I can't remember the particulars about it, but what --
7   she told me I was gonna have to leave the building.
8         Oh, and during that conversation, during my
9   presence there -- because, as I stated, I was just
10  listening -- she did hand me back that form, the
11  temporary light duty assignment before I left.
12        And I filled out a 3971.  And I annotated on
13  it before giving it to her that -- something to the
14  effect that I'm being instructed to leave the building
15  and I can't return until I've been approved for light
16  duty.
17     Q.  Did Ms. Bates tell you that you needed
18  medical documentation?
19     A.  I don't recall her saying that.  I just
20  recall her telling me that she couldn't let me work.
21  It was a conversation, but I can't remember what was
22  said.
23     Q.  Okay.  When you say you filled out a 3971,
24  that's a leave request form?

140

1      A.  Yes.
2      Q.  Okay.  And she gave you -- did she tell you
3   to take leave and get the medical documentation and
4   submit a request for light duty?
5      A.  She did not.
6      Q.  Okay.  What did you -- how long did the
7   meeting last?
8      A.  I was only in the building for about 30
9   minutes.  And all of that 30 in the meeting.  The
10  meeting was brief.
11     Q.  Did Ms. Manning say anything -- I'm sorry.
12        Did Ms. Bates say anything to you about EEO
13  complaints or protected activity during that meeting?
14     A.  No, not to my recollection.
15     Q.  Do you recall anything at all that you said
16  during that meeting?
17     A.  No, I really don't because I was basically
18  listening.  And I know my presence of mind was that
19  this is an ambush.
20     Q.  Okay.  And why did you feel that it was an
21  ambush?
22     A.  Because when I walked in -- as I stated,
23  when I entered the building, she immediately told me
24  to meet her in her office.

141

1      Q.  So then did you end up going home that day?
2      A.  I did.
3      Q.  You left early.  Okay.
4         And did you submit a request for light duty
5   after that?
6      A.  I don't recall.  I don't think I did.
7      Q.  Is there a reason why you didn't?
8      A.  Well, I was stressed out.  I was frustrated,
9   and I knew their pattern.  This has been an ongoing
10  pattern of them to put me out the building.  This
11  wasn't the first time I been kicked out.
12     Q.  Why do you believe that Ms. Bates was
13  retaliating against you for your protected activity
14  when she called for this meeting on March 30, 2018?
15     A.  Well, I -- I know the prior day, on
16  March the 29th, we had a brief conversation, and I
17  requested time to work on an EEO complaint.
18     Q.  Who did you ask for -- who did you make the
19  request to?
20     A.  Ms. Bates.
21     Q.  How did you make the request?
22     A.  I had the form, and I tried to present her
23  with the form.
24     Q.  What form?

36 (Pages 138 to 141)

subparts as they are devoted to single sets of information or themes." *Hangzhou Aoshuang E-Com. Co. v. 008fashion*, No. 19 C 4565, 2020 WL 3429735, at *2 (N.D. Ill. June 23, 2020).

Ultimately, plaintiff's filings take a narrow view of relevance that does not accord with the liberal discovery provided for by the Federal Rules of Civil Procedure. While the Court understands plaintiff's privacy concerns, plaintiff has squarely placed her medical information at issue by alleging disability discrimination under the Rehabilitation Act, and maintaining that the alleged discrimination, and not her medical condition(s), forced her retirement from the Postal Service. Defendant has understandably and predictably requested access to medical records to enable it to defend against plaintiff's claims. Nonetheless, the Court agrees with plaintiff that defendant need not be given license to access plaintiff's entire medical history; there has to be some connection in time to plaintiff's allegations, and the Court has accordingly imposed the time limits itemized above.

The Court therefore grants in part defendant's motion to compel, to the extent identified above: plaintiff is compelled to provide medical record authorizations for Dr. Chmell, Dr. Kalluri, and the Community Health and Rehabilitation Center for the period of 2015 to present. Plaintiff is further compelled to fully respond to Interrogatory 18, and defendant is authorized to use in this litigation the OWCP files in its possession. Plaintiff's motion for a protective order is granted to the extent that defendant may only request records from these medical providers for the period of 2015 to present; otherwise, the motion is denied.[3]

Date: 3/30/2022

*Beth W. Jantz*

BETH W. JANTZ
United States Magistrate Judge

---

[3] Plaintiff also argues that defendant failed to engage in a good faith meet and confer(s) with plaintiff regarding the issues identified in the motion to compel, asserting that defendant was inflexible during their discussions and that defendant's counsel did not use the phrase "meet and confer" in her email correspondence. The Court, however, is unconvinced that defendant's counsel acted in bad faith; indeed, when defendant received information from the plaintiff, defendant withdrew its request for documentation from two medical providers. Dkt. 35; Dkt. 48 at 12. The record thus reflects a meaningful effort to compromise on the part of the defendant when plaintiff cooperated with defendant's information-gathering efforts.

**42 USC 12203: Prohibition against retaliation and coercion**
Text contains those laws in effect on September 10, 2023

**From Title 42-THE PUBLIC HEALTH AND WELFARE**
  CHAPTER 126-EQUAL OPPORTUNITY FOR INDIVIDUALS WITH DISABILITIES
  SUBCHAPTER IV-MISCELLANEOUS PROVISIONS
**Jump To:**
  <u>**Source Credit**</u>
  <u>**Miscellaneous**</u>
  <u>**References In Text**</u>

## §12203. Prohibition against retaliation and coercion

**(a) Retaliation**

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

**(b) Interference, coercion, or intimidation**

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

**(c) Remedies and procedures**

The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to subchapter I, subchapter II and subchapter III, respectively.

( Pub. L. 101–336, title V, §503, July 26, 1990, 104 Stat. 370 .)

### EDITORIAL NOTES

### REFERENCES IN TEXT

This chapter, referred to in subsecs. (a) and (b), was in the original "this Act", meaning Pub. L. 101–336, July 26, 1990, 104 Stat. 327 , which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 12101 of this title and Tables.

**GOVREGS**
GOVREGS.COM

U.S. Code  >  Title 42  >  Chapter 126  >  Subchapter I  >  § 12112

⊞ View all text of Subchapter I [§ 12111 - § 12117]

| U.S. Code | Notes |

### § 12112. Discrimination

(a) General rule

No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

(b) ConstructionAs used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes—

(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;

(2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);

(3) utilizing standards, criteria, or methods of administration—

(A) that have the effect of discrimination on the basis of disability; or

(B) that perpetuate the discrimination of others who are subject to common administrative control;

(4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association;

(5)

(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant;

(6) using qualification standards, employment tests or other selection criteria that screen out or tend to

Download the GovRegs app!

29 CFR Part 1630 (up to date as of 9/14/2023)
Regulations to Implement the Equal Employment Provisions of the...

29 CFR 1630.2(n)(1)

(1) *In general.* The term *essential functions* means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.

(2) A job function may be considered essential for any of several reasons, including but not limited to the following:

   (i) The function may be essential because the reason the position exists is to perform that function;

   (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

   (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

(3) Evidence of whether a particular function is essential includes, but is not limited to:

   (i) The employer's judgment as to which functions are essential;

   (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

   (iii) The amount of time spent on the job performing the function;

   (iv) The consequences of not requiring the incumbent to perform the function;

   (v) The terms of a collective bargaining agreement;

   (vi) The work experience of past incumbents in the job; and/or

   (vii) The current work experience of incumbents in similar jobs.

(o) *Reasonable accommodation.*

(1) The term *reasonable accommodation* means:

   (i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or

   (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or

   (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

(2) *Reasonable accommodation* may include but is not limited to:

   (i) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

   (ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities.

22

Case: 23-2162    Document: 10    Filed: 09/20/2023    Pages: 26

29 CFR Part 1630 (up to date as of 9/14/2023)                                                    29 CFR 1630.2(o)(3)
Regulations to Implement the Equal Employment Provisions of the...

(3)   To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

(4)   A covered entity is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the "actual disability" prong (paragraph (g)(1)(i) of this section), or "record of" prong (paragraph (g)(1)(ii) of this section), but is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong (paragraph (g)(1)(iii) of this section).

(p)   *Undue hardship* —

(1)   *In general. Undue hardship* means, with respect to the provision of an accommodation, significant difficulty or expense incurred by a covered entity, when considered in light of the factors set forth in paragraph (p)(2) of this section.

(2)   *Factors to be considered.* In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include:

(i)   The nature and net cost of the accommodation needed under this part, taking into consideration the availability of tax credits and deductions, and/or outside funding;

(ii)   The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation, the number of persons employed at such facility, and the effect on expenses and resources;

(iii)   The overall financial resources of the covered entity, the overall size of the business of the covered entity with respect to the number of its employees, and the number, type and location of its facilities;

(iv)   The type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and

(v)   The impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.

(q)   *Qualification standards* means the personal and professional attributes including the skill, experience, education, physical, medical, safety and other requirements established by a covered entity as requirements which an individual must meet in order to be eligible for the position held or desired.

(r)   *Direct Threat* means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:

(1)   The duration of the risk;